# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| MINERVA MARTINEZ, SANDRA SCOTT, CARL GRAHAM, ANNE PARYS, DAVID ORTIZ, SEAN CHAMBERS AND TIFFANY JAMES, individually, and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>NISSAN NORTH AMERICA INC., a Delaware corporation,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1. This is a consumer class action concerning a failure to disclose material facts and a safety concern to consumers.

2. Plaintiffs Minerva Martinez, Sandra Scott, Carl Graham, Anne Parys, David Ortiz, Sean Chambers and Tiffany James, (collectively, "Plaintiffs") bring this action for themselves and on behalf of all persons in the United States ("Class Members") who purchased or leased any model year 2017-2018 Nissan Altima equipped with a Continuously Variable Transmission ("Altima Class Vehicles") and/or model year 2018-2019 Nissan Sentra, Versa, and Versa Note equipped with a Continuously Variable Transmission ("Sentra Class Vehicles") (Altima Class Vehicles and Sentra Class Vehicles, together, "Class Vehicles" or "Vehicles") designed, manufactured, marketed, distributed, sold, warranted, and/or serviced by Defendant Nissan North America, Inc. ("Nissan" or "Defendant").

3. Nissan manufactured, marketed, distributed, and sold the Class

Case 3:22-cv-00354   Document 1   Filed 05/16/22   Page 1 of 115 PageID #: 1

Vehicles without disclosing that the Class Vehicle's Xtronic Continuously Variable Transmission ("CVT") is defective.

4. Specifically, Plaintiffs are informed and believe, and based thereon allege, that the CVT contains design and/or manufacturing defects. The CVT is defective as detailed herein (collectively, the "CVT Defect" or "Defect"). Discovery will show the Class Vehicles are designed and/or manufactured with an inadequate cooling system. The CVT fluid temperature in Class Vehicles is controlled by a small cooler, rather than a radiator. This cooler is too small and/or manufactured so poorly that it fails to properly regulate the temperature in the fluid which lubricates all the components of the CVT, including the belts, pulleys, and valves. This design and/or manufacturing defect makes the transmission unreasonably sensitive to heat. The CVT in every Class Vehicle is thus prone to overheating, which activates a fluid temperature protection mode and reduces transmission performance, among other symptoms. As a result, drivers experience conditions ranging from shuddering, jerking, failure to accelerate, all the way to catastrophic transmission failure.

5. The CVT Defect causes sudden, unexpected shaking and violent jerking (commonly referred to as "juddering" or "shuddering") when drivers attempt to accelerate their vehicles; it causes the vehicle to lag or delay when the driver tries to accelerate, causing an unsafe and unpredictable acceleration; it exhibits a hard deceleration or "clunk" when drivers either slow down or accelerate at low speeds; it causes complete transmission failure in the middle of roadways; and it suffers catastrophic failure, necessitating replacement.

6. Nissan sold the Class Vehicles with a 5-year, 60,000-mile powertrain warranty that purports to cover the CVT. However, owners and lessees have complained that their CVTs failed and required replacement, often just outside the warranty period. As Class members have reported to the National Highway Traffic

CLASS ACTION COMPLAINT

Safety Administration ("NHTSA"), Nissan's authorized dealerships are replacing transmissions both within, and just outside, the warranty period.

7. The CVT Defect is inherent in each Class Vehicle and was present at the time of sale.

8. Plaintiffs are informed and believe, and based thereon allege, that since 2013, if not earlier, Nissan has been aware that the CVT installed in the Class Vehicles would require frequent replacement, including replacements just outside of warranty, that the replacement transmissions installed would be equally defective as the originals, and that the CVT would cause the symptoms of the CVT Defect described above (juddering, lag when attempting to accelerate, hard deceleration, complete failure and other symptoms), and that the Class Vehicles' CVT would require frequent repair, yet Nissan continued to install the defective CVT. Moreover, Nissan not only refused to disclose the problem to owners and lessees, but it also actively concealed, and continues to conceal, its knowledge concerning the CVT Defect.

9. Nissan undertook affirmative measures to conceal CVT failures and other malfunctions through, among other things, Technical Service Bulletins ("TSB") issued only to its authorized repair facilities.

10. Nissan had superior and/or exclusive knowledge of material facts regarding the CVT Defect as a result of its pre-production testing, design failure mode analysis, customer complaints made to NHTSA, prior litigation, and customer complaints made to dealers.

11. As a result of Nissan's failure to disclose material facts regarding the CVT Defect to its customers, the Class has incurred significant and unexpected repair costs. Nissan's omission of the CVT's marked tendency to fail -- whether within warranty or just outside of warranty -- at the time of purchase is material because no reasonable purchaser or lessee expects to spend thousands of dollars to

CLASS ACTION COMPLAINT

repair or replace an essential vehicle component (such as a transmission, which must be replaced and cannot be repaired) in the early years of owning their vehicles.

12.     The CVT Defect is also material to purchasers and lessees because it presents an unreasonable safety risk. Transmission malfunctions can impair any driver's ability to control his or her vehicle and greatly increase risk of collision. For example, turning left across traffic in a vehicle with delayed and unpredictable acceleration is plainly unsafe. In addition, these conditions can make it difficult to safely change lanes, merge into traffic, turn, accelerate from stop lights/signs, and accelerate onto highways or freeways.

13.     Nissan's failure to disclose the alleged defect has caused Plaintiffs and putative Class members to lose use of the Class Vehicles and/or incur costly repairs that have conferred an unjust substantial benefit upon Nissan.

14.     Had Nissan disclosed the CVT Defect to Plaintiffs and Class members, they would not have purchased the Class Vehicles, would have paid less for them, and/or would have required Nissan to replace or pay for the replacement of the defective CVT with a non-defective version before their warranty periods expired.

## THE PARTIES

A.     **Plaintiffs**

**Plaintiff Minerva Martinez**

15.     Plaintiff Minerva Martinez is a citizen of Nevada. She purchased her new 2017 Nissan Altima, VIN 1N4AL3AP4HC110364, from United Nissan, an authorized Nissan dealership in Las Vegas, Nevada, on April 5, 2017.

16.     Passenger safety and reliability were significant factors in Plaintiff Martinez's decision to purchase her vehicle. Prior to purchasing her car, Ms. Martinez test drove the Nissan Altima with a dealership salesperson who touted

the vehicle's attributes and benefits, including the smooth ride and more powerful engine. Before making her purchasing decision, Plaintiff Martinez also reviewed the "Monroney" window sticker on the vehicle, Nissan materials that discussed the car's warranty program, and the Nissan warranty booklet.

17.     If any of Nissan's advertisements or marketing materials had accurately disclosed the CVT Defect, it is likely the defect would have been sufficiently widely reported that Plaintiff Martinez would have learned of the CVT Defect through her research, the materials she viewed at the dealership, or in her conversations with salespeople at the dealership before she purchased the vehicle.

18.     Plaintiff Martinez would not have purchased the vehicle, or would have paid less for it, if she had learned or been made aware the CVT was defective.

19.     Per the warranty's requirements, Plaintiff Martinez operated and maintained her vehicle at all times in a foreseeable manner, consistent with its intended use. Nevertheless, after she purchased her vehicle, Plaintiff Martinez began experiencing loss of power, failure to accelerate, and the feeling of the vehicle not stopping even when she was not applying any pressure to the gas pedal. She also experienced the vehicle not accelerating even when she was applying pressure to the accelerator pedal.

20.     On or around September 3, 2020, with 51,644 miles on the odometer, Plaintiff Martinez took her vehicle to United Nissan in Las Vegas, Nevada. She informed the service advisor that the car intermittently loses power when accelerating and going uphill. She further informed United Nissan that such loss of power and failure to accelerate was so extreme that she felt as though the brakes were engaging even though her foot was pressing down on the accelerator. The service records indicate the technician verified Plaintiff Martinez' complaint and reprogrammed the transmission control module in order to try and address the issue. This attempt at repair did not fix the problem.

CLASS ACTION COMPLAINT

21.     Following the visit to United Nissan, Plaintiff Martinez continued to experience problems with her vehicle's transmission. Specifically, Plaintiff Martinez reports experiencing poor or failed acceleration, an extremely delayed response time between applying pressure to the accelerator pedal and the car beginning to accelerate, as well as frequent occasions where the vehicle would not accelerate at all.

22.     On or around January 4, 2021, Plaintiff Martinez was again experiencing delayed acceleration when her vehicle lurched forward into another vehicle as a result of the transmission's non-responsiveness. Plaintiff Martinez brought her vehicle to United Nissan on January 8, 2021, with 59,905 miles on the odometer for diagnosis and repair of the transmission problems she believes caused her accident just days prior. According to the service records, and despite Plaintiff Martinez's complaint, Nissan mischaracterized the complaint as one involving brakes and refused to diagnose or attempt to repair the transmission safety issue. This refusal was despite Nissan's keeping Plaintiff Martinez' vehicle at the dealership for 33 days.

23.     As a result of Plaintiff Martinez' fear of the transmission issue and Nissan's failure to attempt to repair or even diagnose the problem, she immediately purchased an Advantage Care extended service contract from United Nissan upon their release of the vehicle back to her, on February 10, 2021. Plaintiff Martinez purchased this service contract at a total $2,836.00 out of pocket cost.

24.     Despite providing Nissan and its authorized dealer more than one opportunity to repair her vehicle, Plaintiff Martinez continues to experience the CVT defect.

**Plaintiff Sandra Scott**

25.     Plaintiff Sandra Scott is a citizen of California. She purchased her used 2017 Nissan Altima, VIN 1N4AL3AP8HN352031, in February 2019, from

CLASS ACTION COMPLAINT

Camacho Mitsubishi in Palmdale, California. She also purchased an extended warranty.

26.    Passenger safety and reliability were significant factors in Plaintiff Scott's decision to purchase her vehicle. Ms. Scott saw numerous advertisements from Nissan on the safety and reliability of the vehicle.

27.    If any of Nissan's advertisements or marketing materials had accurately disclosed the CVT Defect, it is likely the defect would have been sufficiently widely reported that Plaintiff Scott would have learned of the CVT Defect before she purchased the vehicle.

28.    Plaintiff Scott would not have purchased the vehicle, or would have paid less for it, if she had learned or been made aware the CVT was defective.

29.    Per the warranty's requirements, Plaintiff Scott operated and maintained her vehicle at all times in a foreseeable manner, consistent with its intended use. Nevertheless, after she purchased her vehicle, Plaintiff Scott began experiencing problems.

30.    When the Vehicle had more than 55,000 miles, Plaintiff Scott began experiencing problems accelerating, which became increasingly more prevalent over time until it was a constant issue.

31.    Plaintiff Scott complained about the issue to the Nissan dealership in Buena Park, California, which informed her that it was likely a transmission issue and quoted her $4,000 to repair.

**Plaintiff Sean Chambers**

32.    Plaintiff Sean Chambers is a citizen of New York. He purchased his new 2018 Nissan Sentra, VIN 5N1AT2MV6KC767751, in May 2019 from Maguire Nissan in Syracuse, New York.

33.    Passenger safety and reliability were significant factors in Plaintiff Chambers' decision to purchase his vehicle. Prior to or during the course of

Page 7

CLASS ACTION COMPLAINT

purchasing his car, Plaintiff Chambers went to the dealership, test drove the vehicle, reviewed the "Monroney" window sticker on the vehicle, as well as Nissan materials that discussed the car's warranty program, and the Nissan warranty booklet.

34.     If any of Nissan's advertisements or marketing materials had accurately disclosed the CVT Defect, it is likely the defect would have been sufficiently widely reported that Plaintiff Chambers would have learned of the CVT Defect before he purchased the vehicle.

35.     Plaintiff Chambers would not have purchased the vehicle, or would have paid less for it, if he had learned or been made aware the CVT was defective.

36.      Per the warranty's requirements, Plaintiff Chambers operated and maintained his vehicle at all times in a foreseeable manner, consistent with its intended use.

37.     Nevertheless, after he purchased his vehicle, Plaintiff Chambers experienced delayed acceleration and lack of power. The problem was not repaired and continues to the present.

**Plaintiff Carl Graham**

38.     Plaintiff Carl Graham is a citizen of Missouri. He purchased his used 2018 Nissan Altima, VIN 1N4AL3AP9JC188225, in March 2020 from Five Star Auto Plaza in St. Charles, Missouri.

39.     Passenger safety and reliability were significant factors in Plaintiff Graham's decision to purchase his vehicle and he saw multiple advertisements about the Altima.

40.     If any of Nissan's advertisements or marketing materials had accurately disclosed the CVT Defect, it is likely the defect would have been sufficiently widely reported that Plaintiff Graham would have learned of the CVT Defect before he purchased the vehicle.

CLASS ACTION COMPLAINT

41.    Plaintiff Graham would not have purchased the vehicle, or would have paid less for it, if he had learned or been made aware the CVT was defective.

42.    Per the warranty's requirements, Plaintiff Graham operated and maintained his vehicle at all times in a foreseeable manner, consistent with its intended use. Nevertheless, after he purchased his vehicle and driven only approximately 2,000 miles, Plaintiff Graham began experiencing strong jerking, a failure to shift gears properly, and the Vehicle jerking so strongly when in traffic that it felt as if the Vehicle should be shut off.

43.    The vehicle had approximately 45,000 miles and Plaintiff Graham went to three Nissan dealers to try to address the problems. The first dealer performed some type of "update" which Plaintiff Graham paid for, but the jerking continued. Plaintiff Graham was also charged for diagnostic fees but, although recognizing the jerking, the Nissan dealerships could not repair the problems relating to the Defect, and the problems continue to the present.

**Plaintiff David Ortiz**

44.    Plaintiff David Ortiz is a citizen of South Carolina. He purchased his used 2017 Nissan Altima, VIN 1N4AL3AP3HC233654, from Venture Motor Cars in Stroudsburg, Pennsylvania in 2021.

45.    Passenger safety and reliability were significant factors in Plaintiff Ortiz's decision to purchase his vehicle.

46.    If any of Nissan's advertisements or marketing materials had accurately disclosed the CVT Defect, it is likely the defect would have been sufficiently widely reported that Plaintiff Ortiz would have learned of the CVT Defect before he purchased the vehicle.

47.    Plaintiff Ortiz would not have purchased the vehicle, or would have paid less for it, if he had learned or been made aware the CVT was defective.

48.    Per the warranty's requirements, Plaintiff Ortiz operated and

CLASS ACTION COMPLAINT

maintained his vehicle at all times in a foreseeable manner, consistent with its intended use. Nevertheless, after he purchased his vehicle and when the Vehicle had approximately 53,000 miles, Plaintiff Ortiz began experiencing hesitancy, and failure to accelerate promptly upon pressing on the accelerator pedal, as well as the failure to shift gears properly or at the correct RPM. A third-party mechanic diagnosed transmission problems, but the problems were not repaired and continue to the present.

**Plaintiff Anne Parys**

49.     Plaintiff Anne Parys is a citizen of Pennsylvania. She purchased her used 2017 Nissan Altima, VIN 1N4AL3AP6HC115095, with approximately 3,000 miles on the vehicle, in December 2017 from the Nissan dealership in Washington, Pennsylvania.

50.     Passenger safety and reliability were significant factors in Plaintiff Parys' decision to purchase her vehicle.

51.     If any of Nissan's advertisements or marketing materials had accurately disclosed the CVT Defect, it is likely the defect would have been sufficiently widely reported that Plaintiff Parys would have learned of the CVT Defect before she purchased the vehicle.

52.     Plaintiff Parys would not have purchased the vehicle, or would have paid less for it, if she had learned or been made aware the CVT was defective.

53.     Per the warranty's requirements, Plaintiff Parys operated and maintained her vehicle at all times in a foreseeable manner, consistent with its intended use. Nevertheless, after she purchased her vehicle, and when the Vehicle had approximately 20,000 miles, Plaintiff Parys began experiencing loss of power, juddering, and failure to accelerate.

54.     Plaintiff Parys took her Vehicle to a third-party mechanic who was not able to diagnose or repair the issue.

55.    In or around April 2022, Plaintiff Parys complained about the issue to the John Sisson Nissan dealership.  The dealership found Code P0776 stored in the CVT and recommended valve body replacement.  The problems are continuing.

**Plaintiff Tiffany James**

56.    Plaintiff Tiffany James is a citizen of Louisiana. She purchased her new 2018 Nissan Sentra, VIN 3N1AB7AP6JY264515, in July 2018 from the Nissan dealer in Picayune, Mississippi. The vehicle has approximately 28,000 miles in April 2022.

57.    Passenger safety and reliability were significant factors in Plaintiff James' decision to purchase her Vehicle. Prior to or during the course of purchasing her car, Plaintiff James went to the dealership, test drove the vehicle, talked to the salesperson who told her it was an excellent vehicle, and reviewed the "Monroney" window sticker on the Vehicle

58.    If any of Nissan's advertisements or marketing materials had accurately disclosed the CVT Defect, it is likely the defect would have been sufficiently widely reported that Plaintiff James would have learned of the CVT Defect before she purchased the vehicle.

59.    Plaintiff James would not have purchased the vehicle, or would have paid less for it, if she had learned or been made aware the CVT was defective.

60.    Per the warranty's requirements, Plaintiff James operated and maintained her vehicle at all times in a foreseeable manner, consistent with its intended use. Nevertheless, after she purchased her vehicle, Plaintiff James began experiencing juddering, jolting, and pulling. The problem was not repaired and continues to the present.

**B.    Defendant Nissan North America, Inc.**

61.    Defendant Nissan North America, Inc., is a corporation organized and

CLASS ACTION COMPLAINT

in existence under the laws of the State of Delaware. Nissan North America, Inc., is headquartered in Franklin, Tennessee. Nissan North America, Inc. designs and manufactures motor vehicles, parts, and other products for sale throughout the United States, and the world. Nissan is the warrantor and distributor of the Class Vehicles throughout the United States.

62.     Defendant, through its various entities, designs, manufactures, markets, distributes, warrants, services, repairs, sells, and leases passenger vehicles, including the Class Vehicles, nationwide.

63.     At all relevant times, Defendant was and is engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and motor vehicle components throughout the United States of America.

## **JURISDICTION**

64.     This is a class action.

65.     Members of the proposed Nationwide Classes and state Sub- Classes, which includes citizens of Nevada, California, New York, Missouri, South Carolina, and Pennsylvania are citizens of states other than Tennessee, where Nissan is headquartered, and Delaware, where Nissan is incorporated.

66.     On information and belief, aggregate claims of individual Class Members exceed $5,000,000.00 in value, exclusive of interest and costs.

67.     Jurisdiction is proper in this Court because at least one Class member is of diverse citizenship from the Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs.

68.     Accordingly, jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d).

## **VENUE**

CLASS ACTION COMPLAINT

69.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in and emanated from this judicial district, and because Defendant has its principal place of business in Tennessee.

## FACTUAL ALLEGATIONS

70.     Nissan is known throughout the United States as a major manufacturer of automobiles and related products, which are sold under the Nissan brand.

71.     Nissan designed, manufactured, imported, distributed, and/or marketed the Class Vehicles in the United States, including throughout the United States and its territories. Nissan also provides sales, repair, and maintenance services for the Class Vehicles through its nationwide network of authorized dealers and service providers.

72.     Upon information and belief, the only method Nissan makes available for the purchase of new Class Vehicles is through its nationwide network of authorized dealers.

73.     The CVT is an automatic transmission that uses two variable-diameter pulleys with a steel belt running between them to change speed, instead of a gearbox and clutch system. Rather than relying on the fixed gear ratios of the traditional automatic transmission, the pulleys can adjust their width to make the belt turns faster or slower, depending on the speed of the vehicle and the torque needed. The CVT thus "simultaneously adjusts the diameter of the 'drive pulley' that transmits torque from the engine and the 'driven pulley' that transfers torque to the wheels" to allow for an infinite number of gear ratios. In theory, the CVT chooses the gear ratio optimum for driving conditions.

74.     The CVT, allegedly offering more efficient power delivery and better fuel economy, is standard in the Class Vehicles.

75. The illustration in below, depicts the way the CVT's belt and pulley system adjusts the gear ratio to change speed:



76. Consumers complain that their vehicles take an unreasonable amount of time to accelerate from a stop or low speed, exhibit a hard deceleration or "clunk" when drivers either slow down or accelerate at low speeds, shudder and shake or make a loud clunking or knocking sound when the CVT finally selects the appropriate gear ratio, and completely fail to accelerate. Consumers also frequently complain once they achieve speed of unusually high RPMs and/or a loud whining that exceeds their reasonable expectations for noise from the CVT. Finally, in addition to hesitations, slow response, and loud noises, the lifespan of the CVT in the Class Vehicles is unreasonably short.

77. Plaintiffs are informed and believe discovery will show the Class Vehicles are designed and/or manufactured with an inadequate cooling system. The CVT fluid temperature in class vehicles is controlled by a small cooler, rather than a radiator. This cooler is too small and/or manufactured so poorly that it fails to properly regulate the temperature in the fluid which lubricates all the components of the CVT, including the belts, pulleys, and valves. This design and/or manufacturing defect makes the transmission unreasonably sensitive to heat. The CVT in every Class Vehicle is thus prone to overheating, which activates a fluid temperature protection mode and reduces transmission performance, among other symptoms. As a result, drivers experience conditions ranging from shuddering,

CLASS ACTION COMPLAINT

jerking, failure to accelerate, all the way to catastrophic transmission failure.

78.     Nissan sold the class vehicles with a 5-year, 60,000-mile powertrain warranty that purports to cover the CVT. However, consumers have complained that their CVTs have failed and required replacement just outside the 60,000-mile warranty period. As Class Members have reported to the NHTSA, Nissan's authorized dealerships are replacing transmissions both within, and just outside, the 60,000- mile warranty period.

79.     The CVT Defect alleged is inherent in, and the same for, all Class Vehicles.

80.     On information and belief, dating back to at least 2013, Nissan was aware of material facts regarding the CVT Defect, but failed to disclose them to consumers. As a result of this failure, Plaintiffs and Class Members have been damaged.

81.     The CVT Defect poses an unreasonable safety hazard. Hesitations, slow and failed responses, hard braking and catastrophic transmission failure impair drivers' control over their vehicles, which significantly increases the risk of accidents. For example, turning left across traffic in a vehicle with delayed and unpredictable acceleration is unsafe. In addition, these conditions can make it difficult to safely change lanes, merge into traffic, turn, brake slowly or accelerate from stop light/sign, and accelerate onto highways or freeways.

## A.     <u>Complaints Lodged with NHTSA</u>

82.     Federal law requires automakers like Nissan to be in close contact with NHTSA regarding potential auto defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to NHTSA, including field reports, customer complaints, and warranty data. *See* Transportation Recall Enhancement Accountability and Documentation "TREAD" Act, Pub. L. No. 106-414, 114 Stat.

CLASS ACTION COMPLAINT

1800 (2000).

83.    Automakers have a legal obligation to identify and report emerging safety-related defects to NHTSA under the Early Warning Report requirements. *Id*. Similarly, automakers monitor NHTSA databases for consumer complaints regarding their automobiles as part of their ongoing obligation to identify potential defects in their vehicles, including safety-related defects. *Id*. Thus, Nissan knew or should have known of the many complaints about the CVT Defect logged by NHTSA's Office of Defects Investigation ("ODI"), and the content, consistency, and large number of those complaints alerted, or should have alerted, Nissan to the CVT Defect.

84.    For years, owners of Nissan Altima and Sentra models have publicly complained to the United States government about the CVT Defect in Class Vehicles. The ODI is an office within NHTSA. ODI conducts defect investigations and administers safety recalls supporting the NHTSA's mission to improve safety on the Nation's highways. All automobile manufacturers routinely monitor and analyze NHTSA complaints because this information is used in determining if a recall should be issued. Indeed, automobile manufacturers are required by law to report any potential safety defects to the United States government.

85.    The following complaints regarding the Altima made to NHTSA and elsewhere online demonstrate that the defect is widespread and dangerous and that it manifests without warning. The complaints also indicate Nissan's awareness of the problems with the CVT and Defect, including how dangerous they are for drivers. These safety complaints relate to the CVT Defect:

DATE OF INCIDENT: June 15, 2017
DATE COMPLAINT FILED: November 8, 2017
SUMMARY: MY TRANSMISSION STOPPED WORKING WHILE
I WAS DRIVING FIRST IN THE CITY AND IT CONTINUED TO
WHEN I WENT ON THE HIGHWAY TO THE POINT I HAD NO
POWER AND THE WHEN I PRESSED THE GAS NOTHING
WOULD HAPPEN. I HAD TO HAVE THE COMPUTER IN THE

TRANSMISSION REPLACED AND THE CAR STILL IDLES AS IF IT WILL CUT OFF AT ANY MOMENT. THAT WAS AT 40K AND I JUST HAD TO REPLACE THE O2 SENSOR AT 60K

DATE OF INCIDENT: December 28, 2016
DATE COMPLAINT FILED: February 15, 2017
SUMMARY: VEHICLE HESITATES WHEN ACCELERATED. GEARS STICK OCCASIONALLY. SMOKE SMELL OCCURRING. VEHICLE SEEMS TO GET WORSE WHEN GOING DOWN A HILL. WILL NOT GO HIGHER THAN 10 MPH WHEN THIS OCCURS.

DATE OF INCIDENT: April 24, 2021
DATE COMPLAINT FILED: April 25, 2021
NHTSA ID NUMBER: 11413861
SUMMARY: I HAVE A 2017 NISSAN ALTIMA SV, 4CYL, 2.5L... I AM HAVING WORSENING PROBLEMS WITH ACCELERATION. WHEN ATTEMPTING TO PULL OFF FROM A RED LIGHT FOR EXAMPLE, IT WILL HESITATE FOR ABOUT 4,5 SECONDS, RPMS INCREASE THEN A SURGE OF ACCELERATION. ALSO, WHILE DRIVING IT WILL LOSE SPEED WITH MY FOOT ON THE GAS, EVEN WITH THE RPMS UP AS IF IT WERE MOVING FASTER.. THANKFULLY THE DRIVERS BEHIND ME WERE ATTENTIVE OR IT COULD HAVE CAUSED ME AND OTHERS A GREAT DEAL OF DAMAGE, LIKE WHEN I WAS TRYING TO ACCELERATE FROM A CROSS STREET TURN LANE. IT WAS SPORADIC AT FIRST; I WENT TO VALVOLINE AND GOT REPLACEMENT TRANSMISSION FLUID, AND THE GUY TURNED OFF THE ENGINE LIGHT. IT STARTED UP AGAIN A FEW WEEKS LATER, AND I GOT A NEW AIR FILTER AND WENT BACK FOR A FUEL SYSTEM CLEANING. ANOTHER GUY RESET THE ENGINE LIGHT AGAIN, AND NOW(ABOUT 3 WEEKS LATER)IT'S BACK WITH THE SAME PROBLEM. SOMETIMES, I'D PULL OVER AND TURN OFF THE CAR AND IT HELPED A BIT. NOW(YESTERDAY) THAT ISN'T HELPING AND THE SLOW ACCELERATION AND SPEED HAPPENS EVERY TIME. I USED THE DIAGNOSING TOOL AT AUTO ZONE WHICH READ, "P0776-PRESSURE CONTROL SOLENOID B PERFORMANCE OR STUCK OFF". I AM SEEING THAT THERE ARE MANY COMPLAINTS ABOUT THE EXACT SAME THING, AND EVEN A RECALL ON THE MODELS UP TO 2016 REGARDING THIS, BUT 2017 AND AFTER SEEM TO BE GETTING IGNORED.

DATE OF INCIDENT: April 12, 2021
DATE COMPLAINT FILED: April 20, 2021
NHTSA ID NUMBER: 11413037
SUMMARY: TL* THE CONTACT OWNS A 2017 NISSAN ALTIMA. THE CONTACT STATED THAT WHILE THE VEHICLE WAS STOPPED AT A RED TRAFFIC LIGHT, THE VEHICLE STALLED AFTER THE ACCELERATOR PEDAL WAS DEPRESSED. THE CHECK ENGINE WARNING WAS LIGHT ILLUMINATED. THE VEHICLE WAS TOWED TO NISSAN OF

CLASS ACTION COMPLAINT

MISSION HILLS (11000 SEPULVEDA BLVD, MISSION HILLS, CA 91345) TO BE DIAGNOSED. THE CONTACT WAS INFORMED THAT THE TRANSMISSION NEEDED TO BE REPLACED. THE SENSOR FOR THE BRAKE PADS WERE REPLACED HOWEVER, THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 76,000.

DATE OF INCIDENT: April 18, 2021
DATE COMPLAINT FILED: April 28, 2021
NHTSA ID NUMBER: 11408683
SUMMARY: VEHICLE KEEPS SHIFTING INTO SPORTS MODE WITHOUT ACTIVATING IT
DATE OF INCIDENT: April 1, 2021
DATE COMPLAINT FILED: April 16, 2021
NHTSA ID NUMBER: 11406970
SUMMARY: CVT TRANSMISSION IS JERKING, STALLING, SHUDDERING, AND HESITATING WHILE DRIVING. CAR ONLY HAS 65K MILES. ISSUE HAS BEEN HAPPENING RANDOMLY FOR ABOUT A WEEK. I DO NOT FEEL COMFORTABLE DRIVING IN THE CAR ANYMORE BECAUSE I FEEL THAT THIS MALFUNCTION CAN EVENTUALLY CAUSE AN ACCIDENT.

DATE OF INCIDENT: December 24, 2019
DATE COMPLAINT FILED: March 9, 2021
NHTSA ID NUMBER: 11399947
SUMMARY: ALL THE SUDEN I WILL START MY CAR AND GIVE IT GAS AND WILL NOT MOVE AS IF IT WAS BEING FORCE TO RUN. THIS HAS HAPPEN MANY TIME AFTER THIS DAY.

DATE OF INCIDENT: February 20, 2021
DATE COMPLAINT FILED: March 8, 2021
NHTSA ID NUMBER: 1N4AL3AP7HN
SUMMARY: THE CAR DOESNT GO, IT STUTTERS, AND THEN SUDDENLY GOES. TAKE A LOT OF TIME TO CHANGE GEAR, IN SMALL HILLS DOESN'T GO UP, THE RPM AND SPEED JUST GO DOWN. THE CHECK ENGINE LIGHT COMES ON AND OFF. NISSAN DEALERS SAYS IT IT OUT OF GUARANTEE. A NISSAN ALTIMA 2017, 85K MILES AND ITS OUT OF NISSAN GUARANTEE ALREADY, AND THAT THEY CANT DO ANYTHING ABOUT IT. UNBELIEVABLE. SADDLY FOR ME THE CARE IS ALREADY PAYED OFF, THEY HAVE ALREADY ALL THEIR MONEY, SO NO NEED TO FIX MY PROBLEM. ALSO WHEN I BOUGHT THE CAR, IN A NISSAN DEALER, THEY GAVE A FAKE CARFAX OF THE CAR, THEY OMIT AN CRASH REPORT, ALSO THEY ADVERTISED THE CAR FOR A VERY MUCH LOWER PRICE THAN THEY SOLD IT TO ME, THEY PUT A LOT OF FEES ON IT THAT THE PRICE WAS 2K OVER THAN THE ADVERTISED.

DATE OF INCIDENT: February 28, 2021

CLASS ACTION COMPLAINT

DATE COMPLAINT FILED: March 15, 2020
NHTSA ID NUMBER: 11398278
SUMMARY: THERE IS A DELAY IN ACCELERATION FROM A
COMPLETE STOP. STOPS FOR RED LIGHTS, STOP SIGNS AND
TURNS ARE EXTREMELY DANGEROUS AS THE ISSUE OF
DELAYED ACCELERATION OCCURS RANDOMLY AND
WITHOUT WARNING.

DATE OF INCIDENT: February 14, 2021
DATE COMPLAINT FILED: February 14, 2021
NHTSA ID NUMBER: 11396206
SUMMARY: CAR STOPPED WHEN ON STOP LIGHT WAS IN
MOTION AND NEVER CAME BACK HAVE TO TOWE THE CAR
. SOME TIME IT START AND SOMETIME NOT . SO IT'S SCARY
IF YOU PRESS THE BRAKE AND STOPS AND SOMEONE
FROM BEHIND CAN HIT YOU.

DATE OF INCIDENT: January 1, 2021
DATE COMPLAINT FILED: February 4, 2021
NHTSA ID NUMBER: 11394671
SUMMARY: WAS DRIVING AND THE STALL WHILE I PULL
OUT INTO TRAFFIC ACTING LIKE IT DON'T WANT TO GO

DATE OF INCIDENT: January 1, 2021
DATE COMPLAINT FILED: January 22, 2021
NHTSA ID NUMBER: 11389384
SUMMARY: THE VEHICLE SHUTS OFF WHILE DRIVING,
DOES NOT MAINTAIN A SOLID SPEED, INCREASES AND
DECREASES SPEED ON IT OWN, WHEN STOPPED THE
VEHICLE WITH NOT GO WHEN THE GAS PEDAL IS PRESSED,
IT WILL TAKE A FEW MOMENTS AND THEN ACCELERATE
AT A REALLY HIGH SPEED OR FORCE. THE WINDOWS
RANDOMLY STOP WORKING, THE LIGHTS FLICKER ON AND
OFF, THE STEERING COLUMN TIGHTENS AND THE VEHICLE
RANDOMLY SHUTS OFF WHILE DRIVING IT ON THE ROAD.
IT WILL DISPLAY THAT THE KEY IS MISSING AND TURN
OFF. IT HAS TAKEN SEVERAL MINUTES TO RESTART THE
CAR. THIS HAPPENS DURING IDLE AND IN MOTION, ON THE
HIGHWAY OR IN THE CITY.

DATE OF INCIDENT: November 7, 2020
DATE COMPLAINT FILED: January 19, 2021
NHTSA ID NUMBER: 11388775
SUMMARY: WHEN I WAS DRIVING MY CAR AND STOPPING
AT A TRAFFIC LIGHT AND WHEN I WOULD START TO DRIVE
AGAIN THE CAR AT TIMES HAS A PROBLEM WITH
ACCELERATION AND ALL OF SUDDENLY THE CHECK
ENGINE LIGHT CAME ON I SCANNED THE ENGINE CODE
AND IT SHOWED A PO 776 TRANSMISSION PRESSURE
CONTROL SOLENOID B PERFORMANCE OR STUCK OFF THE
CAR WOULD NOT MOVE BUT WHEN I TURNED IT OFF
AFTER 10 MINUTES REST THE CAR WILL START TO DRIVE
AGAIN BUT WITH VERY SLOW ACCELERATION AND THE
RPM WAS VERY HIGH WHEN THE CAR WAS ONLY MOVING

CLASS ACTION COMPLAINT

AT 20 MPH, MY UNDERSTANDING IS THAT THIS HAPPENS TO A LOT OF THE CARS OWNERS BUT THESE NISSAN CARS NISSAN SHOULD FIX THE PROBLEMS WITH THE TRANSMISSION THEY BUILT KNOW FULL WELL THAT THESE TRANSMISSIONS ARE NO GOOD ,CURRENTLY THERE'S NO RECALLS ON THE 2017 NISSAN ALTIMA SV WITH THIS ISSUE I WILL NEVER BUY ANOTHER NISSAN AGAIN TILL THEY FIX THE TRANSMISSION PROBLEMS COSTING THE CUSTOMERS MONEY AND NOT FIXING THE PROBLEMS WITH THEIR BAD TRANSMISSION THAT THEY KNOW ABOUT SHAME ON NISSAN THE TRASH VEHICLES OF THE CENTURY ONLY GOOD FOR A SHORT TIME THEN IT JUNK AFTERWARDS

DATE OF INCIDENT: January 8, 2020
DATE COMPLAINT FILED: January 8, 2020
SUMMARY: TL* THE CONTACT OWNS A 2018 NISSAN ALTIMA. THE CONTACT STATED THAT WHEN THE VEHICLE WAS STARTED AND SHIFTED TO DRIVE, THE VEHICLE HESITATED AND THEN LUNGED FORWARD WHILE THE RPM'S REVVED UP. THE CONTACT ALSO STATED THAT THE FAILURE RECURRED APPROXIMATELY 10 TIMES. THE VEHICLE WAS TAKEN TO STAR NISSAN LOCATED AT 5757 WEST TOUHY AVENUE, NILES, IL 60714, (704) 867-8341 WHERE THE TRANSMISSION CONTROL MODULE SOFTWARE WAS UPDATED. . .

DATE OF INCIDENT: August 15, 2021
DATE COMPLAINT FILED: August 15, 2021
SUMMARY: CVT TRANSMISSION FAILURE WHILE IN TRANSPORT. IT PUT MY FAMILY AT RISK BEING STRANDED ON BUSY HIGHWAY. NO WARNING LIGHTS OR INDICATION OF ISSUE EXCEPT VEHICLE STOPPED PERFORMING EFFECTIVELY. THE DEALER ACKNOWLEDGED ISSUES IN THIS AND OTHER MODELS AND HAD TRANSMISSION REPAIRED AT MY COST. VEHICLE WAS DIAGNOSED BY DEALER WHICH USING OBD THEY FOUND TRANSMISSION FAILURE CODES.

DATE OF INCIDENT: September 3, 2021
DATE COMPLAINT FILED: September 3, 2021
SUMMARY: THE CONTACT OWNS A 2018 NISSAN ALTIMA. THE CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 50 MPH, THE VEHICLE SUDDENLY LOST MOTIVE POWER WITHOUT WARNING. THE CONTACT COASTED TO THE SIDE OF THE ROAD AND WAS UNABLE TO RESTART THE VEHICLE. THE VEHICLE WAS TOWED TO THE DEALER WHO DIAGNOSED THAT THE TRANSMISSION FAILED AND NEEDED TO BE REPAIRED. THE VEHICLE HAD NOT BEEN REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE AND OPENED A CASE. THE

CLASS ACTION COMPLAINT

APPROXIMATE FAILURE MILEAGE WAS 69,000.[1]

86.    The following complaints regarding the Sentras made to NHTSA online demonstrate that the defect is widespread and dangerous and that it manifests without warning. The complaints also indicate Nissan's awareness of the problems with the CVT and Defect, including how dangerous they are for drivers. These safety complaints relate to the CVT Defect:

2018 NISSAN SENTRA NHTSA POWER TRAIN COMPLAINTS

DATE OF INCIDENT:  June 8, 2021
DATE COMPLAINT FILED:  July 8, 2021
NHTSA ID NUMBER:  11423947
SUMMARY:  WHEN PASSING SOMEONE IT WILL NOT GO OVER 80 IT WILL SHIFT DOWN, RPMS WILL JUMP BACK AND FORTH UNTIL IT SHIFTS CORRECTLY AND THEN IT WILL ACCELERATE. THIS IS AN ISSUE FOR SEVERAL NISSANS SINCE 2003 THAT THEY WILL NOT FIX.

DATE OF INCIDENT:  June 1, 2021
DATE COMPLAINT FILED:  June 14, 2021
NHTSA ID NUMBER:  11420918
SUMMARY:  MY SENTRA AT AROUND 75MPH STARTS SHIFTING BACK AND FORTH ABNORMALLY BETWEEN GEARS. THE ONLY THING THAT RELEASES IT IS LETTING GO OF GAS, FORCING TO DROP SPEED, WHICH ALSO FORCES A SHIFT TO HIGHER GEAR. YOU FEEL A JERK WHEN IT'S JUMPING GEARS, BUT THE RPM ARROW ALSO JERKS BETWEEN, STARTED AROUND 30K MILES AND GETTING WORSE.

DATE OF INCIDENT:  April 24, 2021
DATE COMPLAINT FILED:  May 11, 2021
NHTSA ID NUMBER:  11416184
SUMMARY:  TL* THE CONTACT OWNS A 2018 NISSAN SENTRA. THE CONTACT STATED WHILE DRIVING 80 MPH, THE VEHICLE FAILED TO PERFORM AS NEEDED. THERE WAS NO WARNING LIGHT ILLUMINATED. THE DRIVER AVOIDED A NEAR CRASH. THE VEHICLE COASTED ONTO THE SHOULDER OF THE ROADWAY. THE VEHICLE WAS THEN TOWED TO UNITED NISSAN IMPERIAL (2361 HWY 86, IMPERIAL, CA 92251, (760) 352-2900) TO BE DIAGNOSED. THE CONTACT WAS INFORMED THAT THE TRANSMISSION

---

[1]  NHTSA, Consumer Complaints; https://www.nhtsa.gov/vehicle/2017/NISSAN/ALTIMA/4%252520DR/FWD#complaints; https://www.nhtsa.gov/vehicle/2018/NISSAN/ALTIMA/4%252520DR/FWD#complaints (October 2021) (spelling and grammar mistakes remain as found in the original).

CLASS ACTION COMPLAINT

FAILED AND NEEDED TO BE REPLACED. THE VEHICLE WAS NOT YET REPAIRED. THE MANUFACTURER WAS CONTACTED AND INFORMED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 118,000.

DATE OF INCIDENT: April 30, 2021
DATE COMPLAINT FILED: May 3, 2021
NHTSA ID NUMBER: 11415028
SUMMARY: TL* THE CONTACT OWNS A 2018 NISSAN SENTRA. THE CONTACT STATED THAT WHILE PARKED, THE GEAR SHIFTER FAILED TO SHIFT INTO DRIVE OR ANY OTHER GEARS. THE VEHICLE WAS NOT YET DIAGNOSED NOR REPAIRED. THE DEALER AND MANUFACTURER WERE NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 71,000

DATE OF INCIDENT: January 6, 2021
DATE COMPLAINT FILED: January 27, 2021
NHTSA ID NUMBER: 11390273
SUMMARY: I PURCHASED A NISSAN SENTRA BACK IN JUNE 2020 SO I HAVEN'T HAD IT VERY LONG. IT HAD ROUGHLY ABOUT 52K MILES WHEN I PURCHASED IT AND I PURCHASE IT BECAUSE MY FAMILY HAS HAD INFINITI'S AND NISSAN AND MY DAD WORKS FOR AN INFINITI DEALERSHIP. ALL OF OUR VEHICLES HAVE BEEN VERY RELIABLE. SO WHY WOULD THIS ONE BE ANY DIFFERENT. I RECENTLY HAD AN ISSUE DRIVING THIS VEHICLE WHERE IT JUST STARTED THIS WEIRD JUTTER OR VIBRATION AND THEN THERE WAS LOSE OF POWER/HESITATION AND WOULDN'T GO PAST 45 TO 50 MPH. I LIVE ABOUT 71 MILES AWAY FROM WORK AND HAD A HARD TIME GETTING IT TO WORK. AFTER GETTING OFF WORK I DROPPED MY CAR OFF BY THE CLOSEST NISSAN DEALER TO FIND OUT WHAT WAS GOING ON WITH MY CAR. THE SERVICE ADVISOR CALLED ME BACK TO SAY THAT MY TRANSMISSION WAS DONE AND THAT I NEEDED A NEW ONE. I THEN FOUND OUT THAT THE EXTENDED WARRANTY THAT I PURCHASED FROM THE DEALER EXPIRED ALREADY AND THAT I WOULD HAVE TO PAY FOR A TRANSMISSION IN A CAR THAT I JUST BOUGHT LESS THAN A YEAR AGO. AFTER FURTHER RESEARCH I FOUND WHERE NISSAN HAS A REALLY BAD ISSUE WITH THEIR CVT TRANSMISSIONS AND THAT THERE WAS A RECALL ON THEM. WHEN I ASKED NISSAN DEALER ABOUT IT THEY SAID THAT IT ONLY COVERS UP TO 2017 NISSAN SENTRA. MY DAD DID SOME RESEARCH AND FOUND THAT THERE IS A SERVICE BULLETIN REFERENCE (NTB20-035A) FOR 2018-2019 NISSAN SENTRA; CVT JUDDER. WHEN WE CONTACTED NISSAN CONSUMER AFFAIRS FOR ASSISTANCE THEY SAID THAT MY CAR WASN'T INCLUDED IN THIS, AND THAT THEY WOULDN'T COVER ANYTHING. NISSANS SERVICE BULLETIN SAYS THAT IF ANY OF SEVERAL CODES POPPED UP WHILE DIAGNOSING THE VEHICLE (P2859) REPLACE THE CVT TRANSMISSION. THIS IS MY FIRST VEHICLE PURCHASE ON MY OWN, I'M 23, AND

CLASS ACTION COMPLAINT

I STILL HAVE TO MAKE THE PAYMENTS ON THIS CAR. I WAS QUOTED A TRANSMISSION REPAIR COST OF 4K TO 5K. NISSAN SHOULD BE RESPONSIBLE FOR THIS ISSUE BEING THAT THEY KNOW OF THE PROBLEM. ANY HELP ON THIS IS GREATLY APPRECIATED.

DATE OF INCIDENT:  October 12, 2020
DATE COMPLAINT FILED:  October 12, 2020
NHTSA ID NUMBER:  11363959
SUMMARY:  AFTER 37,122 MILES THE TRANSMISSION ON MY 2018 NISSAN SENTRA WENT BAD ON ME. I TOOK IT TO THE DEALERSHIP AND THEY INFORMED ME THAT THE ENTIRE TRANSMISSION NEEDED TO BE REPLACED. THE DEALERSHIP ALSO SAID THE FUEL PUMP AND CLUSTER NEEDED TO BE REPLACED. I READ THAT THERE HAVE BEEN OTHER COMPLAINTS MADE ABOUT THE TRANSMISSION SYSTEM FOR THESE CARS, AND THERE SHOULD DEFINITELY BE A RECALL.

DATE OF INCIDENT:  March 9, 2019
DATE COMPLAINT FILED:  August 17, 2020
NHTSA ID NUMBER:  11349933
SUMMARY:  RPMS ARE GOING UP AND DOWN WHEN MAINTAINING THE SAME SPEED . WE TOOK IT BACK TO THE DEALERSHIP AT 9000 MILES AND THEY TOLD US IT'S A SPECIAL TRANSMISSION.BELT DRIVEN NOT GEAR DRIVEN. WE TOOK IT BACK A FEW MORE TIMES AND FINALLY WE TOOK IT TO MIDAS AND THEY TOLD US TO TAKE IT TO DEALERSHIP FOR THE TRANSMISSION PROBLEM AFTER THEY DROVE IT AND NOTICED RPMS GOING UP AND DOW

DATE OF INCIDENT:  March 16, 2020
DATE COMPLAINT FILED:  March 17, 2020
NHTSA ID NUMBER:  11318508
SUMMARY: STOPPED GOING FORWARD WHEN AT TRAFFIC LIGHT WILL ONLY GO IN REVERSE. DEALERSHIP SAYS WARRANTY IS UP AND IT WILL COST 4000$ TO FIX. I AM CONFUSED AS TO HOW A CAR THAT WAS BOUGHT 4/20/2018 HAS THE NEED FOR THE TRANSMISSIOM TO BE REPLACED. THIS CAR HAS HAD REGULAR MAINTENANCE AND I DO NOT BELIEVE AFTER PAYING 479.09 A MONTH FOR THE PAST 23 MONTHS I SHOULD BE SPENDING AN ADDITIONAL 4000$

DATE OF INCIDENT:  January 25, 2020
DATE COMPLAINT FILED:  January 28, 2020
NHTSA ID NUMBER:  11302489
SUMMARY:  THE TRANSMISSION IS GOING OUT I WAS ONLY ABLE TO USE REVERSE, MY CAR HAS 46000 MILES I HAVE NEVER BEEN LATE ON CHANGING MY OIL AND GETTING THE CAR SERVICED, WOULD NOT RECOMMEND BUYING A SENTRA

DATE OF INCIDENT:  December 13, 2018

CLASS ACTION COMPLAINT

DATE COMPLAINT FILED:  December 2, 2019
NHTSA ID NUMBER:  11286331
SUMMARY:  TRANSMISSION OVER HEATS. TRANSMISSION
HAS A LOUD NOISE AND DRAGS SINCE 60,000 MILES

DATE OF INCIDENT:  October 12, 2020
NHTSA ID NUMBER: 11363959
SUMMARY:  AFTER 37,122 MILES THE TRANSMISSION ON
MY 2018 NISSAN SENTRA WENT BAD ON ME. I TOOK IT TO
THE DEALERSHIP AND THEY INFORMED ME THAT THE
ENTIRE TRANSMISSION NEEDED TO BE REPLACED. THE
DEALERSHIP ALSO SAID THE FUEL PUMP AND CLUSTER
NEEDED TO BE REPLACED. I READ THAT THERE HAVE
BEEN    OTHER    COMPLAINTS    MADE    ABOUT    THE
TRANSMISSION SYSTEM FOR THESE CARS, AND THERE
SHOULD DEFINITELY BE A RECALL.

DATE OF INCIDENT:  October 18, 2021
NHTSA ID NUMBER: 11437135
SUMMARY:    I  HAVE  A  CVT  TRANSMISSION  AND
SOMETIMES IT'S HARD FOR ME TO EVEN START TO MOVE
MY VEHICLE BECAUSE OF THIS SPUTTERING. I'VE SEEN SO
MANY  COMPLAINTS  ON  THIS  CVT  AND  IT'S  REALLY
STARTING  TO  HINDER  ME  FROM  GETTING  BACK  AND
FORTH.

2019 NISSAN SENTRA NHTSA POWER TRAIN COMPLAINTS

DATE OF INCIDENT: January 21, 2021
NHTSA ID NUMBER: 11433401
SUMMARY: THE CONTACT OWNS A 2019 NISSAN SENTRA.
THE  CONTACT  STATED  WHILE  DRIVING  45  MPH  AND
DEPRESSING ON THE ACCELERATOR PEDAL, THE VEHICLE
WOULD  NOT  FULLY  ACCELERATE  AS  DESIRED.  THERE
WAS AN UNKNOWN WARNING LIGHT ILLUMINATED. THE
CONTACT ACTIVATED THE HAZARD LIGHTS AND PULLED
THE  VEHICLE  OVER  TO  THE  SIDE  OF  THE  ROAD.  THE
CONTACT WAITED A FEW MINUTES AND RESTARTED THE
VEHICLE AND WAS ABLE TO CONTINUE TO DRIVE TO HER
RESIDENCE.  THE  CONTACT  TOOK  THE  VEHICLE  TO  AN
INDEPENDENT MECHANIC WHO DIAGNOSED THE VEHICLE
WITH  A  MAJOR  TRANSMISSION  FAILURE.  THE  CONTACT
TOOK THE VEHICLE TO THE LOCAL DEALER AND IT WAS
AGREED  THAT  THE  TRANSMISSION  WAS  FAULTY.  THE
CONTACT  WAS  INFORMED  THAT  THE  MECHANIC  COULD
NOT  REPAIR  THE  VEHICLE  BECAUSE  THEY  COULD  NOT
FIND THE CODING FOR THE REPAIR IN THEIR SYSTEM. THE
VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS
NOT  MADE  AWARE  OF  THE  FAILURE.  THE  FAILURE
MILEAGE WAS APPROXIMATELY 35,901.

DATE OF INCIDENT: June 12, 2021
NHTSA ID NUMBER: 11420674
SUMMARY: WHEN I TRY TO GET A QUICK ACCELERATION

CLASS ACTION COMPLAINT

IT DOESN'T WANT TO MOVE IT HAS TROUBLE CLIMBING HILLS LIKE I HAD TO PUT IT TO THE FLOOR TO MAKE HIM GO ANYWHERE AND SOMETIMES WHEN I'M DRIVING TO RPMS GOES UP IN THE MIDDLE OF DRIVING WITHOUT ME HITTING THE GAS I ALSO NOTICED SOMETIMES THE BUTTONS ON THE STEERING WHEEL DON'T ALWAYS WORK I HAVE TO TURN OFF THE CAR AND TURN IT BACK ON KIND OF WORRIED ABOUT THE TRANSMISSION I HAVE A 2009 NISSAN ALTIMA TRANSMISSION IT'S GOING BAD ON IT BEFORE IT'S TIME SO I'M HOPING THIS CAR IS NOT HAVING THE SAME THING

DATE OF INCIDENT: June 6, 2021
NHTSA ID NUMBER: 11419850
SUMMARY: TRANSMISSION SHUDDERS AND LOSES POWER WHEN NEEDING TO QUICKLY ACCELERATE. NISSAN HAS PAID ME AN INCONVIENECE FEE BECAUSE ALL OF THEIR 2019 NISSAN SENTRA SR MODELS EXPERIENCE THE SAME ISSUE. THIS IS EXTREMELY DANGEROUS! WHEN NEEDING TO GET OUT OF A SITUATION QUICKLY, THE VEHICLE SHUDDERS AND HESITATES BEFORE CATCHING A GEAR. THIS HAS HAPPENED TO ME IN AN INTERSECTION. SOMEONE RAN A REDLIGHT AND I NEED TO MOVE QUICKLY TO AVOID AN ACCIDENT. THE VEHICLE SPUTTERED AND WHEN IT CAUGHT IT'S GEAR, ALMOST LURCHED ME INTO ONCOMING TRAFFIC. NISSAN HAS PLACED 7 TRANSMISSIONS IN MY CAR AND ALL ARE THE SAME. I NEVER TOOK THEIR REPLACEMENT CAR BECAUSE WHEN I DROVE TWO OTHER OF THE SAME MODELS OF MY CAR. THEY DID THE SAME THING! NISSAN NEEDS TO BE HELD ACCOUNTABLE AND FIND A WAY TO FIX THE TRANSMISSION SO IT DOES NOT DO THIS SHUDDER ANYMORE. I'VE SEEN MANY CONSUMER REVIEWS THAT STATE THE SAME PROBLEM. I FEEL THIS IS WIDESPREAD ENOUGH AND A BIG ENOUGH SAFETY DEFECT THAT NISSAN NEEDS TO FIX BEFORE IT KILLS SOMEONE BECAUSE THEY CAN MOVE OUT OF THE WAY IN TIME.[2]

## B. Customer Complaints on Third-Party Websites[3]

87. Consumers similarly complained about the defect on various online

---

[2] NHTSA, Consumer Complaints; https://www.nhtsa.gov/vehicle/2018/ NISSAN/SENTRA (complaints); https://www.nhtsa.gov/vehicle/2019/NISSAN/ SENTRA%252520SR%252520TURBO/4%252520DR/FWD (spelling and grammar mistakes remain as found in the original).

[3] Complaints referencing earlier model years to the Class Vehicles are included because, on information and belief, those model years are equipped with the same Xtronic CVT transmission and suffer from the same design and/or manufacturing defect.

CLASS ACTION COMPLAINT

forems. Below are just some examples:

a.    September 13, 2018: My 2013 Altima rides like a dream over 40 mph! Don't drive local , as coming up on 40mph the car shakes and shutters. Esp if turning! Passengers have asked me WTF is wrong with my car! It have a CVT, and I understand there are a lot of complaints about this issue.

*https://www.carcomplaints.com/Nissan/Altima/2013/transmission/CVT_shuttering_vibration_hesitation_running_roughly.shtml*

b.    May 1, 2017: I bought a brand new Nissan Altima in 2014 from the local Nissan dealership . . . . I feel my Nissan is jerking a little once a while. Now it's happening 3 or 4 times a day.

. . . .

Last Sunday heading back home from Orange County my Nissan STALLED in the middle of the freeway during heavy rain. It took 3 hours to get back home with AAA tow truck towing my Nissan.

. . . .

the service dept told me that that happens a lot to 2014 Nissan Altima & I am not the first ANGRY OWNER they are facing.

*https://www.carcomplaints.com/Nissan/Altima/2014/transmission/shudders_and_jerks.shtml*

c.    February 1, 2017: Brand new 2016 Nissan Altima purchased end of November. No vibration or shuddering until beginning of Feb 2017. Have had it at two different Nissan dealerships and they agree they feel the vibration and shudder but state there is nothing wrong with vehicle and that it's normal even though it didn't do it the first 2 months or so. They state that it is the CVT.

d.

*https://www.carcomplaints.com/Nissan/Altima/2016/transmission/vibration_in_transmission.shtml*

CLASS ACTION COMPLAINT

e.  July 12, 2021: Bought a 2017 Nissan Altima that only had 17,000 miles on it. Owned the car for 2 years with no issues and kept up on all of the maintenance. One day my check engine light comes on and my car starts acting like it doesn't want to move forward. I take it to the dealership and the code that comes back is for the transmission and it says "total failure" and it's going to cost me $4300 to fix. The car only had 73,000 miles on It at this point and is only 4 years old. How in the world does it already need a new transmission?

*https://www.consumeraffairs.com/automotive/nissan_altima.html*

f.  July 2, 2021: My Nissan Altima CVT failed at 65K miles. If you are familiar with the quality of Nissan, that shouldn't be a surprise. I took my car to Nissan in June 2021 because the CVT failed in November of 2020 during the pandemic with only 65K miles. While the car was 19K miles under the mileage limit for warranty coverage, Nissan refused to cover any of the expense because the time limit expired December 2020. I reminded Nissan that the end of 2020 was during the height of the pandemic when vaccines didn't exist, COVID was spreading uncontrollably and CDC guidelines advised people not to leave home except in an emergency. So I waited until I could get vaccinated and safely take the car for repair.

*https://www.consumeraffairs.com/automotive/27ltima_altima.hhtm*

g.  February 4, 2017: There is no excuse for a transmission to need replacing @ 70,800 miles… NONE. Nissan has a huge problem and will not stand behind it. My car still looks brand new and did drive that way until last week. No warnings just all of a sudden sitting at a traffic light it shut off on me and has never been the same. Found out today that the transmission needs replacing… $3,300 out my pocket because @ 60,000 miles there is no more warranty! PLEASE, if you are reading this, do NOT buy a Nissan product. There are tons of reviews and posts in numerous places of people having the same problem that I have and guess what… No recall from Nissan to

stand behind their faulty product.

*https://www.consumeraffairs.com/automotive/nissan_altima.ht
ml?page=27#sort=oldest&filter=none*

C. **Nissan Had Superior and Exclusive Knowledge of the CVT Defect**

88.    Nissan had superior and exclusive knowledge of the CVT Defect and knew or should have known that the defect was not known or reasonably discoverable by Plaintiffs and Class members before they purchased or leased the Class Vehicles.

89.    Plaintiffs are informed and believe and based thereon alleges that before they purchased their Class Vehicles, and since 2013, Nissan knew about the CVT Defect through sources in its exclusive and/or superior knowledge, including pre-release testing data, early consumer complaints to Nissan and its dealers who are their agents for vehicle repairs, consumer complaints regarding earlier model years with the same CVT equipped, testing conducted in response to those complaints, high failure rates and replacement part sales data, consumer complaints to NHTSA (which Nissan monitors), by developing technical service bulletins in an effort to address the CVT Defect, and through other aggregate data from Nissan dealers about the problem.

90.    Nissan is experienced in the design and manufacture of consumer vehicles. As an experienced manufacturer, Nissan conducts tests, including pre-sale durability testing, on incoming components, including the CVT, to verify the parts are free from defect and align with Nissan's specifications. Thus, Nissan knew or should have known the CVT was defective and prone to put drivers in a dangerous position due to the inherent risk of the defect.

91.    Additionally, on information and belief, Nissan knew of the impact of this defect from the sheer number of reports received from dealerships. Nissan's

customer relations department, which interacts with individual dealerships to identify potential common defects, has received numerous reports regarding the defect, which led to the release of the TSBs. Nissan's customer relations department also collects and analyzes field data including, but not limited to, repair requests made at dealerships, technical reports prepared by engineers who have reviewed vehicles for which warranty coverage is being requested, parts sales reports, and warranty claims data.

92.     Nissan's warranty department similarly analyzes and collects data submitted by its dealerships to identify trends in its vehicles. It is Nissan's policy that when a repair is made under warranty the dealership must provide Nissan with detailed documentation of the problem and the fix employed to correct it. Dealerships have an incentive to provide detailed information to Nissan, because they will be reimbursed for any repairs if the justification is sufficiently detailed.

93.     In fact, James ("Jim") Blenkarn, Nissan's Senior Manager, Systems Quality Improvement, has publicly confirmed Plaintiff' allegations. Mr. Blenkarn, in response to a question "On how Nissan monitors quality after a vehicle is launched" stated: "For the first six months, sometimes longer, of every new product, we have a team that focuses strictly on the product and examines every claim that comes in for that vehicle model. Our engineers have to target reporting something if it is a 0.5 incident rate. That's our threshold."[4]

94.     On April 27, 2017, Nissan issued TSB NTB17-039 for the class vehicles. The TSB was issued to address "CVT Judder and DTC P17F0 or P17F1 Stored." Specifically, the TSB was issued to correct "transmission judder (shake,

---

[4] 5 Minutes with… Jim Blenkarn, senior manager, systems quality improvement, Nissan North America" Richard Truett, April 16, 2018 Automotive News.      http://www.autonews.com/article/20180416/RETAIL05/180419990/5-minutes-withjimblenkarn-senior-manager-systems-quality

CLASS ACTION COMPLAINT

shudder, single or multiple bumps or vibration).” The repair procedure provided was replacing the CVT control valve, replacing the CVT sub-assembly, and/or reprogramming the TCM. On information and belief, the problem persisted, and this TSB was superseded numerous times, on May 2, 2017, June 29, 2017, October 12, 2017, October 26, 2017, March 5, 2018, March 14, 2018, October 8, 2018, March 11, 2020, March 25, 2020, September 30, 2020, December 23, 2020, and, most recently, February 19, 2021, with TSB NTB17-039m. These revised TSBs addressed the same concerns but expanded the vehicles affected and added reprogramming.

95. On information and belief, each TSB issued by Nissan was approved by manager, directors, and/or executives at Nissan. Therefore, on information and belief, Nissan’s managers, directors, and/or executives knew, or should have known, about the CVT Defect, but refused to disclose the CVT Defect to prospective purchaser and owners, and/or actively concealed the CVT Defect.

96. Additionally, Nissan had superior knowledge and knew of the CVT Defect’s impact on Plaintiffs and the Class due to previously settled litigation concerning the very same transmission and the very same defect, as contained in 2013-2016 Nissan Altima vehicles. *See Gann v. Nissan North America, Inc.*, No. 3:18-CV-00966, U.S. District Court for the Middle District of Tennessee, complaint filed September 25, 2018.

97. As part of the settlement reached in the *Gann* litigation, Nissan issued an extended warranty, on May 11, 2020, entitled: Campaign Bulletin, CVT Warranty Extension. This warranty extension covers 2013 to 2016 Nissan Altimas with the same CVT transmission and defect as the Class Vehicles and “includes the CVT assembly and internal CVT components, gaskets, and seals, CVT control valve body, torque converter, cooler kit (if applicable) and reprogramming of the Transmission Control Module (TCM), on the vehicles listed in this announcement

from its original duration of 60 months/60,000 miles to 84 months/84,000 miles (whichever occurs first)."

98.    The existence of the CVT Defect is a material fact that a reasonable consumer would consider when deciding whether to purchase or lease a Class Vehicle. Had Plaintiffs and other Class members known that the Class Vehicles were equipped with transmissions subject to premature failure, they would have paid less for the Class Vehicles or would not have purchased or leased them.

99.    Reasonable consumers, like Plaintiffs, reasonably expect that a vehicle's transmission is safe, will function in a manner that will not pose a safety risk, and is free from defects. Plaintiffs and Class members further reasonably expect that Nissan will not sell or lease vehicles with known safety defects, such as the CVT Defect, and will disclose any such defects to its consumers when it learns of them. They did not expect Nissan to fail to disclose the CVT Defect to them and to continually deny it.

**D.    Nissan Actively Concealed the CVT Defect**

100.   Despite its knowledge of the CVT Defect in the Class Vehicles, Nissan actively concealed the existence and nature of the defect from Plaintiffs and Class members. Specifically, Nissan failed to disclose or actively concealed at and after the time of purchase, lease, or repair:

a.    all known material defects or material nonconformity of the Class Vehicles, including the defects pertaining to the CVT;

b.    that the Class Vehicles, including the CVT, were not in good working order, were defective, and were not fit for their intended purposes; and

c.    that the Class Vehicles and the CVT were defective, despite Nissan learning of such defects as early as 2013.

101.   When consumers present their Class Vehicles to an authorized Nissan

dealer for CVT repairs, rather than repair the problem under warranty, Nissan dealers either inform consumers that their vehicles are functioning properly or conduct repairs that merely mask the CVT Defect.

102. Nissan has caused Plaintiffs and Class members to expend money and/or time at its dealerships to diagnose, repair or replace the Class Vehicles' CVT and/or related components, despite Nissan's knowledge of the CVT Defect.

## E. **Fraudulent Concealment Allegations**

103. Absent discovery, Plaintiffs are unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals at Nissan responsible for disseminating false and misleading marketing materials and information regarding the Class Vehicles. Nissan necessarily is in possession of, or has access to, all of this information.

104. Plaintiffs' claims arise out of Nissan's fraudulent concealment of the CVT Defect and the problems it causes, and its representations about the quality, durability, and performance of the Class Vehicles, including their CVTs.

105. To the extent that Plaintiffs' claims arise from Nissan's fraudulent concealment, there is no one document or communication, and no one interaction, upon which Plaintiffs base their claims. Plaintiffs allege that at all relevant times, including specifically at the time they purchased or leased their Class Vehicles, Nissan knew, or was reckless in not knowing, of the CVT Defect; Nissan was under a duty to disclose the CVT Defect based upon its exclusive knowledge of it, its affirmative representations about it, and its concealment of it, and Nissan never disclosed the CVT Defect to Plaintiffs or the public at any time or place or in any manner.

106. Plaintiffs make the following specific fraud allegations with as much specificity as possible, although they do not have access to information necessarily available only to Nissan:

CLASS ACTION COMPLAINT

a. **Who**: Nissan actively concealed the CVT Defect from Plaintiffs and Class members while simultaneously touting the quality, durability and performance of the Class Vehicles and their transmissions. Plaintiffs are unaware of, and therefore unable to identify, the true names and identities of those specific individuals at Nissan responsible for such decisions.

b. **What**: Nissan knew, or was reckless or negligent in not knowing, that the Class Vehicles contain the CVT Defect. Nissan concealed the Defect and made contrary representations about the quality, durability, performance, and other attributes of the Class Vehicles.

c. **When**: Nissan concealed material information regarding the CVT Defect at all times and made representations about the quality, durability, and performance of the Class Vehicles, starting no later than 2013, or at the subsequent introduction of certain models of Class Vehicles to the market, continuing through the time of sale/lease, and on an ongoing basis, and continuing to this day. Nissan has not disclosed the truth about the CVT Defect in the Class Vehicles to anyone outside of Nissan. Nissan has never taken any action to inform consumers about the true nature of the CVT Defect in Class Vehicles. And when consumers brought their Class Vehicles to Nissan complaining of the symptoms associated with the CVT Defect, Nissan denied any knowledge of, or responsibility for, the CVT Defect.

d. **Where**: Nissan concealed material information regarding the true nature of the CVT Defect in every communication it had with Plaintiffs and Class members and made contrary representations about the quality, durability, and performance of the Class Vehicles and their transmissions. Plaintiffs are aware of no document, communication, or other place or thing in which Nissan disclosed the truth about the CVT Defect in the Class Vehicles to anyone outside of Nissan. Such information is not adequately disclosed in any sales documents,

displays, advertisements, warranties, owner's manual, or on Nissan's website.

e. *How*: Nissan concealed the CVT Defect from Plaintiffs and Class members and made representations about the quality and durability of the Class Vehicles. Nissan actively concealed the truth about the existence and nature of the CVT Defect from Plaintiffs and Class members at all times, even though it knew about the CVT Defect and knew that information about the CVT Defect would be important to a reasonable consumer, and Nissan promised in its marketing materials that the Class Vehicles have qualities that they do not have, and moreover, made representations in its warranties that it knew were false, misleading, and deceptive.

f. *Why*: Nissan actively concealed material information about the CVT Defect in Class Vehicles, and simultaneously made representations about the quality, durability, and performance of the Class Vehicles and their transmissions, for the purpose of inducing Plaintiffs and Class members to purchase or lease the Class Vehicles, rather than purchasing or leasing competitors' vehicles. Had Nissan disclosed the truth, for example, in its advertisements or other materials or communications, Plaintiffs (and reasonable consumers) would have been aware of the CVT Defect, and would not have bought the Class Vehicles or would have paid less for them.

## F. <u>Nissan Unjustly Retained a Substantial Benefit</u>

107. On information and belief, Plaintiffs allege that Nissan unlawfully failed to disclose the alleged defect to induce them and other putative Class members to purchase or lease the Class Vehicles.

108. Plaintiffs allege further that Nissan thus engaged in deceptive acts or practices pertaining to all transactions involving the Class Vehicles, including Plaintiffs.

109. As discussed above, therefore, Plaintiffs allege that Nissan unlawfully

CLASS ACTION COMPLAINT

induced each of them to purchase his or her Class Vehicle by concealing a material fact (the defective CVT) and that they would each have paid less for the Class Vehicles, or not purchased them at all, had they known of the defect.

110. Accordingly, Nissan's ill-gotten gains, benefits accrued in the form of increased sales and profits resulting from the material omissions that did -- and likely will continue to -- deceive consumers, should be disgorged.

## TOLLING OF THE STATUTE OF LIMITATIONS

### A.  Fraudulent Concealment

111. Nissan has known of the CVT Defect in the Class Vehicles since at least 2013, and has concealed from, or failed to disclose to, Plaintiffs, Class members, and the public the full and complete nature of the CVT Defect, even when directly asked about it by Plaintiffs and Class members during communications with Nissan, Nissan Customer Service, Nissan dealerships, and Nissan service centers. Nissan continues to conceal, and fail to disclose, the CVT Defect to this day.

112. Any applicable statute of limitation has been tolled by Nissan's knowledge, failure to disclose, active concealment, and denial of the facts alleged herein, which behavior is ongoing.

### B.  Estoppel

113. Nissan was, and is, under a continuous duty to disclose to Plaintiffs and Class members the true character, quality, and nature of the Class Vehicles. Nissan actively concealed – and continues to conceal – the true character, quality, and nature of the Class Vehicles and knowingly made representations about the quality and durability of the Vehicles. Plaintiffs and Class members reasonably relied upon Nissan's knowing and affirmative representations and/or active concealment of these facts. Based on the foregoing, Nissan is estopped from relying on any statutes of limitation in defense of this action.

## C. **Discovery Rule**

114.   The causes of action alleged herein did not accrue until Plaintiffs and Class members discovered that their Class Vehicles contained the CVT Defect.

115.   However, Plaintiffs and Class members had no realistic ability to discern that the Class Vehicles were defective until—at the earliest—after the CVT Defect caused their transmission and/or component parts to fail or experience the pre-failure symptoms as described above.

116.   Even then, Plaintiffs and Class members had no reason to know that such failures, or the pre-failure symptoms described above, were caused by a defect in the Class Vehicles because of Nissan's active concealment of the CVT Defect. Not only did Nissan fail to notify Plaintiffs or Class members about the CVT Defect, Nissan, in fact, denied any knowledge of, or responsibility for, the CVT Defect when directly asked about it.

117.   Thus, Plaintiffs and Class members were not reasonably able to discover the CVT Defect until after they had purchased or leased the Class Vehicles, despite their exercise of due diligence, and their causes of action did not accrue until, at earliest, they discovered that the Defect was causing transmission failure and/or received a purported fix of their vehicles which they then discovered failed to permanent repair their Class Vehicles.

## CLASS ACTION ALLEGATIONS

118.   Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated as members of the proposed Classes and Sub-Classes pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

119.   The Nationwide Classes are defined as:

CLASS ACTION COMPLAINT

**Altima Class**: All current and former owners and lessees of 2017 and 2018 model year Nissan Altima vehicles equipped with a CVT who purchased or leased the vehicle in the United States or its Territories.

**Sentra Class**: All current and former owners and lessees of 2018 and 2019 model year Nissan Sentra, Versa and Versa Note vehicles equipped with a CVT who purchased or leased the vehicle in the United States or its Territories.

120.    The Sub-Classes are defined as:

**Nevada Sub-Class**: All current and former owners and lessees of 2017 and 2018 model year Nissan Altima vehicles equipped with a CVT who purchased or leased the vehicle in the State of Nevada.

**California Sub-Class**: All current and former owners and lessees of 2017 and 2018 model year Nissan Altima vehicles equipped with a CVT who purchased or leased the vehicle in the State of California.

**New York Sub-Class**: All current and former owners and lessees of 2018 and 2019 model year Nissan Sentra, Versa and Versa Note vehicles equipped with a CVT who purchased or leased the vehicle in the State of New York.

**Missouri Sub-Class**: All current and former owners and lessees of 2017 and 2018 model year Nissan Altima vehicles equipped with a CVT who purchased or leased the vehicle in the State of Missouri.

**Pennsylvania Sub-Class**: All current and former owners and lessees of 2017 and 2018 model year Nissan Altima vehicles equipped with a CVT who purchased or leased the vehicle in the Commonwealth of Pennsylvania.

**Mississippi Sub-Class**: All current and former owners and lessees of 2018 and 2019 model year Nissan Sentra, Versa and Versa Note vehicles equipped with a CVT who purchased or leased the vehicle in the State of Mississippi.

Page 37
CLASS ACTION COMPLAINT

121.    Excluded from the Classes and Sub-Classes are: (1) Nissan, any entity or division in which Nissan has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) any Judge sitting in the presiding state and/or federal court system who may hear an appeal of any judgment entered; and (4) those persons who have suffered personal injuries as a result of the facts alleged herein. Plaintiffs reserve the right to amend the Class definitions if discovery and further investigation reveal that the Classes should be expanded or otherwise modified.

122.    <u>Numerosity</u>: Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class members in a single action will provide substantial benefits to all parties and to the Court. The Class members are readily identifiable from information and records in Nissan's possession, custody, or control, as well as from records kept by the Class members that are verifiable through the Department of Motor Vehicles.

123.    <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the Class in that Plaintiffs, like all Class members, purchased or leased a Class Vehicle designed, manufactured, and distributed by Nissan. The representative Plaintiffs, like all Class members, have been damaged by Nissan's misconduct in that they have incurred or will incur the cost of repairing or replacing the defective CVT and/or its components. Furthermore, the factual bases of Nissan's misconduct are common to all Class members and represent a common thread resulting in injury to the Class.

124.    <u>Commonality</u>: There are numerous questions of law and fact common to Plaintiffs and the Class that predominate over any question affecting Class

CLASS ACTION COMPLAINT

members individually. These common legal and factual issues include the following:

    a.    Whether Class Vehicles suffer from defective CVTs;

    b.    Whether the defects relating to the CVT constitute an unreasonable safety risk;

    c.    Whether Nissan knows about the defects pertaining to the CVT and, if so, how long Nissan has known of the defect;

    d.    Whether the defective nature of the CVT constitutes a material fact;

    e.    Whether Nissan has a duty to disclose the defective nature of the CVT to Plaintiffs and Class members;

    f.    Whether Plaintiffs and the other Class members are entitled to equitable relief, including a preliminary and/or permanent injunction;

    g.    Whether Nissan knew or reasonably should have known of the defects pertaining to the CVT before it sold and leased Class Vehicles to Class members;

    h.    Whether Nissan should be declared financially responsible for notifying the Class members of problems with the Class Vehicles and for the costs and expenses of repairing and replacing the defective CVT and/or its components; and

    i.    Whether Nissan is obligated to inform Class members of their right to seek reimbursement for having paid to diagnose, repair, or replace their defective CVT and/or its components.

125. <u>Adequate Representation</u>: Plaintiffs will fairly and adequately protect the interests of the Class members. Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class

CLASS ACTION COMPLAINT

actions involving cars, and they intend to prosecute this action vigorously.

126. <u>Predominance and Superiority</u>: Plaintiffs and Class members have all suffered and will continue to suffer harm and damages as a result of Nissan's unlawful and wrongful conduct. The injury and damages can and will be proven by common evidence. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most Class members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy. Because of the relatively small size of the individual Class members' claims, it is likely that only a few Class members could afford to seek legal redress for Nissan's misconduct. Absent a class action, Class members will continue to incur damages, and Nissan's misconduct will continue without remedy or relief. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that it will conserve the resources of the courts and the litigants and promote consistency and efficiency of adjudication.

<div align="center">

**FIRST CAUSE OF ACTION**
**(Breach of Express Warranty)**
*On Behalf of the Nevada Sub-Class*

</div>

127. Plaintiff Martinez incorporates by reference the allegations contained in the above paragraphs as though fully set forth herein.

128. Plaintiff brings this cause of action on behalf of herself and Nevada Sub-Class.

129. Each Class Vehicle sold by Nissan included an express warranty that covered the transmission and warranted that Nissan would repair or replace any defects in materials and workmanship in the class vehicles.

130. Nissan provided all purchasers and lessees of the class vehicles with a written warranty that "begins on the date the vehicle is delivered to the first retail

buyer or put in use, whichever is earlier." Under the warranty's powertrain coverage, Nissan expressly warranted that the warranty "covers any repairs needed to correct defects in materials or workmanship." The warranty's powertrain coverage covers the vehicles for 60 months or 60,000 miles, whichever comes first. Nissan promised to cover listed powertrain components under is warranty, including the transmission components such as the "[t]ransmission and [t]ransaxle [c]ase and all internal parts, torque converter and converter housing, automatic transmission control module, transfer case and all internal parts, seals and gaskets, clutch cover, A/T cooler, and electronic transmission controls."

131. As a result of Nissan's breach of the applicable express warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the CVT Defect, Plaintiff and Sub-Class members were harmed and suffered actual damages in that the Class Vehicles' transmissions are substantially certain to fail before their expected useful life has run.

132. Nissan provided all purchasers and lessees of the Class Vehicles with the express warranty described herein, which became a material part of the bargain. Accordingly, Nissan's express warranty is an express warranty.

133. Nissan manufactured and/or installed the transmission and its component parts in the Class Vehicles, and the transmission and its component parts are covered by the express warranty.

134. Nissan provided all purchasers and lessees of the Class Vehicles with a New Vehicle Basic Limited Warranty for 3 years or 36,000 miles, and a Powertrain Warranty for 5 years or 60,000 miles.

135. On information and belief, Nissan breached the express warranty by purporting to repair the transmission and its component parts by replacing the defective or damaged transmission components with the same defective

Page 35
CLASS ACTION COMPLAINT

components and/or instituting temporary fixes, on information and belief, to ensure that the CVT Defect manifests outside of the Class Vehicles' express warranty period.

136. Plaintiff and the Nevada Sub-Class gave Nissan notice of its breach by presenting their vehicles to Nissan dealerships for repairs that were not made and/or by providing formal written notice to Nissan.

137. However, Plaintiff was not required to notify Nissan of the breach and/or was not required to do so because affording Nissan a reasonable opportunity to cure its breach of written warranty would have been futile. Nissan was also on notice of the defect from the complaints and service requests it received from Class members, from repairs and/or replacements of the transmission or a component thereof, and through other internal sources.

138. As a direct and proximate cause of Nissan's breach, Plaintiff and Sub-Class members suffered, and continue to suffer, damages, including economic damages at the point of sale or lease. Additionally, Plaintiff and Nevada Sub-Class Members either have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

139. Additionally, Nissan breached the express warranty by performing illusory repairs. Rather than repairing the vehicles pursuant to the express warranty, Nissan falsely informed class members that there was no problem with their vehicle, performed ineffective software flashes, or replaced defective components in the CVTs with equally defective components, without actually repairing the vehicles.

140. Plaintiff Martinez and Nevada Sub-Class members are entitled to legal and equitable relief against Nissan, including actual damages, consequential damages, specific performance, attorneys' fees, costs of suit, and other relief as appropriate.

CLASS ACTION COMPLAINT

## SECOND CAUSE OF ACTION
## (Violation of the Nevada Deceptive Trade Practices Act,
## Nev. Rev. Stat. §§ 598.0903, *et seq.*)
### *On Behalf of the Nevada Sub-Class*

141.   Plaintiff Martinez incorporates by reference the allegations contained in the above paragraphs as though fully set forth herein.

142.   Plaintiff Martinez brings this cause of action on behalf of herself and on behalf of the members of the Nevada Sub-Class.

143.   The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), Nev. Rev. Stat. §§ 598.0903, *et seq*. prohibits deceptive trade practices. Nev. Rev. Stat. § 598.0915 provides that a person engages in a "deceptive trade practice" if, in the course of business or occupation, the person: "5. Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith;" "7. Represents that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model;" "9. Advertises goods or services with intent not to sell or lease them as advertised;" or "15. Knowingly makes any other false representation in a transaction."

144.   Defendant's actions as set forth below occurred in the conduct of trade or commerce.

145.   By failing to disclose and concealing the defective nature of the CVT from Plaintiff Martinez and prospective Nevada Sub-Class members, Defendant violated the Nevada DTPA, as it represented that the Class Vehicles and their transmissions had characteristics and benefits that they do not have and represented

that the Class Vehicles and their transmissions were of a particular standard, quality, or grade when they were of another.

146. Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

147. Defendant knew and continues to know that the Class Vehicles and their CVTs suffered from an inherent defect, were defectively designed, and were not suitable for their intended use.

148. Defendant was under a duty to Plaintiff Martinez and Nevada Sub-Class members to disclose the defective nature of the CVT and/or the associated repair costs because:

      a.    Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' CVT;

      b.    Plaintiff Martinez and Nevada Sub-Class members could not reasonably have been expected to learn or discover that their CVT had a dangerous safety defect until it manifested; and

      c.    Defendant knew that Plaintiff Martinez and Nevada Sub-Class members could not reasonably have been expected to learn of or discover the safety defect.

149. In failing to disclose the defective nature of the CVT, Defendant knowingly and intentionally concealed and continues to conceal material facts and breached its duty not to do so.

150. The facts Defendant concealed from or failed to disclose to Plaintiff Martinez and Nevada Sub-Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay less. Had they known that the Class Vehicles' CVT was defective, Plaintiff and Class members would not have

purchased or leased the Class Vehicles or would have paid less for them.

151.  Plaintiff Martinez and Nevada Sub-Class members are reasonable consumers who do not expect the transmissions installed in their vehicles to exhibit problems such as juddering, failure to shift, stalling, and delayed or no acceleration.

152.  This is the reasonable and objective consumer expectation relating to vehicle transmissions.

153.  Plaintiff Martinez and the Nevada Sub-Class are entitled to equitable relief.

**THIRD CAUSE OF ACTION**
**(Breach of Common Law Implied Warranty of Merchantability and Breach of Implied Warranty Pursuant to Nev. Rev. Stat. §§ 104.2314 and 104A.2212)**
*On Behalf of the Nevada Sub-Class*

154.  Plaintiff Martinez incorporates by reference the allegations contained in the above paragraphs as though fully set forth herein.

155.  Plaintiff Martinez brings this cause of action on behalf of herself and on behalf of the members of the Nevada Sub-Class.

156.  Defendant was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

157.  Defendant provided Plaintiff Martinez and Nevada Sub-Class members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold.

158.  However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, inter alia, the Class Vehicles and their CVTs suffered from an inherent defect at the time of sale and

thereafter and are not fit for their particular purpose of providing safe and reliable transportation.

159. Defendant impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their CVTs that were manufactured, supplied, distributed, and/or sold by Nissan were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their CVTs would be fit for their intended use while the Class Vehicles were being operated.

160. Contrary to the applicable implied warranties, the Class Vehicles and their CVTs at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff Martinez and Nevada Sub-Class members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, including the defective design of the CVT.

161. The alleged CVT Defect is inherent in each Class Vehicle and was present in each Class Vehicle at the time of sale.

162. As a result of Defendant's breach of the applicable implied warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the CVT Defect, Plaintiff Martinez and Nevada Sub-Class members were harmed and suffered actual damages in that the Class Vehicles' CVTs cannot be repaired and are substantially certain to fail before their expected useful life has run.

163. Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of Nevada Common Law Implied Warranties and Nevada Revised Statutes sections 104.2314 and 104A.2212.

## FOURTH CAUSE OF ACTION
## (Violation of Consumer Legal Remedies Act,
## California Civil Code §§ 1750, *et seq.*)
### *On Behalf of the California Sub-Class*

164.   Plaintiff Scott incorporates by reference the allegations contained in the above paragraphs as though fully set forth herein.

165.   Plaintiff Scott brings this cause of action on behalf of herself and on behalf of the members of the California Sub-Class.

166.   The California Consumer Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, *et seq.* prohibits deceptive trade practices. The California Civil Code § 1770(a) prohibits:

  a.   Representing that the goods have characteristics, uses, or benefits which they do not have (Cal. Civ. Code § 1770(a)(5));

  b.   Representing that the goods are of a particular standard, quality, or grade if they are of another (Cal. Civ. Code § 1770(a)(7));

  c.   Representing that a transaction involves rights, remedies, or obligations that it does not have or involve (Cal. Civ. Code § 1770(a)(14)); and

  d.   Representing that the goods have been supplied in accordance with a previous representation when they have not (Cal. Civ. Code § 1770(a)(16)).

167.   Defendant's actions as set forth below occurred in the conduct of trade or commerce.

168.   By failing to disclose and concealing the defective nature of the CVT from Plaintiff Scott and California Sub-Class members, Defendant violated the California CLRA, as it represented that the Class Vehicles and their transmissions had characteristics and benefits that they do not have and represented that the Class

Vehicles and their transmissions were of a particular standard, quality, or grade when they were of another.

169. Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

170. Defendant knew and continues to know that the Class Vehicles and their CVTs suffered from an inherent defect, were defectively designed, and were not suitable for their intended use.

171. Defendant was under a duty to Plaintiff Scott and California Sub-Class Members to disclose the defective nature of the CVT and/or the associated repair costs because:

        d.    Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' CVT;

        e.    Plaintiff Scott and California Sub-Class members could not reasonably have been expected to learn or discover that their CVT had a dangerous safety defect until it manifested; and

        f.    Defendant knew that Plaintiff Scott and California Sub-Class members could not reasonably have been expected to learn of or discover the safety defect.

172. In failing to disclose the defective nature of the CVT, Defendant knowingly and intentionally concealed and continues to conceal material facts and breached its duty not to do so.

173. The facts Defendant concealed from or failed to disclose to Plaintiff Scott and California Sub-Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay less. Had they known that the Class Vehicles' CVT was defective, Plaintiff Scott and California Sub-Class members would not have

purchased or leased the Class Vehicles or would have paid less for them.

174. Plaintiff Scott and California Sub-Class members are reasonable consumers who do not expect the transmissions installed in their vehicles to exhibit problems such as juddering, failure to shift, stalling, and delayed or no acceleration.

175. This is the reasonable and objective consumer expectation relating to vehicle transmissions.

176. Plaintiff Scott and the California Sub-Class are entitled to equitable relief.

177. In accordance with California Civil Code § 1780(a), Plaintiff Scott and members of the California Sub-Class seek injunctive relief for Defendant's violations of the CLRA.

178. Plaintiff provided Defendant with notice of their violations of the CLRA pursuant to California Civil Code § 1782(a) on May 12, 2022. If, within 30 days, Defendant fails to provide appropriate relief for their violations of the CLRA, Plaintiff will seek monetary, compensatory, and punitive damages, in addition to the injunctive and equitable relief she seeks now.

## FIFTH CAUSE OF ACTION
### (Unlawful, Unfair, and Fraudulent Business Practices in Violation of California Business and Professions Code §§ 17200, *et seq.*)
*On Behalf of the California Sub-Class*

179. Plaintiff Scott incorporates by reference each and every preceding paragraph as though fully set forth herein.

180. Plaintiff Scott brings this cause of action on behalf of herself and on behalf of the members of the California Sub-Class.

181. The UCL defines unfair competition to include any "unfair," "unlawful," or "fraudulent" business act or practice.

CLASS ACTION COMPLAINT

182. Defendant has violated, and continues to violate, the UCL by misrepresenting the Class Vehicles as having superior performance and safety features and by concealing the defective nature of the CVT from Plaintiff Scott and prospective California Sub-Class members.

183. By engaging in the above-described acts and practices, Defendant has committed an unfair business practice within the meaning of the UCL. Consumers/Class members have suffered substantial injury they could not reasonably have avoided other than by not purchasing the Vehicles.

184. Defendant's acts and practices have deceived and/or are likely to California Sub-Class members and the public and, thus, constitute a fraudulent business practice. Defendant uniformly marketed the Class Vehicles as delivering superior performance and safety features, when, in fact, they do not, because the Class Vehicles and their CVTs suffered from an inherent defect, were defectively designed, and were not suitable for their intended use, which Defendant knew, or should have known.

185. As discussed above, Plaintiff Scott and members of the California Sub-Class purchased and/or leased the Class Vehicles directly from Defendant. Plaintiff Scott and members of the California Sub-Class were injured in fact and lost money as a result of such acts of unfair competition.

186. The injuries suffered by Plaintiff Scott and members of the California Sub-Class are greatly outweighed by any potential countervailing benefit to consumers or to competition. The injuries suffered by Plaintiff Scott and members of the California Sub-Class should have or could have been reasonably avoided.

187. Defendant received the funds paid by Plaintiff Scott and members of the California Sub-Class and profited by misrepresenting the properties of the Vehicles that it otherwise would not have sold. Defendant's revenues attributable thereto are, thus, directly traceable to the substantial amount of money paid out by

Plaintiff Scott and members of the California Sub-Class.

188.    Unless Defendant is enjoined from continuing to engage in the unlawful, unfair, and fraudulent business acts and practices as described herein, which conduct is ongoing, Plaintiff Scott and members of the California Sub-Class will continue to be injured by Defendant's conduct.

189.    Defendant, through its acts of unfair competition, has acquired money from Plaintiff Scott and California Sub-Class members. Plaintiff Scott and members of the California Sub-Class request this Court to enjoin Defendant from continuing to violate the UCL.

190.    The unlawful, unfair, and fraudulent conduct described herein is ongoing and continues to this date. Plaintiff Scott and members of the California Sub-Class, therefore, are entitled to relief described below as appropriate for this cause of action.

## SIXTH CAUSE OF ACTION
### (Breach of Express Warranty Under California Law, Cal. Com. Code § 2313)
*On Behalf of the California Sub-Class*

191.    Plaintiff Scott incorporates by reference the allegations contained in the above paragraphs as though fully set forth herein.

192.    Plaintiff Scott brings this cause of action on behalf of herself and the California Sub-Class.

193.    Each Class Vehicle sold by Nissan included an express warranty that covered the transmission and warranted that Nissan would repair or replace any defects in materials and workmanship in the class vehicles.

194.    Nissan provided all purchasers and lessees of the class vehicles with a written warranty that "begins on the date the vehicle is delivered to the first retail buyer or put in use, whichever is earlier." Under the warranty's powertrain coverage, Nissan expressly warranted that the warranty "covers any repairs needed

CLASS ACTION COMPLAINT

to correct defects in materials or workmanship." The warranty's powertrain coverage covers the vehicles for 60 months or 60,000 miles, whichever comes first. Nissan promised to cover listed powertrain components under is warranty, including the transmission components such as the "[t]ransmission and [t]ransaxle [c]ase and all internal parts, torque converter and converter housing, automatic transmission control module, transfer case and all internal parts, seals and gaskets, clutch cover, A/T cooler, and electronic transmission controls."

195. As a result of Nissan's breach of the applicable express warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the CVT Defect, Plaintiff Scott and California Sub-Class members were harmed and suffered actual damages in that the Class Vehicles' transmissions are substantially certain to fail before their expected useful life has run.

196. Nissan provided all purchasers and lessees of the Class Vehicles with the express warranty described herein, which became a material part of the bargain. Accordingly, Nissan's express warranty is an express warranty under California law.

197. Nissan manufactured and/or installed the transmission and its component parts in the Class Vehicles, and the transmission and its component parts are covered by the express warranty.

198. Nissan provided all purchasers and lessees of the Class Vehicles with a New Vehicle Basic Limited Warranty for 3 years or 36,000 miles, and a Powertrain Warranty for 5 years or 60,000 miles.

199. On information and belief, Nissan breached the express warranty by purporting to repair the transmission and its component parts by replacing the defective or damaged transmission components with the same defective components and/or instituting temporary fixes, on information and belief, to ensure

that the CVT Defect manifests outside of the Class Vehicles' express warranty period.

200. Plaintiff Scott has used her Vehicle in a manner consistent with the Vehicle's intended use.

201. Plaintiff Scott gave Nissan notice of its breach by informing a Nissan dealership via telephone and Nissan through correspondence for repairs that were not made.

202. However, Plaintiff Scott was not required to notify Nissan of the breach and/or were not required to do so because affording Nissan a reasonable opportunity to cure its breach of written warranty would have been futile. Nissan was also on notice of the defect from the complaints and service requests it received from California Sub-Class members, from repairs and/or replacements of the transmission or a component thereof, and through other internal sources.

203. As a direct and proximate cause of Nissan's breach, Plaintiff Scott and California Sub-Class members suffered, and continue to suffer, damages, including economic damages at the point of sale or lease. Additionally, Plaintiff Scott and California Sub-Class members either have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

204. Additionally, Nissan breached the express warranty by performing illusory repairs. Rather than repairing the vehicles pursuant to the express warranty, Nissan falsely informed class members that there was no problem with their vehicle, performed ineffective software flashes, or replaced defective components in the CVTs with equally defective components, without actually repairing the vehicles.

205. Plaintiff Scott and California Sub-Class members are entitled to legal and equitable relief against Nissan, including actual damages, consequential damages, specific performance, attorneys' fees, costs of suit, and other relief as

appropriate.

<u>SEVENTH CAUSE OF ACTION</u>
**(Breach of Implied Warranties of Merchantability Under California Civil**
**Code § 1792 and California Commercial Code § 2314)**
*On Behalf of the California Sub-Class*

206.  Plaintiff Scott incorporates by reference the allegations contained in the above paragraphs as though fully set forth herein.

207.  Plaintiff Scott brings this cause of action on behalf of herself and on behalf of the members of the California Sub-Class.

208.  Plaintiff Scott and the members of the California Sub-Class purchased or leased the Vehicles primarily for personal, family, or household purposes as defined under California Civil Code § 1791(a).

209.  A warranty that the Vehicles are in merchantable quality and condition is implied under California Civil Code § 1792 and California Commercial Code § 2314.

210.  Defendant was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

211.  Defendant provided Plaintiff Scott and California Sub-Class members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold.

212.  Plaintiff Scott and California Sub-Class members were intended to be the ultimate users of the Vehicles, and Nissan's express warranty was designed for and intended to benefit end-user purchasers.

213.  However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, inter alia, the Class Vehicles and their CVTs suffered from an inherent defect at the time of sale and

thereafter and are not fit for their particular purpose of providing safe and reliable transportation.

214.  Defendant impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their CVTs that were manufactured, supplied, distributed, and/or sold by Nissan were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their CVTs would be fit for their intended use while the Class Vehicles were being operated.

215.  Contrary to the applicable implied warranties, the Class Vehicles and their CVTs at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, including the defective design of their CVT.

216.  The alleged CVT Defect is inherent in each Class Vehicle and was present in each Class Vehicle at the time of sale.

217.  Plaintiff Scott and California Sub-Class members are in privity of contract with Nissan through their purchase or lease of the Class Vehicles.

218.  Plaintiff Scott and California Sub-Class members furnished Nissan an opportunity to cure its breach of warranty and complied with all obligations under the implied warranty of merchantability. Despite knowing the Vehicles were defective prior to or concurrent with its sale and/or lease, Nissan has refused to provide Plaintiff Scott and California Sub-Class members with appropriate and effective warranty relief. As a result, Plaintiff Scott and California Sub-Class members are left without the functional Vehicles they reasonably expected when making their purchasing and/or leasing decisions.

219.  As a result of Defendant's breach of the applicable implied warranties,

owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the CVT Defect, Plaintiff Scott and California Sub-Class members were harmed and suffered actual damages in that the Class Vehicles' CVT components are substantially certain to fail before their expected useful life has run.

220.  Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California's Implied Warranties of Merchantability under Cal. Civil Code § 1792 and Cal. Comm. Code § 2314.

## EIGHTH CAUSE OF ACTION
### (Violation of the California False Advertising Law, California Business and Professions Code §§ 17500, *et seq.*)
*On Behalf of the California Sub-Class*

221.  Plaintiff Scott incorporates by reference the allegations contained in the above paragraphs as though fully set forth herein.

222.  Plaintiff Scott brings this cause of action on behalf of herself and on behalf of the members of the California Sub-Class.

223.  California Business and Professions Code §§ 17500, *et seq*., the False Advertising Law ("FAL"), proscribes the dissemination of a statement which is "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." The FAL prohibits statements that are "disseminated before the public in [California]" as well as those that are "disseminated from [California] before the public in any state."

224.  The misrepresentations at issue in this litigation were disseminated from California to Plaintiff Scott and the members of the California Sub-Class.

225.  Plaintiff Scott and the members of the California Sub-Class are "persons" within the meaning of the FAL.

CLASS ACTION COMPLAINT

226. Defendant is a "corporation" within the meaning of the FAL.

227. Defendant engaged in advertising and marketing to the public and offered the Class Vehicles for sale.

228. Defendant engaged in the advertising and marketing alleged herein with the intent to induce the sale of its Class Vehicles to consumers.

229. Defendant's advertising and marketing representations regarding the Class Vehicles were untrue, misleading, and material as set forth in detail *supra*. Defendant also concealed material information from consumers regarding the Class Vehicles' defect and limitations.

230. By failing to disclose and concealing the defective nature of the CVT from Plaintiff Scott and prospective California Sub-Class members, Defendant violated the California FAL, as it represented that the Class Vehicles and their transmissions had characteristics and benefits that they do not have and represented that the Class Vehicles and their transmissions were of a particular standard, quality, or grade when they were of another.

231. Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

232. Defendant knew and continues to know that the Class Vehicles and their CVTs suffered from an inherent defect, were defectively designed, and were not suitable for their intended use.

233. Defendant was under a duty to Plaintiff Scott and California Sub-Class members to disclose the defective nature of the CVT and/or the associated repair costs because:

    a.    Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' CVT;

    b.    Plaintiff Scott and California Sub-Class members could not

reasonably have been expected to learn or discover that their CVT had a dangerous safety defect until it manifested; and

c.   Defendant knew that Plaintiff Scott and California Sub-Class members could not reasonably have been expected to learn of or discover the safety defect.

234.   In failing to disclose the defective nature of the CVT, Defendant knowingly and intentionally concealed and continues to conceal material facts and breached its duty not to do so.

235.   The facts Defendant concealed from or failed to disclose to Plaintiff Scott and California Sub-Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay less. Had they known that the Class Vehicles' CVT was defective, Plaintiff Scott and California Sub-Class members would not have purchased or leased the Class Vehicles or would have paid less for them.

236.   Plaintiff Scott has standing to pursue a FAL claim on behalf of the Class because she has suffered an injury in fact, including the loss of money or property, as a result of and in reliance on Defendant's false advertising. As set forth above, Plaintiff Scott was exposed to and read Defendant's misrepresentations prior to purchase, considered them material, relied on them, and was deceived and injured by them.

237.   Plaintiff Scott and California Sub-Class members are reasonable consumers who do not expect the transmissions installed in their vehicles to exhibit problems such as juddering, failure to shift, stalling, and delayed or no acceleration.

238.   This is the reasonable and objective consumer expectation relating to vehicle transmissions.

239.   Accordingly, Plaintiff Scott and the California Sub-Class request that this Court enter such orders or judgments as may be necessary to enjoin Defendant

from continuing its false advertising practices and to restore to Plaintiff Scott and the California Sub-Class any money Defendant acquired by false advertising, including restitution and/or restitutionary disgorgement, and for attorney's fees and costs.

<div align="center">

**NINTH CAUSE OF ACTION**
**(Violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. §§ 201-1 to 201-9.2)**
*On Behalf of the Pennsylvania Sub-Class*

</div>

240. Plaintiff Parys and Plaintiff Ortiz incorporate by reference the allegations contained in the above paragraphs as though fully set forth herein.

241. Plaintiff Parys and Plaintiff Ortiz bring this cause of action on behalf of themselves and on behalf of the members of the Pennsylvania Sub-Class.

242. Plaintiff Parys, Plaintiff Ortiz, members of the Pennsylvania Sub-Class, and Defendant are each a "person" as defined at 73 Pa. Stat. § 201-2(2).

243. Plaintiff Parys, Plaintiff Ortiz, and members of the Pennsylvania Sub-Class purchased goods and services in "trade" and "commerce" as defined at 73 Pa. Stat. § 201-2(3).

244. Plaintiff Parys, Plaintiff Ortiz, and Pennsylvania Sub-Class members purchased goods and services primarily for personal, family, and/or household purposes under 73 Pa. Stat. § 201-9.2.

245. The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. §§ 598.0903, *et seq*. prohibits deceptive trade practices. Defendant engaged in "unfair methods of competition" or "unfair or deceptive acts or practices" as defined at 73 Pa. Stat. § 201-2(4) by engaging in the following conduct:

    a.    Representing that its goods and services had characteristics, uses, benefits, and qualities that they did not have (73 Pa. Stat.

§ 201- 2(4)(v));

b.    Representing that its goods and services were of a particular standard or quality when they were of another quality (73 Pa. Stat. § 201- 2(4)(vii));

c.    Advertising its goods and services with intent not to sell them as advertised (73 Pa. Stat. § 201-2(4)(ix); and

d.    "Engaging in any other . . . deceptive conduct which creates a likelihood of confusion or of misunderstanding" (73 Pa. Stat. § 201- 2(4)(xxi)).

246. These unfair methods of competition and unfair or deceptive acts or practices are declared unlawful by 73 Pa. Stat. § 201-3.

247. Defendant's actions as set forth below occurred in the conduct of trade or commerce.

248. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about, *inter alia*, the quality and characteristics of the Class Vehicles.

249. By failing to disclose and concealing the defective nature of the CVT from Plaintiff Parys, Plaintiff Ortiz, and prospective Pennsylvania Sub-Class members, Defendant violated the Pennsylvania UTPCPL, as it represented that the Class Vehicles and their transmissions had characteristics and benefits that they do not have and represented that the Class Vehicles and their transmissions were of a particular standard, quality, or grade when they were of another.

250. Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

251. Defendant knew and continues to know that the Class Vehicles and their CVTs suffered from an inherent defect, were defectively designed, and were

not suitable for their intended use.

252. Defendant was under a duty to Plaintiff Parys, Plaintiff Ortiz, and Pennsylvania Sub-Class members to disclose the defective nature of the CVT and/or the associated repair costs because:

    a.    Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' CVT;

    b.    Plaintiff Parys, Plaintiff Ortiz, and Pennsylvania Sub-Class members could not reasonably have been expected to learn or discover that their CVT had a dangerous safety defect until it manifested; and

    c.    Defendant knew that Plaintiff Parys, Plaintiff Ortiz, and Pennsylvania Sub-Class members could not reasonably have been expected to learn of or discover the safety defect.

253. In failing to disclose the defective nature of the CVT, Defendant knowingly and intentionally concealed and continues to conceal material facts and breached its duty not to do so.

254. The facts Defendant concealed from or failed to disclose to Plaintiff Parys, Plaintiff Ortiz, and Pennsylvania Sub-Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay less. Had they known that the Class Vehicles' CVT was defective, Plaintiff Parys, Plaintiff Ortiz, and Pennsylvania Sub-Class members would not have purchased or leased the Class Vehicles or would have paid less for them.

255. Nissan was on notice of the Defect from its own testing, from early complaints and service requests it received from Class members, from repairs and/or replacements of the Class Vehicles' transmissions, and from other internal sources.

CLASS ACTION COMPLAINT

256.   Plaintiff Parys, Plaintiff Ortiz, and Pennsylvania Sub-Class members are reasonable consumers who do not expect the transmissions installed in their vehicles to exhibit problems such as juddering, failure to shift, stalling, and delayed or no acceleration.

257.   This is the reasonable and objective consumer expectation relating to vehicle transmissions.

258.   Defendant acted intentionally, knowingly, and maliciously in violating the Pennsylvania UTPCPL, and recklessly disregarded consumers' rights.

259.   Plaintiff Parys, Plaintiff Ortiz, and the Pennsylvania Sub-Class are entitled to equitable relief.

<u>TENTH CAUSE OF ACTION</u>
<u>(Breach of Express Warranty Under Pennsylvania Law,</u>
<u>13 Pa. Stat. and Cons. Stat. Ann. § 2313)</u>
*On Behalf of the Pennsylvania Sub-Class*

260.   Plaintiff Parys and Plaintiff Ortiz incorporate by reference the allegations contained in the above paragraphs as though fully set forth herein.

261.   Plaintiff Parys and Plaintiff Ortiz bring this cause of action on behalf of themselves and the Pennsylvania Sub-Class.

262.   Each class vehicle sold by Nissan included an express warranty that covered the transmission and warranted that Nissan would repair or replace any defects in materials and workmanship in the class vehicles.

263.   As an express warrantor, manufacturer, and merchant, Nissan has certain obligations under 13 Pa. C.S. § 2313 to ensure the Vehicles (and the MCUs therein) conform to their Warranty.

264.   Nissan provided all purchasers and lessees of the class vehicles with a written warranty that "begins on the date the vehicle is delivered to the first retail buyer or put in use, whichever is earlier." Under the warranty's powertrain

CLASS ACTION COMPLAINT

coverage, Nissan expressly warranted that the warranty "covers any repairs needed to correct defects in materials or workmanship." The warranty's powertrain coverage covers the vehicles for 60 months or 60,000 miles, whichever comes first. Nissan promised to cover listed powertrain components under is warranty, including the transmission components such as the "[t]ransmission and [t]ransaxle [c]ase and all internal parts, torque converter and converter housing, automatic transmission control module, transfer case and all internal parts, seals and gaskets, clutch cover, A/T cooler, and electronic transmission controls."

265.   As a result of Nissan's breach of the applicable express warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the CVT Defect, Plaintiff Parys, Plaintiff Ortiz, and Pennsylvania Sub-Class members were harmed and suffered actual damages in that the Class Vehicles' transmissions are substantially certain to fail before their expected useful life has run.

266.   Nissan provided all purchasers and lessees of the Class Vehicles with the express warranty described herein, which became a material part of the bargain. Accordingly, Nissan's express warranty is an express warranty under Pennsylvania law.

267.   Nissan manufactured and/or installed the transmission and its component parts in the Class Vehicles, and the transmission and its component parts are covered by the express warranty.

268.   Nissan provided all purchasers and lessees of the Class Vehicles with a New Vehicle Basic Limited Warranty for 3 years or 36,000 miles, and a Powertrain Warranty for 5 years 60,000 miles.

269.   On information and belief, Nissan breached the express warranty by purporting to repair the transmission and its component parts by replacing the

defective or damaged transmission components with the same defective components and/or instituting temporary fixes, on information and belief, to ensure that the CVT Defect manifests outside of the Class Vehicles' express warranty period.

270. Plaintiff Parys and Plaintiff Ortiz gave Nissan notice of its breach by informing Nissan through correspondence for repairs that were not made.

271. However, Plaintiff Parys and Plaintiff Ortiz was not required to notify Nissan of the breach and/or were not required to do so because affording Nissan a reasonable opportunity to cure its breach of written warranty would have been futile. Nissan was also on notice of the defect from the complaints and service requests it received from Class members, from repairs and/or replacements of the transmission or a component thereof, and through other internal sources.

272. As a direct and proximate cause of Nissan's breach, Plaintiff Parys, Plaintiff Ortiz, and Pennsylvania Sub-Class members suffered, and continue to suffer, damages, including economic damages at the point of sale or lease. Additionally, Plaintiff Parys, Plaintiff Ortiz, and Pennsylvania Sub-Class members either have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

273. Additionally, Nissan breached the express warranty by performing illusory repairs. Rather than repairing the vehicles pursuant to the express warranty, Nissan falsely informed class members that there was no problem with their vehicle, performed ineffective software flashes, or replaced defective components in the CVTs with equally defective components, without actually repairing the vehicles.

274. Any attempt by Nissan to limit or exclude any form of damages or other remedies, including, without limitation, consequential and incidental damages, is unconscionable and therefore null and void due to Defendant's

CLASS ACTION COMPLAINT

deceptive, unfair, and unconscionable conduct.

275. Plaintiff Parys, Plaintiff Ortiz, and the Pennsylvania Sub-Class members have been injured by Defendant's breach of warranty and seek to recover damages including, without limitation, restitution, consequential and incidental damages, attorney's fees and costs, and any other relief this Court deems just and appropriate.

## ELEVENTH CAUSE OF ACTION
## (Breach of Implied Warranty of Under Pennsylvania Law, 13 Pa. Stat. and Cons. Stat. Ann. § 2314)
### *On Behalf of the Pennsylvania Sub-Class*

276. Plaintiff Parys and Plaintiff Ortiz incorporate by reference the allegations contained in the above paragraphs as though fully set forth herein.

277. Plaintiff Parys and Plaintiff Ortiz brings this cause of action on behalf of themselves and on behalf of the members of the Pennsylvania Sub-Class.

278. A warranty that the Vehicles are in merchantable quality and condition is implied under Pa. Stat. and Cons. Stat. Ann. § 2314.

279. Defendant was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

280. Defendant did not disclaim the implied warranty of merchantability.

281. Defendant provided Plaintiff Parys, Plaintiff Ortiz, and Pennsylvania Sub-Class members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold.

282. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, inter alia, the Class Vehicles and their CVTs suffered from an inherent defect at the time of sale and

thereafter and are not fit for their particular purpose of providing safe and reliable transportation.

283. Defendant impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their CVTs that were manufactured, supplied, distributed, and/or sold by Nissan were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their CVTs would be fit for their intended use while the Class Vehicles were being operated.

284. Contrary to the applicable implied warranties, the Class Vehicles and their CVTs at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff Parys, Plaintiff Ortiz, and Pennsylvania Sub-Class members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, including the defective design of the CVT.

285. The alleged CVT Defect is inherent in each Class Vehicle and was present in each Class Vehicle at the time of sale.

286. As a result of Defendant's breach of the applicable implied warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the CVT Defect, Plaintiff Parys, Plaintiff Ortiz, and Pennsylvania Sub-Class members were harmed and suffered actual damages in that the Class Vehicles' CVT components are substantially certain to fail before their expected useful life has run.

287. Any attempt by Defendant to limit or exclude any form of damages or other remedies, including, without limitation, consequential and incidental damages, is unconscionable and therefore null and void due to Defendant's deceptive, unfair, and unconscionable conduct.

CLASS ACTION COMPLAINT

288. Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of Pennsylvania's Breach of Implied Warranty, Pa. Stat. and Cons. Stat. Ann. § 2314.

## TWELFTH CAUSE OF ACTION
### (Violation of the New York General Business Law, N.Y. Gen. Bus. Law § 349)
*On Behalf of the New York Sub-Class*

289. Plaintiff Chambers incorporates by reference the allegations contained in the above paragraphs as though fully set forth herein.

290. Plaintiff Chambers brings this cause of action on behalf of himself and on behalf of the members of the New York Sub-Class.

291. New York's General Business Law ("GBL") § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce."

292. Plaintiff Chambers and members of the New York Sub-Class are "persons" within the context of GBL § 349(h), who purchased the Vehicles for personal, family, or household use.

293. Defendant is a "person" within the context of GBL § 349(h).

294. Defendant engaged in trade and commerce within the context of GBL § 349.

295. Defendant's actions as set forth below occurred in the conduct of trade or commerce.

296. By failing to disclose and concealing the defective nature of the CVT from Plaintiff Chambers and prospective New York Sub-Class members, Defendant violated the New York GBL, as it represented that the Class Vehicles and their transmissions had characteristics and benefits that they do not have and represented that the Class Vehicles and their transmissions were of a particular standard, quality, or grade when they were of another.

297. Defendant violated GBL § 349 by: (i) representing that the Vehicles have characteristics, uses, benefits, and qualities which they do not have; (ii) representing that the Vehicles are of a particular standard, quality, and grade when they are not; (iii) advertising the Vehicles with the intent not to sell them as advertised; and (iv) failing to disclose information concerning the Vehicles with the intent to induce consumers to purchase the Vehicles.

298. Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

299. Defendant engaged in deception, fraud, false pretense, false promise, misrepresentation, knowing concealment, suppression and/or omission of material facts concerning the Vehicles which violated GBL § 349, with the intent to deceive Plaintiff Chambers and members of the New York Sub-Class.

300. Defendant knew and continues to know that the Class Vehicles and their CVTs suffered from an inherent defect, were defectively designed, and were not suitable for their intended use.

301. Defendant was under a duty to Plaintiff Chambers and New York Sub-Class members to disclose the defective nature of the CVT and/or the associated repair costs because:

   a. Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' CVT;

   b. Plaintiff Chambers and New York Sub-Class members could not reasonably have been expected to learn or discover that their CVT had a dangerous safety defect until it manifested; and

   c. Defendant knew that Plaintiff Chambers and New York Sub-Class members could not reasonably have been expected to learn of or discover the safety defect.

302. In failing to disclose the defective nature of the CVT, Defendant knowingly and intentionally concealed and continues to conceal material facts and breached its duty not to do so.

303. The facts Defendant concealed from or failed to disclose to Plaintiff Chambers and New York Sub-Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay less. Had they known that the Class Vehicles' CVT was defective, Plaintiff Chambers and New York Sub-Class members would not have purchased or leased the Class Vehicles or would have paid less for them.

304. Defendant's unfair or deceptive acts or practices were likely to and did, in fact, deceive reasonable consumers, including Plaintiff Chambers and members of the New York Sub-Class.

305. Plaintiff Chambers and New York Sub-Class members are reasonable consumers who do not expect the transmissions installed in their vehicles to exhibit problems such as juddering, failure to shift, stalling, and delayed or no acceleration.

306. This is the reasonable and objective consumer expectation relating to vehicle transmissions.

307. Plaintiff Chambers and members of the New York Sub-Class experienced monetary damages in the form of the higher price they paid for the Class Vehicles, diminution of the Vehicles' resale value, and other substantial damages and inconvenience. Plaintiff Chambers and members of the New York Sub-Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations, omissions, suppression, and concealment of material information. Plaintiff Chambers and members of the New York Sub-Class would not have purchased the Vehicles or would have paid less for them but for Defendant's actions.

CLASS ACTION COMPLAINT

308.  The conduct of Defendant offends public policy as established by statutes and common law, is immoral, unethical, oppressive and/or unscrupulous, and caused unavoidable and substantial injury to purchasers and lessees of the Vehicles, who were unable to have reasonably avoided the injury due to no fault of their own, without any countervailing benefits to consumers. Defendant's violations of GBL § 349 present a continuing risk to Plaintiff Chambers, members of the New York Sub-Class, and to the general public. Defendant's deceptive acts and practices affect the public interest.

309.  As a result of the foregoing willful, knowing, and wrongful conduct of Defendant, Plaintiff Chambers and members of the New York Sub-Class have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including, but not limited to, actual damages or $50, whichever is greater; treble damages up to $1,000; punitive damages to the extent available under the law; attorney's fees and costs; an order enjoining Defendant's deceptive and unfair conduct; and all other just and appropriate relief available under GBL § 349.

### THIRTEENTH CAUSE OF ACTION
**Violations of New York's Deceptive Practices Act,**
**N.Y. Gen. Bus. Law § 350**
**(Plaintiff Individually and on Behalf of the New York Sub- Class)**

310.  Plaintiff Chambers, individually and on behalf of the New York Class, brings this cause of action and hereby adopts and incorporates by reference all allegations contained in the paragraphs above as if set fully set forth herein.

311.  GBL § 350 provides in relevant part: "False advertising in the conduct of any business, trade or commerce . . . in this state is hereby declared unlawful."

312.  In turn, GBL § 350-a defines false advertising as:

CLASS ACTION COMPLAINT

"advertising, including labeling, of a commodity...if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity...to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual."

313. Nissan's actions are untrue and materially misleading through their deceptive marketing, and advertising of the Class Vehicles, which have a pervasive safety related defective CVT transmission, which Nissan was aware of and did not disclose to consumers.

314. Nissan's misrepresentations regarding the Class Vehicles are material to because they relate to the safety and operations of the Vehicles.

315. Plaintiff Chambers and the New York Sub-Class Members were induced to purchase the Class Vehicles by Defendants' misrepresentations in its advertising and marketing.

316. Plaintiff Chambers and members of the New York Sub Class have been injured as a direct and proximate result of Defendants' violations described above as they would not have purchased, or would have paid less for, the Class Vehicles marketed but for Nissan's material misrepresentations as described in this Complaint.

317. As a result of Nissan's unlawful action, Plaintiff Chambers and members of the New York Class seek to enjoin Nissan's misleading and unlawful acts and practices described herein; to recover the greater of their actual damages or five hundred dollars per violation; and to recover treble damages, reasonable attorneys' fees, and all other remedies this Court deems proper.

318.   Plaintiff Chambers incorporates by reference the allegations contained in the above paragraphs as though fully set forth herein.

319.   Plaintiff Chambers brings this cause of action on behalf of himself and the New York Sub-Classes.

320.   Each class vehicle sold by Nissan included an express warranty that covered the transmission and warranted that Nissan would repair or replace any defects in materials and workmanship in the class vehicles. *See* N.Y. U.C.C. Law §§ 2-313 and 2A-210.

321.   Nissan provided all purchasers and lessees of the class vehicles with a written warranty that "begins on the date the vehicle is delivered to the first retail buyer or put in use, whichever is earlier." Under the warranty's powertrain coverage, Nissan expressly warranted that the warranty "covers any repairs needed to correct defects in materials or workmanship." The warranty's powertrain coverage covers the vehicles for 60 months or 60,000 miles, whichever comes first. Nissan promised to cover listed powertrain components under is warranty, including the transmission components such as the "[t]ransmission and [t]ransaxle [c]ase and all internal parts, torque converter and converter housing, automatic transmission control module, transfer case and all internal parts, seals and gaskets, clutch cover, A/T cooler, and electronic transmission controls."

322.   As a result of Nissan's breach of the applicable express warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the CVT Defect, Plaintiff Chambers and New York Sub-Class members were

harmed and suffered actual damages in that the Class Vehicles' transmissions are substantially certain to fail before their expected useful life has run.

323. Nissan provided all purchasers and lessees of the Class Vehicles with the express warranty described herein, which became a material part of the bargain. Accordingly, Nissan's express warranty is an express warranty under New York law.

324. Plaintiff Chambers and members of the Sub-Class have had sufficient direct dealings with either Nissan or its agents to establish privity of contract between Nissan, on one hand, and Plaintiff Chambers and each of the other Sub-Class members, on the other hand.

325. Nissan manufactured and/or installed the transmission and its component parts in the Class Vehicles, and the transmission and its component parts are covered by the express warranty.

326. Nissan provided all purchasers and lessees of the Class Vehicles with a New Vehicle Basic Limited Warranty for 3 years or 36,000 miles, and a Powertrain Warranty for 5 years or 60,000 miles.

327. On information and belief, Nissan breached the express warranty by purporting to repair the transmission and its component parts by replacing the defective or damaged transmission components with the same defective components and/or instituting temporary fixes, on information and belief, to ensure that the CVT Defect manifests outside of the Class Vehicles' express warranty period.

328. Plaintiff Chambers gave Nissan notice of its breach by informing Nissan through correspondence for repairs that were not made.

329. However, Plaintiff Chambers was not required to notify Nissan of the breach and/or were not required to do so because affording Nissan a reasonable opportunity to cure its breach of written warranty would have been futile. Nissan

CLASS ACTION COMPLAINT

was also on notice of the defect from the complaints and service requests it received from New York Sub-Class members, from repairs and/or replacements of the transmission or a component thereof, and through other internal sources.

330. Plaintiff Chambers and members of the New York Sub-Class have used their Vehicles in a manner consistent with the Vehicles' intended use, and have performed each and every duty required under the terms of the warranty, except as may have been excused or prevented by the conduct of Nissan or by operation of law in light of Nissan's unconscionable conduct described throughout this Complaint.

331. As a direct and proximate cause of Nissan's breach, Plaintiff Chambers and New York Sub-Class members suffered, and continue to suffer, damages, including economic damages at the point of sale or lease. Additionally, Plaintiff Chambers and New York Sub-Class members either have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

332. Additionally, Nissan breached the express warranty by performing illusory repairs. Rather than repairing the vehicles pursuant to the express warranty, Nissan falsely informed class members that there was no problem with their vehicle, performed ineffective software flashes, or replaced defective components in the CVTs with equally defective components, without actually repairing the Vehicles.

333. In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by Nissan to disclaim or otherwise limit its express warranties in a manner that would exclude or limit coverage for the Vehicles for qualities and characteristics present at the time of sale, which Nissan knew about prior to offering the Vehicles for sale, and which Nissan did not disclose and did not remedy prior to (or after) sale, is unconscionable, and Nissan should be estopped from pursuing such defenses.

334. Further, any such effort by Nissan to disclaim or otherwise limit liability for the false advertisement and/or for the Vehicles' failure is null and void because Nissan has wrongfully, uniformly, and repeatedly refused and failed to properly repair or replace the Vehicles.

335. As a direct and proximate cause of Nissan's breach of express warranties, Plaintiff Chambers and the New York Sub-Class have suffered, and continue to suffer, damages, including economic damages at the point of sale. Additionally, Plaintiff Chambers and the New York Sub-Class have incurred or will incur economic damages at the point of repair or replacement in the form of the cost of repair or replacement.

336. The deceptive conduct described herein is ongoing and continues to date. Plaintiff Chambers and members of the New York Sub-Class, therefore, are entitled to relief described below as appropriate for this cause of action.

337. Plaintiff Chambers and the members of the New York Sub-Class seek full compensatory damages allowable by law, attorney's fees, costs, punitive damages, restitution, the repair or replacement of all Vehicles, the refund of money paid to purchase the Vehicles, and appropriate equitable relief including injunctive relief, a declaratory judgment, and a court order enjoining Nissan's wrongful acts and practices, as well as any other relief to which Plaintiff Chambers and the New York Sub-Class members may be entitled.

## FIFTEENTH CAUSE OF ACTION
### (Breach of Implied Warranty of Merchantability Under New York Law, N.Y. U.C.C. Law §§ 2-313 and 2A-210.)
*On Behalf of the New York Sub-Class*

338. Plaintiff Chambers incorporates by reference the allegations contained in the above paragraphs as though fully set forth herein.

CLASS ACTION COMPLAINT

339. Plaintiff Chambers brings this cause of action on behalf of himself and on behalf of the members of the New York Sub-Class.

340. Defendant was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

341. Defendant provided Plaintiff Chambers and the New York Sub-Class members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold.

342. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles and their CVTs suffered from an inherent defect at the time of sale and thereafter and are not fit for their particular purpose of providing safe and reliable transportation.

343. Defendant impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their CVTS that were manufactured, supplied, distributed, and/or sold by Nissan were safe and reliable for providing transportation; (ii) a warranty that the Class Vehicles and their CVTs would be fit for their intended use while the Class Vehicles were being operated; (iii) a warranty that the Class Vehicles would pass without objection in the trade; and (iv) a warranty that the Class Vehicles would conform to the promises and affirmations on their advertising.

344. Contrary to the applicable implied warranties, the Class Vehicles and their CVTs at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff Chambers and New York Sub-Class members with reliable, durable, and safe transportation. Instead, the Class Vehicles

are defective, including the defective design of their CVT.

345. The alleged CVT Defect is inherent in each Class Vehicle and was present in each Class Vehicle at the time of sale.

346. Plaintiff Chambers and members of the New York Sub-Class have had sufficient direct dealings with either Nissan or its agents to establish privity of contract between Nissan, on one hand, and Plaintiff Chambers and each of the other New York Sub-Class members, on the other hand.

347. As a result of Defendant's breach of the applicable implied warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the CVT Defect, Plaintiff Chambers and the New York Sub-Class members were harmed and suffered actual damages in that the Class Vehicles' transmissions are substantially certain to fail before their expected useful life has run.

348. Nissan's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use, in violation of N.Y. U.C.C. Law §§ 2-314 and 2A-212.

349. As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff Chambers and members of the New York Sub-Class have been damaged in an amount to be proven at trial.

### SIXTEENTH CAUSE OF ACTION
### (Violation of the Missouri Merchandising Practices Act,
### Mo. Rev. Stat. §§ 407.020, *et seq.*)
*On Behalf of the Missouri Sub-Class*

350. Plaintiff Graham incorporates by reference the allegations contained in the above paragraphs as though fully set forth herein.

351. Plaintiff Graham brings this cause of action on behalf of himself and on behalf of the members of the Missouri Sub-Class.

CLASS ACTION COMPLAINT

352.   The Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. §§ 407.020, *et. seq.*, prohibits deceptive trade practices. MMPA declares an "unlawful practice" any act involving "deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce."

353.   Defendant's actions as set forth below occurred in the conduct of trade or commerce as defined by Mo. Ann. Stat. § 407.010(7).

354.   The Class Vehicles are "merchandise" as defined by Mo. Ann. Stat. § 407.010(4).

355.   Nissan is a "person" as defined by Mo. Ann. Stat. § 407.010(5).

356.   The Class Vehicles were purchased by Plaintiff Graham and Missouri Sub-Class members for personal, family, or household purposes.

357.   By failing to disclose and concealing the defective nature of the CVT from Plaintiff Graham and prospective Missouri Sub-Class members, Defendant violated the MMPA, as it represented that the Class Vehicles and their transmissions had characteristics and benefits that they do not have and represented that the Class Vehicles and their transmissions were of a particular standard, quality, or grade when they were of another.

358.   Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

359.   Defendant knew and continues to know that the Class Vehicles and their CVTs suffered from an inherent defect, were defectively designed, and were not suitable for their intended use.

360.   Defendant was under a duty to Plaintiff Graham and Missouri Sub-Class members to disclose the defective nature of the CVT and/or the associated

CLASS ACTION COMPLAINT

repair costs because:

      a.    Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' CVT;

      b.    Plaintiff Graham and Missouri Sub-Class members could not reasonably have been expected to learn or discover that their CVT had a dangerous safety defect until it manifested; and

      c.    Defendant knew that Plaintiff Graham and Missouri Sub-Class members could not reasonably have been expected to learn of or discover the safety defect.

361. In failing to disclose the defective nature of the CVT, Defendant willfully and knowingly concealed and continues to conceal material facts and breached its duty not to do so.

362. The facts Defendant concealed from or failed to disclose to Plaintiff Graham and Missouri Sub-Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay less. These facts that Defendant concealed caused Plaintiff Graham and Missouri Sub-Class members to purchase the Class Vehicles, which caused them damages. Had they known that the Class Vehicles' CVT was defective, Plaintiff Graham and Missouri Sub-Class members would not have purchased or leased the Class Vehicles or would have paid less for them.

363. Plaintiff Graham and Missouri Sub-Class members are reasonable consumers who do not expect the transmissions installed in their vehicles to exhibit problems such as juddering, failure to shift, stalling, and delayed or no acceleration.

364. This is the reasonable and objective consumer expectation relating to vehicle transmissions.

365. Individual damages can be calculated to a reasonable degree of

certainty by, for example, determining the loss in value of the Class Vehicles.

366.   Plaintiff Graham and the Missouri Sub-Class are entitled to equitable relief, punitive damages, attorneys' fees, and actual damages in an amount to be determined at trial.

<div align="center">

**SEVENTEENTH CAUSE OF ACTION**
**(Breach of Express Warranty Under Missouri State Law,**
**Mo. Ann. Stat. § 400.2-313)**
*On Behalf of the Missouri Sub-Class*

</div>

367.   Plaintiff Graham incorporates by reference the allegations contained in the above paragraphs as though fully set forth herein.

368.   Plaintiff Graham brings this cause of action on behalf of himself and the Class, or, in the alternative, on behalf of the Missouri Sub-Classes.

369.   Each class vehicle sold by Nissan to Plaintiff Graham and Missouri Sub-Class members included an express warranty that covered the transmission and warranted that Nissan would repair or replace any defects in materials and workmanship in the Class Vehicles.

370.   Nissan provided all purchasers and lessees of the Class Vehicles with a written warranty that "begins on the date the vehicle is delivered to the first retail buyer or put in use, whichever is earlier." Under the warranty's powertrain coverage, Nissan expressly warranted that the warranty "covers any repairs needed to correct defects in materials or workmanship." The warranty's powertrain coverage covers the vehicles for 60 months or 60,000 miles, whichever comes first. Nissan promised to cover listed powertrain components under is warranty, including the transmission components such as the "[t]ransmission and [t]ransaxle [c]ase and all internal parts, torque converter and converter housing, automatic transmission control module, transfer case and all internal parts, seals and gaskets, clutch cover, A/T cooler, and electronic transmission controls."

371. As a result of Nissan's breach of the applicable express warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the CVT Defect, Plaintiff Graham and Missouri Sub-Class members were harmed and suffered actual damages in that the Class Vehicles' transmissions are substantially certain to fail before their expected useful life has run.

372. Nissan provided all purchasers and lessees of the Class Vehicles with the express warranty described herein, which became a material part of the bargain. Accordingly, Nissan's express warranty is an express warranty under Missouri law.

373. Nissan manufactured and/or installed the transmission and its component parts in the Class Vehicles, and the transmission and its component parts are covered by the express warranty.

374. Nissan provided all purchasers and lessees of the Class Vehicles with a New Vehicle Basic Limited Warranty for 3 years or 36,000 miles, and a Powertrain Warranty for 5 years or 60,000 miles.

375. On information and belief, Nissan breached the express warranty by purporting to repair the transmission and its component parts by replacing the defective or damaged transmission components with the same defective components and/or instituting temporary fixes, on information and belief, to ensure that the CVT Defect manifests outside of the Class Vehicles' express warranty period.

376. Plaintiff Graham gave Nissan notice of its breach in a timely fashion by presenting his vehicles to Nissan dealerships and through correspondence with Nissan for repairs that were not made.

377. However, Plaintiff Graham was not required to notify Nissan of the breach and/or were not required to do so because affording Nissan a reasonable opportunity to cure its breach of written warranty would have been futile. Nissan

CLASS ACTION COMPLAINT

was also on notice of the defect from the complaints and service requests it received from Class Members, from repairs and/or replacements of the transmission or a component thereof, and through other internal sources.

378. As a direct and proximate cause of Nissan's breach, Plaintiff Graham and Missouri Sub-Class members suffered, and continue to suffer, damages, including economic damages at the point of sale or lease. Additionally, Plaintiff Graham and Sub-Class members either have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

379. Additionally, Nissan breached the express warranty by performing illusory repairs. Rather than repairing the vehicles pursuant to the express warranty, Nissan falsely informed class members that there was no problem with their vehicle, performed ineffective software flashes, or replaced defective components in the CVT Transmissions with equally defective components, without actually repairing the vehicles.

380. Nissan's warranty applied to household members of the buyer as defined in Mo. Ann. Stat. § 400.2-318.

381. Plaintiff Graham and Missouri Sub-Class members are entitled to legal and equitable relief against Nissan, including actual damages, consequential damages, specific performance, attorneys' fees, costs of suit, and other relief as appropriate.

382. Plaintiff Graham and Missouri Sub-Class members are entitled to damages, including any incidental or consequential damages, and other relief as deemed appropriate. Mo. Ann. Stat. § 400.2-711; Mo. Ann. Stat. § 400.2-714; Mo. Ann. Stat. § 400.2-715.

## EIGHTEENTH CAUSE OF ACTION
## (Breach of Common Law Implied Warranty of Merchantability and Breach

CLASS ACTION COMPLAINT

**of Implied Warranty--Fitness for a Particular Purpose Pursuant to Mo. Ann.
Stat. §§ 400.2-314 and 400.2-315.)**

*On Behalf of the Missouri Sub-Class*

383. Plaintiff Graham incorporates by reference the allegations contained in the above paragraphs as though fully set forth herein.

384. Plaintiff Graham brings this cause of action on behalf of himself and on behalf of the members of the Missouri Sub-Class.

385. Defendant was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

386. Defendant provided Plaintiff Graham and Missouri Sub-Class members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold.

387. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, inter alia, the Class Vehicles and their CVTs suffered from an inherent defect at the time of sale and thereafter and are not fit for their particular purpose of providing safe and reliable transportation.

388. Defendant impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their CVTs that were manufactured, supplied, distributed, and/or sold by Nissan were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their CVTs would be fit for their intended use while the Class Vehicles were being operated.

389. Contrary to the applicable implied warranties, the Class Vehicles and

CLASS ACTION COMPLAINT

their CVTs at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff Graham and Missouri Sub-Class members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, including the defective design of the CVT.

390. The alleged CVT Defect is inherent in each Class Vehicle and was present in each Class Vehicle at the time of sale.

391. As a result of Defendant's breach of the applicable implied warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the CVT Defect, Plaintiff Graham and Missouri Sub-Class members were harmed and suffered actual damages in that the Class Vehicles' CVT components are substantially certain to fail before their expected useful life has run.

392. Nissan's warranty applied to household members of the buyer as defined in Mo. Ann. Stat. § 400.2-318.

393. Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of Missouri Law of Implied Warranty of Merchantability and Implied Warranty of Fitness for a Particular Purpose, Mo. Ann. Stat. §§ 400.2-314 and 400.2-315.

394. Plaintiff Graham and Missouri Sub-Class members are entitled to damages, including any incidental or consequential damages, and other relief as deemed appropriate. Mo. Ann. Stat. § 400.2-711; Mo. Ann. Stat. § 400.2-714; Mo. Ann. Stat. § 400.2-715.

### NINETEENTH CAUSE OF ACTION
### (Violation of the Mississippi's Regulation of Business for Consumer Protection, Miss. Code. Ann. §§ 75.24.15 and 75.24.5)
*On Behalf of the Mississippi Sub-Class*

CLASS ACTION COMPLAINT

395. Plaintiff James incorporates by reference the allegations contained in the above paragraphs as though fully set forth herein.

396. Plaintiff James brings this cause of action on behalf of herself and on behalf of the members of the Mississippi Sub-Class.

397. The Mississippi Regulation of Business for Consumer Protection, Miss. Code. Ann. § 75-24-5(1) prohibits "unfair or deceptive trade practices in or affecting commerce." Miss. Code. Ann. § 75-24-5(2) provides that the following constitutes as "unfair or deceptive trade practices:" "(b) Misrepresentation of the source, sponsorship, approval, or certification of goods or services;" "(g) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" and "(i) Advertising goods or services with intent not to sell them as advertised."

398. Defendant's actions as set forth below occurred in the conduct of trade or commerce.

399. By failing to disclose and concealing the defective nature of the CVT from Plaintiff James and Mississippi Sub-Class members, Defendant violated the Mississippi Regulation of Business for Consumer Protection, as it represented that the Class Vehicles and their transmissions had characteristics and benefits that they do not have and represented that the Class Vehicles and their transmissions were of a particular standard, quality, or grade when they were of another.

400. Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

401. Defendant knew and continues to know that the Class Vehicles and their CVTs suffered from an inherent defect, were defectively designed, and were not suitable for their intended use.

402. Defendant was under a duty to Plaintiff James, and Mississippi Sub-

Class members to disclose the defective nature of the CVT and/or the associated repair costs because:

      a.    Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' CVT;

      b.    Plaintiff James, and Mississippi Sub-Class members could not reasonably have been expected to learn or discover that their CVT had a dangerous safety defect until it manifested; and

      c.    Defendant knew that Plaintiff James, and Mississippi Sub-Class members could not reasonably have been expected to learn of or discover the safety defect.

403. In failing to disclose the defective nature of the CVT, Defendant knowingly and intentionally concealed and continues to conceal material facts and breached its duty not to do so.

404. The facts Defendant concealed from or failed to disclose to Plaintiff James and Mississippi Sub-Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay less. Had they known that the Class Vehicles' CVT was defective, Plaintiff James, and Mississippi Sub-Class members would not have purchased or leased the Class Vehicles or would have paid less for them.

405. Plaintiff James, and Mississippi Sub-Class members purchased the Vehicles primarily for personal, family, or household purposes.

406. Plaintiff James, and Mississippi Sub-Class members are reasonable consumers who do not expect the transmissions installed in their vehicles to exhibit problems such as juddering, failure to shift, stalling, and delayed or no acceleration.

407. This is the reasonable and objective consumer expectation relating to vehicle transmissions.

408.   Plaintiff James, and the Mississippi Sub-Class are entitled to equitable relief.

## TWENTIETH CAUSE OF ACTION
### (Breach of Express Warranty Under Mississippi Law, Miss. Code. Ann. § 75-2-313)
*On Behalf of the Mississippi Sub-Class*

409.   Plaintiff James incorporates by reference the allegations contained in the above paragraphs as though fully set forth herein.

410.   Plaintiff James brings this cause of action on behalf of herself and the Mississippi Sub-Classes.

411.   Each Class Vehicle sold by Nissan included an express warranty that covered the transmission and warranted that Nissan would repair or replace any defects in materials and workmanship in the Class Vehicles.

412.   Nissan provided all purchasers and lessees of the class vehicles with a written warranty that "begins on the date the vehicle is delivered to the first retail buyer or put in use, whichever is earlier." Under the warranty's powertrain coverage, Nissan expressly warranted that the warranty "covers any repairs needed to correct defects in materials or workmanship." The warranty's powertrain coverage covers the vehicles for 60 months or 60,000 miles, whichever comes first. Nissan promised to cover listed powertrain components under is warranty, including the transmission components such as the "[t]ransmission and [t]ransaxle [c]ase and all internal parts, torque converter and converter housing, automatic transmission control module, transfer case and all internal parts, seals and gaskets, clutch cover, A/T cooler, and electronic transmission controls."

413.   As a result of Nissan's breach of the applicable express warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of

CLASS ACTION COMPLAINT

the CVT Defect, Plaintiff James, and Mississippi Sub-Class members were harmed and suffered actual damages in that the Class Vehicles' transmissions are substantially certain to fail before their expected useful life has run.

414.   Nissan provided all purchasers and lessees of the Class Vehicles with the express warranty described herein, which became a basis of the bargain. Accordingly, Nissan's express warranty is an express warranty under Mississippi law.

415.   Nissan manufactured and/or installed the transmission and its component parts in the Class Vehicles, and the transmission and its component parts are covered by the express warranty.

416.   Nissan provided all purchasers and lessees of the Class Vehicles with a New Vehicle Basic Limited Warranty for 3 years or 36,000 miles, and a Powertrain Warranty for 5 years or 60,000 miles.

417.   On information and belief, Nissan breached the express warranty by purporting to repair the transmission and its component parts by replacing the defective or damaged transmission components with the same defective components and/or instituting temporary fixes, on information and belief, to ensure that the CVT Defect manifests outside of the Class Vehicles' express warranty period.

418.   Plaintiff James gave Nissan notice of its breach through correspondence for repairs that were not made.

419.   However, Plaintiff James was not required to notify Nissan of the breach and/or were not required to do so because affording Nissan a reasonable opportunity to cure its breach of written warranty would have been futile. Nissan was also on notice of the defect from the complaints and service requests it received from Mississippi Sub-Class members, from repairs and/or replacements of the transmission or a component thereof, and through other internal sources.

CLASS ACTION COMPLAINT

420.   As a direct and proximate cause of Nissan's breach, Plaintiff James, and the Mississippi Sub-Class members suffered, and continue to suffer, damages, including economic damages at the point of sale or lease. Additionally, Plaintiff James and Mississippi Sub-Class members either have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

421.   Additionally, Nissan breached the express warranty by performing illusory repairs. Rather than repairing the vehicles pursuant to the express warranty, Nissan falsely informed Class members that there was no problem with their vehicle, performed ineffective software flashes, or replaced defective components in the CVT with equally defective components, without actually repairing the Vehicles.

422.   Plaintiff James, and Mississippi Sub-Class members are entitled to legal and equitable relief against Nissan, including actual damages, incidental damages, consequential damages, specific performance, and other relief as appropriate.

## TWENTY-FIRST CAUSE OF ACTION
## (Breach of Implied Warranty of Merchantability and Breach of Implied Warranty of Fitness for a Particular Purpose Under Mississippi Law, Miss. Code. Ann. §§ 75-2-314 and 75-2-315)
### *On Behalf of the Mississippi Sub-Class*

423.   Plaintiff James incorporates by reference the allegations contained in the above paragraphs as though fully set forth herein.

424.   Plaintiff James brings this cause of action on behalf of herself and on behalf of the members of the Mississippi Sub-Class.

425.   Defendant was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

CLASS ACTION COMPLAINT

426.  Defendant provided Plaintiff James, and Mississippi Sub-Class members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold.

427.  However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles and their CVTs suffered from an inherent defect at the time of sale and thereafter and are not fit for their particular purpose of providing safe and reliable transportation.

428.  Defendant impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their CVTs that were manufactured, supplied, distributed, and/or sold by Nissan were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their CVTs would be fit for their intended use while the Class Vehicles were being operated.

429.  Contrary to the applicable implied warranties, the Class Vehicles and their CVTs at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff James, and Mississippi Sub-Class members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, including the defective design of their CVT.

430.  The alleged CVT Defect is inherent in each Class Vehicle and was present in each Class Vehicle at the time of sale.

431.  As a result of Defendant's breach of the applicable implied warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the CVT Defect, Plaintiff James, and Mississippi Sub-Class members were harmed

CLASS ACTION COMPLAINT

and suffered actual damages in that the Class Vehicles' CVT components are substantially certain to fail before their expected useful life has run.

432. Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of Mississippi's Breach of Implied Warranty of Merchantability and Breach of Implied Warranty of Fitness for a Particular Purpose, Miss. Code. Ann. §§ 75-2-314 and 75-2-315.

## TWENTY-SECOND CAUSE OF ACTION
### (Fraud By Omission or Fraudulent Concealment)
*On Behalf of the Altima Nationwide Class and, in the alternative, the Nevada, California, Missouri, and Pennsylvania Sub-Classes*

433. Plaintiffs incorporates by reference the allegations contained in the above paragraphs as though fully set forth herein.

434. Plaintiffs Martinez, Scott, Graham, Ortiz, and Parys ("Altima Plaintiffs") bring this cause of action on behalf of themselves and the Altima Nationwide Class, or in the alternative, on behalf of Nevada, California, Missouri, and Pennsylvania State Sub-Classes, against Defendant.

435. Nissan knew that the Class Vehicles suffered from an inherent CVT Defect, were defectively designed and/or manufactured, and were not suitable for their intended use.

436. Defendant concealed from and failed to disclose to the Altima Plaintiffs and Class Members the defective nature of the Class Vehicles.

437. Defendant was under a duty to the Altima Plaintiffs and Class Members to disclose the defective nature of the Class Vehicles because:

    a. Defendant was in a superior position to know the true state of facts about the safety defect contained in the Class Vehicles;

    b. The omitted facts were material because they directly impact

the safety of the Class Vehicles;

 c. Defendant knew the omitted facts regarding the CVT Defect were not known to or reasonably discoverable by the Altima Plaintiffs and Class Members;

 d. Defendant made partial disclosures about the quality of the Class Vehicles without revealing their true defective nature; and,

 e. Defendant actively concealed the defective nature of the Class Vehicles from the Altima Plaintiffs and Class Members.

438. The facts concealed or not disclosed by Defendant to the Altima Plaintiffs and the other Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Defendant's Class Vehicles or pay a lesser price for them. Whether a vehicle's CVT is defective, which can cause the transmission to be unreasonably sensitive to heat, which can cause the vehicle to overheat, is a material safety concern. Had the Altima Plaintiffs and Class Members known about the defective nature of the Class Vehicles, they would not have purchased or leased the Class Vehicles or would have paid less for them.

439. Defendant concealed or failed to disclose the true nature of the design and/or manufacturing defects contained in the Class Vehicles to induce the Altima Plaintiffs and Class Members to act thereon. The Altima Plaintiffs and the other Class Members justifiably relied on Defendant's omissions to their detriment. This detriment is evident from the Altima Plaintiffs' and Class Members' purchase or lease of Defendant's defective Class Vehicles.

440. Defendant continued to conceal the defective nature of the Class Vehicles even after Class Members began to report the problems. Indeed, Defendant continues to cover up and conceal the true nature of the problem

CLASS ACTION COMPLAINT

today.

441.  As a direct and proximate result of Defendant's misconduct, the Altima Plaintiffs and Class Members have suffered and will continue to suffer actual damages. The Altima Plaintiffs and the Class reserve their right to elect either to (a) rescind their purchase or lease of the defective vehicles and obtain restitution or (b) affirm their purchase or lease of the defective vehicles and recover damages.

<div align="center">

**TWENTY-THIRD CAUSE OF ACTION**
**(Fraud By Omission or Fraudulent Concealment)**
*On Behalf of the Sentra Nationwide Class and, in the alternative, the New York and Mississippi the Sub-Classes*

</div>

442.  Plaintiffs incorporates by reference the allegations contained in the above paragraphs as though fully set forth herein.

443.  Plaintiffs Chambers and James ("Sentra Plaintiffs") bring this cause of action on behalf of themselves and the Sentra Nationwide Class, or in the alternative, on behalf of New York and Mississippi State Sub-Classes, against Defendant.

444.  Nissan knew that the Class Vehicles suffered from an inherent CVT Defect, were defectively designed and/or manufactured, and were not suitable for their intended use.

445.  Defendant concealed from and failed to disclose to the Sentra Plaintiffs and Class Members the defective nature of the Class Vehicles.

446.  Defendant was under a duty to the Sentra Plaintiffs and Class Members to disclose the defective nature of the Class Vehicles because:

  a.  Defendant was in a superior position to know the true state of facts about the safety defect contained in the Class Vehicles;

  b.  The omitted facts were material because they directly impact

the safety of the Class Vehicles;

    c.  Defendant knew the omitted facts regarding the CVT Defect were not known to or reasonably discoverable by the Sentra Plaintiffs and Class Members;

    d.  Defendant made partial disclosures about the quality of the Class Vehicles without revealing their true defective nature; and,

    e.  Defendant actively concealed the defective nature of the Class Vehicles from the Sentra Plaintiffs and Class Members.

447. The facts concealed or not disclosed by Defendant to the Sentra Plaintiffs and the other Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Defendant's Class Vehicles or pay a lesser price for them. Whether a vehicle's CVT is defective, which can cause the transmission to be unreasonably sensitive to heat, which can cause the vehicle to overheat, is a material safety concern. Had the Sentra Plaintiffs and Class Members known about the defective nature of the Class Vehicles, they would not have purchased or leased the Class Vehicles or would have paid less for them.

448. Defendant concealed or failed to disclose the true nature of the design and/or manufacturing defects contained in the Class Vehicles to induce the Sentra Plaintiffs and Class Members to act thereon. The Sentra Plaintiffs and the other Class Members justifiably relied on Defendant's omissions to their detriment. This detriment is evident from the Sentra Plaintiffs' and Class Members' purchase or lease of Defendant's defective Class Vehicles.

449. Defendant continued to conceal the defective nature of the Class Vehicles even after Class Members began to report the problems. Indeed, Defendant continues to cover up and conceal the true nature of the problem

today.

450.   As a direct and proximate result of Defendant's misconduct, the Sentra Plaintiffs and Class Members have suffered and will continue to suffer actual damages. The Sentra Plaintiffs and the Class reserve their right to elect either to (a) rescind their purchase or lease of the defective vehicles and obtain restitution or (b) affirm their purchase or lease of the defective vehicles and recover damages.

## TWENTY-FOURTH CAUSE OF ACTION
### (Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.* and Fed. R. Civ. P. 57)
*On Behalf of the Altima Nationwide Class and, in the alternative, the Nevada, California, Missouri, and Pennsylvania Sub-Classes*

451.   Plaintiffs incorporate by reference the allegations contained in the above paragraphs as though fully set forth herein.

452.   The Altima Plaintiffs bring this cause of action on behalf of themselves and the Altima Nationwide Class, or in the alternative, on behalf of Nevada, California, Missouri, and Pennsylvania State Sub-Classes, against Defendant.

453.   Declaratory relief is intended to minimize "the danger of avoidable loss and unnecessary accrual of damages." 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2751 (3d ed. 1998). 231. There is an actual controversy between Nissan and the Altima Plaintiffs concerning whether the Class Vehicles' defect creates an unreasonable safety hazard.

454.   Pursuant to 28 U.S.C. § 2201, the Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

CLASS ACTION COMPLAINT

455.   Despite long knowing the nature of the Class Vehicles' defect and its likelihood of placing the Altima Plaintiffs, the Classes and Sub-Classes, and the public at risk of grave injury, Nissan refuses to publicly acknowledge the Class Vehicles' dangerous defect. Instead, Nissan has unsuccessfully attempted to remediate the defect without advising its consumers and other members of the public of the defect.

456.   Accordingly, based on Nissan's failure to act, the Altima Plaintiffs seek a declaration that the Vehicles are defective, as alleged herein. The defective nature of the Vehicles is material and requires disclosure to all persons who own them.

457.   The declaratory relief requested herein will generate common answers that will settle the controversy related to the alleged defective nature of the Vehicles and the reasons for their repeated failure. There is an economy to resolving these issues as they have the potential to eliminate the need for continued and repeated litigation.

## TWENTY-FIFTH CAUSE OF ACTION
### (Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.* and Fed. R. Civ. P. 57)
*On Behalf of the Sentra Nationwide Class and, in the alternative, the New York and Mississippi Sub-Classes*

458.   Plaintiffs incorporate by reference the allegations contained in the above paragraphs as though fully set forth herein.

459.   The Sentra Plaintiffs bring this cause of action on behalf of themselves and the Sentra Nationwide Class, or in the alternative, on behalf of New York and Mississippi State Sub-Classes, against Defendant.

460.   Declaratory relief is intended to minimize "the danger of avoidable loss and unnecessary accrual of damages." 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2751 (3d ed. 1998).

CLASS ACTION COMPLAINT

231. There is an actual controversy between Nissan and the Sentra Plaintiffs concerning whether the Class Vehicles' defect creates an unreasonable safety hazard.

461. Pursuant to 28 U.S.C. § 2201, the Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

462. Despite long knowing the nature of the Class Vehicles' defect and its likelihood of placing the Sentra Plaintiffs, the Classes and Sub-Classes, and the public at risk of grave injury, Nissan refuses to publicly acknowledge the Class Vehicles' dangerous defect. Instead, Nissan has unsuccessfully attempted to remediate the defect without advising its consumers and other members of the public of the defect.

463. Accordingly, based on Nissan's failure to act, the Sentra Plaintiffs seek a declaration that the Vehicles are defective, as alleged herein. The defective nature of the Vehicles is material and requires disclosure to all persons who own them.

464. The declaratory relief requested herein will generate common answers that will settle the controversy related to the alleged defective nature of the Vehicles and the reasons for their repeated failure. There is an economy to resolving these issues as they have the potential to eliminate the need for continued and repeated litigation.

## TWENTY-SIXTH CAUSE OF ACTION
### (Unjust Enrichment)
*On Behalf of the Altima Nationwide Class and, in the alternative, the Nevada, California, Missouri, and Pennsylvania Sub-Classes*

465. Plaintiffs incorporate by reference the allegations contained in the

CLASS ACTION COMPLAINT

above paragraphs as though fully set forth herein.

466. The Altima Plaintiffs bring this cause of action on behalf of themselves and the Altima Nationwide Class, or in the alternative, on behalf of Nevada, California, Missouri, and Pennsylvania State Sub-Classes, against Defendant.

467. As a direct and proximate result of Nissan's failure to disclose known defects, Nissan has profited through the sale and lease of the Class Vehicles. Although these vehicles are purchased through Nissan's agents, the money from the vehicle sales flows directly back to Nissan.

468. Additionally, as a direct and proximate result of Nissan's failure to disclose known defects in the Class Vehicles, the Altima Plaintiffs, Class members and/or Sub-Class members, have vehicles that require repeated, high-cost repairs that can and therefore have conferred an unjust substantial benefit upon Nissan.

469. Nissan has been unjustly enriched due to the known defects in the Class Vehicles through money that earned interest or otherwise added to Nissan's profits when said money should have remained with the Altima Plaintiffs, Class members and/or Sub-Class members.

470. As a result of Nissan's unjust enrichment, the Altima Plaintiffs, Class members and/or Sub-Class members have suffered damages.

<u>**TWENTY-SEVENTH CAUSE OF ACTION**</u>
<u>**(Unjust Enrichment)**</u>
*On Behalf of the Sentra Nationwide Class and, in the alternative, the New York and Mississippi Sub-Classes*

471. Plaintiffs incorporate by reference the allegations contained in the above paragraphs as though fully set forth herein.

472. The Sentra Plaintiffs bring this cause of action on behalf of themselves and the Sentra Nationwide Class, or in the alternative, on behalf of

New York and Mississippi State Sub-Classes, against Defendant.

473.    As a direct and proximate result of Nissan's failure to disclose known defects, Nissan has profited through the sale and lease of the Class Vehicles. Although these vehicles are purchased through Nissan's agents, the money from the vehicle sales flows directly back to Nissan.

474.    Additionally, as a direct and proximate result of Nissan's failure to disclose known defects in the Class Vehicles, the Sentra Plaintiffs, Class members and/or Sub-Class members, have vehicles that require repeated, high-cost repairs that can and therefore have conferred an unjust substantial benefit upon Nissan.

475.    Nissan has been unjustly enriched due to the known defects in the Class Vehicles through money that earned interest or otherwise added to Nissan's profits when said money should have remained with the Sentra Plaintiffs, Class members and/or Sub-Class members.

476.    As a result of Nissan's unjust enrichment, the Sentra Plaintiffs, Class members and/or Sub-Class members have suffered damages.

### TWENTY-EIGHTH CAUSE OF ACTION
### (Violation of the Magnuson-Moss Warranty Act)
*On Behalf of the Altima Nationwide Class and, in the alternative, the Nevada, California, Missouri, and Pennsylvania Sub-Classes*

477.    Plaintiffs incorporate by reference the allegations contained in the above paragraphs as though fully set forth herein.

478.    The Altima Plaintiffs bring this cause of action on behalf of themselves and the Altima Nationwide Class, or in the alternative, on behalf of Nevada, California, Missouri, and Pennsylvania State Sub-Classes, against Defendant.

479.    The Vehicles are "consumer products" as that term is defined by 15 U.S.C. § 2301(1).

480. The Altima Plaintiffs and the Class/Sub-Class members are "consumers" as that term is defined by 15 U.S.C. § 2301(3).

481. Defendant is a "supplier" as that term is defined by 15 U.S.C. § 2301(4).

482. Defendant is a "warrantor" as that term is defined by 15 U.S.C. § 2301(5).

483. Defendant provided the Altima Plaintiffs and Class/Sub-Class members with "written warranties" as that term is defined by 15 U.S.C. § 2301(6).

484. Section 15 U.S.C. § 2310(d)(1) provides that a consumer who is damaged by the failure of the supplier, warrantor, or service contractor to comply with any obligation under this title, or a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief in any court of competent jurisdiction in any state.

485. Each class vehicle sold by Nissan included an express warranty that covered the transmission and warranted that Nissan would repair or replace any defects in materials and workmanship in the Class Vehicles.

486. Nissan provided all purchasers and lessees of the class vehicles with a written warranty that "begins on the date the vehicle is delivered to the first retail buyer or put in use, whichever is earlier." Under the warranty's powertrain coverage, Nissan expressly warranted that the warranty "covers any repairs needed to correct defects in materials or workmanship." The warranty's powertrain coverage covers the vehicles for 60 months or 60,000 miles, whichever comes first. Nissan promised to cover listed powertrain components under is warranty, including the transmission components such as the "[t]ransmission and [t]ransaxle [c]ase and all internal parts, torque converter and converter housing, automatic transmission control module, transfer case and all internal parts, seals and gaskets, clutch cover, A/T cooler, and electronic transmission controls."

487.   As a result of Nissan's breach of the applicable express warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the CVT Defect, the Altima Plaintiffs and Class/Sub-Class members were harmed and suffered actual damages in that the Class Vehicles' transmissions are substantially certain to fail before their expected useful life has run.

488.   Nissan provided all purchasers and lessees of the Class Vehicles with the express warranty described herein, which became a material part of the bargain. Accordingly, Nissan's express warranty is an express warranty under state law.

489.  Nissan manufactured and/or installed the transmission and its component parts in the Class Vehicles, and the transmission and its component parts are covered by the express warranty.

490.   Nissan provided all purchasers and lessees of the Class Vehicles with a New Vehicle Basic Limited Warranty for 3 years or 36,000 miles, and a Powertrain Warranty for 5 years or 60,000 miles.

491.   On information and belief, Nissan breached the express warranty by purporting to repair the transmission and its component parts by replacing the defective or damaged transmission components with the same defective components and/or instituting temporary fixes, on information and belief, to ensure that the CVT Defect manifests outside of the Class Vehicles' express warranty period.

492.   The Altima Plaintiffs gave Nissan notice of its breach through correspondence and by presenting their vehicles to Nissan dealerships for repairs that were not made.

493.   However, the Altima Plaintiffs were not required to notify Nissan of the breach and/or were not required to do so because affording Nissan a reasonable opportunity to cure its breach of written warranty would have been futile. Nissan

was also on notice of the defect from the complaints and service requests it received from the Altima Plaintiffs and members of the Classes, from repairs and/or replacements of the transmission or a component thereof, and through other internal sources.

494.  As a direct and proximate cause of Nissan's breach, the Altima Plaintiffs and Class/Sub-Class members suffered, and continue to suffer, damages, including economic damages at the point of sale or lease. Additionally, the Altima Plaintiffs and Class/Sub-class members either have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

495.  The Altima Plaintiffs used their Vehicles in a manner consistent with their intended use and performed each and every duty required under the terms of the Warranty including presentment, except as may have been excused or prevented by the conduct of Defendant or by operation of law in light of Defendant's unconscionable conduct described throughout this Complaint.

496.  Additionally, Nissan breached the express warranty by performing illusory repairs. Rather than repairing the vehicles pursuant to the express warranty, Nissan falsely informed Class members that there was no problem with their vehicle, performed ineffective software flashes, or replaced defective components in the CVTs with equally defective components, without actually repairing the vehicles.

497.  In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by Defendant to limit its express warranties in a manner that would exclude or limit coverage for the defective Class Vehicles that was present as of the time of sale is unconscionable and any such effort to disclaim or otherwise limit liability or Warranty coverage for the defects at issue is null and void.

498.  All jurisdictional prerequisites have been satisfied.

499. Accordingly, the Altima Plaintiffs and the Class/Sub-Class members suffered damages caused by Defendant's breach of the express warranties and are entitled to recover damages, including, but not limited to, diminution of value, equitable relief, and attorneys' fees and costs pursuant to 15 U.S.C. § 2310.

## TWENTY-NINTH CAUSE OF ACTION
### (Violation of the Magnuson-Moss Warranty Act)
*On Behalf of the Sentra Nationwide Class and, in the alternative, the New York and Mississippi Sub-Classes*

500. Plaintiffs incorporate by reference the allegations contained in the above paragraphs as though fully set forth herein.

501. The Sentra Plaintiffs bring this cause of action on behalf of themselves and the Sentra Nationwide Class, or in the alternative, on behalf of New York and Mississippi State Sub-Classes, against Defendant.

502. The Vehicles are "consumer products" as that term is defined by 15 U.S.C. § 2301(1).

503. The Sentra Plaintiffs and the Class/Sub-Class members are "consumers" as that term is defined by 15 U.S.C. § 2301(3).

504. Defendant is a "supplier" as that term is defined by 15 U.S.C. § 2301(4).

505. Defendant is a "warrantor" as that term is defined by 15 U.S.C. § 2301(5).

506. Defendant provided the Sentra Plaintiffs and Class/Sub-Class members with "written warranties" as that term is defined by 15 U.S.C. § 2301(6).

507. Section 15 U.S.C. § 2310(d)(1) provides that a consumer who is damaged by the failure of the supplier, warrantor, or service contractor to comply with any obligation under this title, or a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief in

CLASS ACTION COMPLAINT

any court of competent jurisdiction in any state.

508. Each class vehicle sold by Nissan included an express warranty that covered the transmission and warranted that Nissan would repair or replace any defects in materials and workmanship in the Class Vehicles.

509. Nissan provided all purchasers and lessees of the class vehicles with a written warranty that "begins on the date the vehicle is delivered to the first retail buyer or put in use, whichever is earlier." Under the warranty's powertrain coverage, Nissan expressly warranted that the warranty "covers any repairs needed to correct defects in materials or workmanship." The warranty's powertrain coverage covers the vehicles for 60 months or 60,000 miles, whichever comes first. Nissan promised to cover listed powertrain components under is warranty, including the transmission components such as the "[t]ransmission and [t]ransaxle [c]ase and all internal parts, torque converter and converter housing, automatic transmission control module, transfer case and all internal parts, seals and gaskets, clutch cover, A/T cooler, and electronic transmission controls."

510. As a result of Nissan's breach of the applicable express warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the CVT Defect, the Sentra Plaintiffs and Class/Sub-Class members were harmed and suffered actual damages in that the Class Vehicles' transmissions are substantially certain to fail before their expected useful life has run.

511. Nissan provided all purchasers and lessees of the Class Vehicles with the express warranty described herein, which became a material part of the bargain. Accordingly, Nissan's express warranty is an express warranty under state law.

512. Nissan manufactured and/or installed the transmission and its component parts in the Class Vehicles, and the transmission and its component parts are covered by the express warranty.

513.   Nissan provided all purchasers and lessees of the Class Vehicles with a New Vehicle Basic Limited Warranty for 3 years or 36,000 miles, and a Powertrain Warranty for 5 years or 60,000 miles.

514.   On information and belief, Nissan breached the express warranty by purporting to repair the transmission and its component parts by replacing the defective or damaged transmission components with the same defective components and/or instituting temporary fixes, on information and belief, to ensure that the CVT Defect manifests outside of the Class Vehicles' express warranty period.

515.   The Sentra Plaintiffs gave Nissan notice of its breach through correspondence and by presenting their vehicles to Nissan dealerships for repairs that were not made.

516.   However, the Sentra Plaintiffs were not required to notify Nissan of the breach and/or were not required to do so because affording Nissan a reasonable opportunity to cure its breach of written warranty would have been futile. Nissan was also on notice of the defect from the complaints and service requests it received from the Sentra Plaintiffs and members of the Classes, from repairs and/or replacements of the transmission or a component thereof, and through other internal sources.

517.   As a direct and proximate cause of Nissan's breach, the Sentra Plaintiffs and Class/Sub-Class members suffered, and continue to suffer, damages, including economic damages at the point of sale or lease. Additionally, the Sentra Plaintiffs and Class/Sub-class members either have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

518.   The Sentra Plaintiffs used their Vehicles in a manner consistent with their intended use and performed each and every duty required under the terms of the Warranty including presentment, except as may have been excused or

prevented by the conduct of Defendant or by operation of law in light of Defendant's unconscionable conduct described throughout this Complaint.

519.   Additionally, Nissan breached the express warranty by performing illusory repairs. Rather than repairing the vehicles pursuant to the express warranty, Nissan falsely informed Class members that there was no problem with their vehicle, performed ineffective software flashes, or replaced defective components in the CVTs with equally defective components, without actually repairing the vehicles.

520.   In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by Defendant to limit its express warranties in a manner that would exclude or limit coverage for the defective Class Vehicles that was present as of the time of sale is unconscionable and any such effort to disclaim or otherwise limit liability or Warranty coverage for the defects at issue is null and void.

521.   All jurisdictional prerequisites have been satisfied.

522.   Accordingly, the Sentra Plaintiffs and the Class/Sub-Class members suffered damages caused by Defendant's breach of the express warranties and are entitled to recover damages, including, but not limited to, diminution of value, equitable relief, and attorneys' fees and costs pursuant to 15 U.S.C. § 2310.

## THIRTIETH CAUSE OF ACTION
### (Breach of Express Warranty)
*On Behalf of the Sentra Nationwide Class under Tennessee law and, in the alternative, the New York and Mississippi Sub-Classes*

523.   Plaintiffs incorporates by reference the allegations contained in the above paragraphs as though fully set forth herein.

524.   The Sentra Plaintiffs bring this cause of action on behalf of themselves and the Sentra Nationwide Class, or in the alternative, on behalf of

New York and Mississippi State Sub-Classes, against Defendant.

525.  Each class vehicle sold by Nissan included an express warranty that covered the transmission and warranted that Nissan would repair or replace any defects in materials and workmanship in the class vehicles.

526.  Nissan provided all purchasers and lessees of the class vehicles with a written warranty that "begins on the date the vehicle is delivered to the first retail buyer or put in use, whichever is earlier." Under the warranty's powertrain coverage, Nissan expressly warranted that the warranty "covers any repairs needed to correct defects in materials or workmanship." The warranty's powertrain coverage covers the vehicles for 60 months or 60,000 miles, whichever comes first. Nissan promised to cover listed powertrain components under is warranty, including the transmission components such as the "[t]ransmission and [t]ransaxle [c]ase and all internal parts, torque converter and converter housing, automatic transmission control module, transfer case and all internal parts, seals and gaskets, clutch cover, A/T cooler, and electronic transmission controls."

527.  As a result of Nissan's breach of the applicable express warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the CVT Defect, Plaintiffs and Class Members were harmed and suffered actual damages in that the Class Vehicles' transmissions are substantially certain to fail before their expected useful life has run.

528.  Nissan provided all purchasers and lessees of the Class Vehicles with the express warranty described herein, which became a material part of the bargain. Accordingly, Nissan's express warranty is an express warranty under Nevada law.

529.  Nissan manufactured and/or installed the transmission and its component parts in the Class Vehicles, and the transmission and its component parts are covered by the express warranty.

530. Nissan provided all purchasers and lessees of the Class Vehicles with a New Vehicle Basic Limited Warranty for three (3) years and 36,000 miles, and a Powertrain Warranty for five (5) years and 60,000 miles.

531. On information and belief, Nissan breached the express warranty by purporting to repair the transmission and its component parts by replacing the defective or damaged transmission components with the same defective components and/or instituting temporary fixes, on information and belief, to ensure that the CVT Defect manifests outside of the Class Vehicles' express warranty period.

532. Plaintiffs gave Nissan notice of its breach by presenting her vehicle to Nissan dealerships for repairs that were not made.

533. However, Plaintiffs were not required to notify Nissan of the breach and/or was not required to do so because affording Nissan a reasonable opportunity to cure its breach of written warranty would have been futile. Nissan was also on notice of the defect from the complaints and service requests it received from Class Members, from repairs and/or replacements of the transmission or a component thereof, and through other internal sources.

534. As a direct and proximate cause of Nissan's breach, Plaintiffs and Class Members suffered, and continue to suffer, damages, including economic damages at the point of sale or lease. Additionally, Plaintiffs and Class Members either have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

535. Additionally, Nissan breached the express warranty by performing illusory repairs. Rather than repairing the vehicles pursuant to the express warranty, Nissan falsely informed class members that there was no problem with their vehicle, performed ineffective software flashes, or replaced defective components in the CVT Transmissions with equally defective components, without actually

CLASS ACTION COMPLAINT

repairing the vehicles.

536.   Plaintiffs and Class Members are entitled to legal and equitable relief against Nissan, including actual damages, consequential damages, specific performance, attorneys' fees, costs of suit, and other relief as appropriate.

## THIRTY-FIRST CAUSE OF ACTION
### (Breach of Express Warranty)
*On Behalf of the Altima Nationwide Class under Tennessee law and, in the alternative, the Nevada, California, Missouri, and Pennsylvania Sub-Classes*

537.   Plaintiffs incorporates by reference the allegations contained in the above paragraphs as though fully set forth herein.

538.   The Altima Plaintiffs bring this cause of action on behalf of themselves and the Altima Nationwide Class, or in the alternative, on behalf of Nevada, California, Missouri, and Pennsylvania State Sub-Classes, against Defendant.

539.   Each class vehicle sold by Nissan included an express warranty that covered the transmission and warranted that Nissan would repair or replace any defects in materials and workmanship in the class vehicles.

540.   Nissan provided all purchasers and lessees of the class vehicles with a written warranty that "begins on the date the vehicle is delivered to the first retail buyer or put in use, whichever is earlier." Under the warranty's powertrain coverage, Nissan expressly warranted that the warranty "covers any repairs needed to correct defects in materials or workmanship." The warranty's powertrain coverage covers the vehicles for 60 months or 60,000 miles, whichever comes first. Nissan promised to cover listed powertrain components under is warranty, including the transmission components such as the "[t]ransmission and [t]ransaxle [c]ase and all internal parts, torque converter and converter housing, automatic

transmission control module, transfer case and all internal parts, seals and gaskets, clutch cover, A/T cooler, and electronic transmission controls."

541. As a result of Nissan's breach of the applicable express warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the CVT Defect, Plaintiffs and Class Members were harmed and suffered actual damages in that the Class Vehicles' transmissions are substantially certain to fail before their expected useful life has run.

542. Nissan provided all purchasers and lessees of the Class Vehicles with the express warranty described herein, which became a material part of the bargain. Accordingly, Nissan's express warranty is an express warranty under Nevada law.

543. Nissan manufactured and/or installed the transmission and its component parts in the Class Vehicles, and the transmission and its component parts are covered by the express warranty.

544. Nissan provided all purchasers and lessees of the Class Vehicles with a New Vehicle Basic Limited Warranty for three (3) years and 36,000 miles, and a Powertrain Warranty for five (5) years and 60,000 miles.

545. On information and belief, Nissan breached the express warranty by purporting to repair the transmission and its component parts by replacing the defective or damaged transmission components with the same defective components and/or instituting temporary fixes, on information and belief, to ensure that the CVT Defect manifests outside of the Class Vehicles' express warranty period.

546. Plaintiffs gave Nissan notice of its breach by presenting her vehicle to Nissan dealerships for repairs that were not made.

547. However, Plaintiffs were not required to notify Nissan of the breach and/or was not required to do so because affording Nissan a reasonable opportunity

to cure its breach of written warranty would have been futile. Nissan was also on notice of the defect from the complaints and service requests it received from Class Members, from repairs and/or replacements of the transmission or a component thereof, and through other internal sources.

548. As a direct and proximate cause of Nissan's breach, Plaintiffs and Class Members suffered, and continue to suffer, damages, including economic damages at the point of sale or lease. Additionally, Plaintiffs and Class Members either have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

549. Additionally, Nissan breached the express warranty by performing illusory repairs. Rather than repairing the vehicles pursuant to the express warranty, Nissan falsely informed class members that there was no problem with their vehicle, performed ineffective software flashes, or replaced defective components in the CVT Transmissions with equally defective components, without actually repairing the vehicles.

550. Plaintiffs and Class Members are entitled to legal and equitable relief against Nissan, including actual damages, consequential damages, specific performance, attorneys' fees, costs of suit, and other relief as appropriate.

## RELIEF REQUESTED

551. Plaintiffs, on behalf of themselves and all others similarly situated, requests the Court to enter judgment against Nissan, as follows:

  a. An order certifying the proposed Classes and Sub-Classes, designating Plaintiffs as named representatives of the Classes and Sub-Classes, and designating the undersigned as Class Counsel;

  b. A declaration that Nissan is financially responsible for notifying all Class Members about the defective nature of the

CVT, including the need for periodic maintenance;

c.  An order enjoining Nissan from further deceptive distribution, sales, and lease practices with respect to Class Vehicles; compelling Nissan to issue a voluntary recall for the Class Vehicles pursuant to. 49 U.S.C. § 30118(a); compelling Nissan to remove, repair, and/or replace the Class Vehicles' defective CVT and/or its components with suitable alternative product(s) that do not contain the defects alleged herein; enjoining Nissan from selling the Class Vehicles with the misleading information; and/or compelling Nissan to reform its warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members that such warranty has been reformed;

d.  An award to Plaintiffs, the Classes, and the Sub-Classes for compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial; except that for now, the California Plaintiff(s) seek(s) only equitable and injunctive relief with respect to (his/her) claims under California's Consumers Legal Remedies Act, California Civil Code §1750 et seq.;

e.  A declaration that Nissan must disgorge, for the benefit of the Classes and Sub-Classes, all or part of the ill-gotten profits it received from the sale or lease of its Class Vehicles or make full restitution to Plaintiffs and Class and Sub-Class members;

f.  An award of attorneys' fees and costs, as allowed by law;

g.  An award of pre-judgment and post-judgment interest, as provided by law;

CLASS ACTION COMPLAINT

h. Leave to amend the Complaint to conform to the evidence produced at trial; and

i. Such other relief as may be appropriate under the circumstances.

## **<u>DEMAND FOR JURY TRIAL</u>**

552.   Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable.

Respectfully Submitted this 16 day of May, 2022

<div style="margin-left: 40%;">

*/s/ Gregory F. Coleman*

Gregory F. Coleman
gcoleman@milberg.com
**Milberg Coleman Bryson Phillips Grossman PLLC**
800 South Gay Street Suite 1100
Knoxville, TN 37929

Tarek Zohdy
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett
Cody.Padgett@capstonelawyers.com
Laura E. Goolsby
Laura.Goolsby@capstonelawyers.com
**Capstone Law APC**
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone: (310) 556-4811
Facsimile:  (310) 943-0396

Norberto J. Cisneros, Esq.
Barbara McDonald, Esq.

</div>

**Maddox & Cisneros, LLP**
3230 S. Buffalo Drive, Suite 108
Las Vegas, Nevada 89117
Telephone: (702) 366-1900
Facsimile: (702) 366-1999

Melissa S. Weiner (*Pro Hac Vice Forthcoming*)
  mweiner@pswlaw.com
**PEARSON, SIMON & WARSHAW, LLP**
800 LaSalle Avenue, Suite 2150
Minneapolis, MN 55402
Telephone: (612) 389-0600
Facsimile:  (612) 389-0610

James C. Shah (SBN 260435)
jcshah@millershah.com
Natalie Finkelman Bennett *(Pro Hac Vice Forthcoming)*
nfinkelman@millershah.com
**MILLER SHAH LLP**
1845 Walnut Street, Suite 806
Philadelphia, PA  19103
Telephone:  (866) 540-5505
Facsimile:  (866) 300-7367

Lawrence Deutsch (*Pro Hac Vice Forthcoming*)
Russell D. Paul (*Pro Hac Vice Forthcoming*)
Amey J. Park (*Pro Hac Vice Forthcoming*)
Abigail J. Gertner (*Pro Hac Vice Forthcoming*)
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel.: (215) 875-3000
Fax: (215) 875-4604
ldeutsch@bm.net

CLASS ACTION COMPLAINT

rpaul@bm.net
apark@bm.net
agertner@bm.net

Attorneys for *Plaintiffs and the Proposed Classes*