**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

|  |  |
|---|---|
| MINERVA MARTINEZ, SANDRA SCOTT, CARL GRAHAM, ANNE PARYS, DAVID ORTIZ, SEAN CHAMBERS AND TIFFANY JAMES, individually, and on behalf of a class of similarly situated individuals, | Case No.: 3:22-cv-00354 <br><br> District Judge Eli J. Richardson <br><br> Courtroom 6C |
| Plaintiffs, | |
| v. | |
| NISSAN NORTH AMERICA, INC., a Delaware Corporation, | |
| Defendants. | |

**GUADALUPE MARTINES SOLANO AND FILOMENO ESTANISLAO VARGAS'S OBJECTIONS TO FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND *EX PARTE* REQUEST FOR SUPPLEMENTAL CLASS NOTICE WITH SPANISH TRANSLATION AND NOTICE TO CLASS MEMBERS WITH PENDING LITIGATION AGAINST DEFENDANT NISSAN NORTH AMERICA, INC.**

i

# TABLE OF CONTENTS

I.    BACKGROUND ...................................................................................................... 8

   A.  The *Solano* Action ....................................................................................... 8

   B.  Objector Vargas .............................................................................................. 9

   C.  The *Martinez* Action ..................................................................................... 9

   D.  Nissan Did Not Immediately Disclose the Existence of the Instant Action to SLP, and Did Not Disclose the Existence of Many Related Individual Lawsuits Alleging CVT Problems With the Class Vehicles to this Court or to the Class Members .............................................. 9

   E.  The Class Notice Sent to the Class Members Was Provided Only in English, and Did Not Include a Spanish-Language Version, Even Though a Substantial Number of the Class Members Speak Primarily or Exclusively Spanish ..................................................................... 11

   F.  SLP Met and Conferred With Nissan About the Defective Class Notice ............................ 12

II.   LEGAL ANALYSIS ............................................................................................. 13

   A.  Ms. Solano and Mr. Vargas Possess Standing to Object to the Class Notice ...................... 13

   B.  The *Martinez* Class Notice Violates Rule 23 and Due Process Because it Fails to Apprise Spanish Speakers of the Settlement ........................................................................ 13

      1.  Where Spanish is the Primary language of Many of the Class members, Class Notice Should be Sent in both English and Spanish .................................................................. 13

      2.  Nissan Admits That a Spanish Version of its Notice is Necessary to Comport with Rule 23 ............................................................................................................ 16

      3.  Nissan's Failure to Send a Spanish-Language Notice is Inconsistent With its Heavy Investment in Marketing Cars to Spanish Speakers ...................................................... 17

   C.  Nissan's Failure to Disclose the Existence of the *Solano* Lawsuit—and Likely Hundreds, if not Thousands of Other Related Lawsuits—to the Court Means That Nissan Considers Ms.

Solano to be Excluded From the Settlement.................................................................18

    1.  Nissan Did Not Disclose the Pending Individual Lawsuits to the Court....................18

D.  If the Court is Not Inclined to Send Corrective Notice to the Class, it Should Exercise its

Authority to Opt Out Ms. Solano, Mr. Vargas, and the Other Affected Class Members............21

III.    CONCLUSION....................................................................................................................22

# TABLE OF AUTHORITIES

## CASES

*Alfonso & Arlene Moran v. FCA US LLC*, No. 3:17-CV-02524JO-AHG, 2023 WL 2145527, at
  *3 (S.D. Cal. Feb. 21, 2023) ............................................................. 4, 17

*Butler v. Fairbanks Capital*, 2005 WL 5108537, *6 (D.D.C. 2005) ........................................... 16

*Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1013 (E.D. Cal. 2019) ........................... 3, 10

*Carter v. City of Montgomery*, 2021 WL 2042090, *7 (M.D. Ala. 2021) ................................... 16

*Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 192 (S.D.N.Y. 2012) ...................... 14

*DeJulius v. New England Health Care Employees Pension Fund,* 429 F.3d 935, 942 (10th Cir.
  2005) ............................................................................................... 12

*Fidel v. Farley*, 534 F.3d 508, 513 (6th Cir. 2008) ................................................................. 12, 19

*Flores v. ADT LLC*, No. 1:16-CV-0029-AWI-JLT, 2017 WL 4844261, at *11 (E.D. Cal. Oct. 25,
  2017) ................................................................................................. 2

*Fradette v. Am. Serv. Corp.,* 1979 WL 1756, *1 (S.D. Fla. Aug.29, 1979) ............................... 18

*Lampe v. Kash*, 735 F.3d 942, 944 (6th Cir. 2013) ............................................................... 8

*Maciel v. Bar 20 Dairy, LLC*, No. 117CV00902DADSKO, 2020 WL 5095885, at *20 (E.D. Cal.
  Aug. 28, 2020) ................................................................................... 11

*McCubbrey v. Boise Cascade Home & Land Corp*., 71 F.R.D. 62, 68-69 (N.D. Cal. 1976) . 16, 18

*Minerva Martinez et al. v. Nissan N. Am, Inc* (M.D. Tenn., Case No. 3:22-cv-00354) Class
  Action ("*Martinez Class Action*") ................................................................. 2

*Miranda v. Mahard Egg Farm, Inc.*, 465 F. Supp. 3d 685, 688 (E.D. Tex. 2020) ................ 14, 19

*Moore v. PetSmart, Inc.*, 728 Fed. Appx. 671, 674 (9th Cir. 2018) ....................................... 3, 10

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 624
  (9th Cir. 1982) ..................................................................................... 11

*Raquedan v. Volume Servs., Inc.*, No. 18-CV-01139-LHK, 2020 WL 1929343, at *3 (N.D. Cal.
  Apr. 21, 2020) .................................................................................... 12

*Reyes v. Superior Court*, 118 Cal. App. 3d 159, 161 (1981) ........................................................ 12

*Rodriguez v. D.M. Camp & Sons*, No. 1:09-CV-00700-AWI, 2012 WL 6115651, at *12 (E.D. Cal. Dec. 7, 2012) ...................................................................................................... 2, 12

S*tern v. AT&T Mobility Corp.*, No. CV 05-8842 CAS (CTX), 2010 WL 11509146, at *4 (C.D. Cal. May 17, 2010) ................................................................................................... 14

*Torrisi v. Tuscon Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir. 1993) ...................................... 19

*Valdez v. Seidner-Miller, Inc.*, 33 Cal. App. 5th 600, 613, 245 Cal. Rptr. 3d 268, 279 (2019) ... 12

*Vassalle v. Midland Funding LLC*, 708 F.3d 747, 759 (6th Cir. 2013) ......................................... 4

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ............................. 18

*Wren v. RGIS Inventory Specialists*, No. C-06-05778JCS, 2009 WL 1705616, at *3 (N.D. Cal. June 17, 2009) ........................................................................................................ 5, 13

**STATUTES**

Cal. Civ. Code § 1632 ................................................................................................................ 12

Civ. Code § 1632(a)(3) ............................................................................................................. 12

Civil Code § 1632 ..................................................................................................................... 12

**RULES**

Civil Procedure ("Rule") 6(b) ..................................................................................................... 3

Fed. R. Civ. P. 23(b)(3)(B) ....................................................................................................... 16

Fed. R. Civ. P. 23(c)(2)(B) ......................................................................................................... 4

Fed. R. Civ. P. 60(b)(1) ............................................................................................................. 19

## PLAINTIFF'S *EX PARTE* MOTION FOR SUPPLEMENTAL SETTLEMENT NOTICE

On August 17, 2022, the Court granted preliminary approval of the class action settlement in the above-entitled case. (*See generally*, Dkt. No. 31.) As part of its preliminary approval order, the Court approved as to form and content the Long Form Notice and Summary Notice (*i.e.*, the class notice) attached as exhibits to the Settlement Agreement, "find[ing] that the direct mailing of Summary Notice in the manner set forth in the Notice Program combined with publication of the Long Form Notice, the Settlement Agreement and its other exhibits, and this Order on the Settlement Website is the best notice practicable under the circumstances; constitutes due and sufficient notice of the Settlement and this Order to all persons entitled thereto; and is in full compliance with the requirements of FED. R. CIV. P. 23(c), applicable law, and due process." (Dkt. No. 31 § 6.)

Following the preliminary approval order, the parties apparently realized that there is a large group of Spanish-speaking class members who required Spanish translation of the notice, but the parties either inadvertently or intentionally—and without Court approval—only translated the long form notice posted on the website into Spanish. In contrast, the parties wholly failed to translate into Spanish the class notice—which they referred to as the "gold standard of notice" in the preliminary approval papers" (*see* Dkt. No. 271 at 26)—that was actually sent to class members (which was supposed to direct the class members to the Spanish-language version on the website). Without Spanish-language notice, these class members would not have been able to find the website's Spanish translation. *See Flores v. ADT LLC*, No. 1:16-CV-0029-AWI-JLT, 2017 WL 4844261, at *11 (E.D. Cal. Oct. 25, 2017) ("If Plaintiffs intend to issue a Spanish language translation of the Notice, they are reminded that this Court requires a declaration that the Notice was translated by a certified court interpreter, asserting the translation is an accurate translation of the Court-approved English version of the Notice."); *Rodriguez v. D.M. Camp & Sons*, No. 1:09-CV-00700-AWI, 2012 WL 6115651, at *12 (E.D. Cal. Dec. 7, 2012) (same). Had the parties fully disclosed these facts to the Court, as required by the preliminary approval order and Rule 23, this error could have been avoided, because the Court could have directed them to translate

the class notice into Spanish, so that Spanish speakers would not have been deprived of access to the long form notice on the website. *Raquedan v. Volume Servs., Inc.*, No. 18-CV-01139-LHK, 2020 WL 1929343, at \*3 (N.D. Cal. Apr. 21, 2020) ("The parties' proposed notice plan is constitutionally sound because individual notices will be mailed in English and Spanish to all Class Members whose identities are known to the parties.").

Moreover, while there are thousands of individual lemon law and fraud cases in litigation against Nissan involving allegations of problems with the CVT transmission, the Class Notice failed to inform these class members about the impact of the Class Action settlement on their pending litigation with allegations of transmission defects against Nissan. *See Vassalle v. Midland Funding LLC*, 708 F.3d 747, 759 (6th Cir. 2013) ("The notice states that "[a] release means you can't sue or be part of any other lawsuit against [Midland] about the claims or issues in this lawsuit, or any other claims arising out of affidavits attached or executed in support of collection complaints filed against Class Members by [Midland]." This language is insufficient to notify a non-attorney class member that by not objecting, he or she loses the right to use Midland's false affidavits against Midland in their debt-collection actions. Accordingly, we find the district court erred in finding that the notice to the class satisfied due process.").[1] Indeed, these claims can be quite valuable. *See, e.g.*, *Bowser v. Ford Motor Co*., 78 Cal. App. 5th 587, 593-94 (2022) (affirming trial court award of almost $400,000 for fraud and Song-Beverly violations); *Anderson v. Ford Motor Co.*, 74 Cal. App. 5th 946, 956–59 (2022) (same re almost $240,000 in fraud and Song-Beverly damages)*.* Indeed, Nissan withheld this information from Class Members, from their counsel, and from the Court.

Accordingly, Class Members and objectors Guadalupe Martinez Solano and Filomeno Estanislao Vargas (collectively, the "Objectors"), in the above-captioned *Minerva Martinez et al.*

---

[1] While Plaintiff counsel understands that Nissan's release is only limited with respect to transmission issues and not other defects regarding Plaintiff's lemon law claims, the release nevertheless impacts each of SLP's 44 pending litigations (as well as the thousands of other cases with allegations of transmission problems) that have a cause of action for fraud or under other consumer fraud statutes regarding the CVT transmission.

*v. Nissan N. Am, Inc.* (M.D. Tenn., Case No. 3:22-cv-00354) Class Action ("*Martinez Class Action*"), hereby move the Court, *ex parte*, pursuant to Federal Rules of Civil Procedure 23, 6(b), 60(b), this Court's Local Rules, and Judge Richardson's standing orders, as well as the Court's inherent authority, to issue an order directing the settling parties to the *Martinez Class Action* to provide supplemental notice to the Settlement Class, with optouts and claims to that supplemental notice due within 60 days of the notice, wherein the supplemental settlement notice corrects deficiencies in the original settlement notice by: (1) translating the class notice into Spanish, on behalf of those Class Members, like Ms. Solano and Mr. Vargas, who use Spanish as their primary language and who lack proficiency in English[2]; and (2) providing notice that all owners and lessees of Class Vehicles notifying them that if they filed litigation against Nissan alleging problems with the same continuously variable transmission ("CVT") as in the Class Vehicles that was pending as of the supplemental notice date are included as Class Members if they do not opt-out within 60 days of the supplemental notice date; or, in the alternative, if the Court is not inclined to exercise its authority to issue an order for supplemental settlement notice, then the Court should issue an order stating that any Class Member, like Ms. Solano, with pending litigation against Nissan alleging problems with the same transmission as in the Class Vehicles, or any individual who is primarily a Spanish speaker, like Mr. Vargas and Ms. Solano, are excluded from the Class, so these Class Members will not have to bring separate motions under Federal Rule of Civil Procedure ("Rule") 6(b) and/or Rule 60(b) for excusable neglect.[3]

---

[2] If not fully translated into Spanish, at a minimum, the Court should order Nissan to provide supplemental class notice that includes a statement in Spanish directing Spanish-speaking Class Members to the settlement website and to an email address for questions. (*See, e.g.*, Shahian Decl. Ex. 17 (Notice of Proposed Settlement in *Falco et al. v. Nissan N. Am., Inc. al.*, Case No. 2:13-cv-00686 (C.D. Cal.).

[3] The Court can entertain untimely objections, particularly where the objections implicate due process issues regarding notice. *See Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1013 (E.D. Cal. 2019) ("Though the Court is not required to entertain late objections, it will do so in an effort to give all absent class members a chance to voice their concerns.") (citing *Moore v. PetSmart, Inc.*, 728 Fed. Appx. 671, 674 (9th Cir. 2018) (finding no error in the district court's entertaining of procedurally defective objection) and 4 Newberg on Class Actions § 13:29 (5th ed.) ("Arguably, courts need not consider untimely objections [to class action settlements], but

In *Martinez*, the Court granted Preliminary Settlement Approval on August 17, 2022. (ECF Nos. 31 and 32.) The Parties' Settlement Agreement provides for notice to the Settlement Class through a combination of a class notice sent by first class U.S. Mail and a settlement website, which posts, among other things, a long-form of the Settlement Agreement. Under this framework, however, notice was deficient in at least two respects.

First, although the long form notice posted on the website included a Spanish-language version, the class notice that was actually sent to the class members was written only in English. Accordingly, non-English speaking Spanish speakers, like Ms. Solano and Mr. Vargas, would not have understood its contents; in particular, they would not have understood that a Spanish translation of the long-form settlement agreement (which sets forth the opt-out and/or exclusion procedures) was posted on the settlement website, because that information was provided in the class notice, which was not translated into Spanish.[4]

Second, nothing in the class notice sent to Class Members stated whether or not the settlement would impact pending individual litigation cases against Nissan with allegations of problems with the same CVT found in the Class Vehicles. *See, e.g.*, *Alfonso & Arlene Moran v. FCA US LLC*, No. 3:17-CV-02524JO-AHG, 2023 WL 2145527, at *3 (S.D. Cal. Feb. 21, 2023) ("Excluded from the Settlement Class are (a) all owners or lessees of Class Vehicles who have filed and served litigation against FCA asserting problems with stalling in Class Vehicles that was pending as of the Notice Date and who do not dismiss their actions before final judgment and affirmatively elect to opt-in to the Settlement."); *see also Vassalle v. Midland Funding LLC*, 708 F.3d 747, 759 (6th Cir. 2013) (appellate court reversing trial court's approval order due to lack of proper notice of pending litigation cases).

Under Rule 23(c)(2)(B), notice of a class action certified for settlement purposes must be

_____

they have the discretion to do so, and most courts typically will do so").

[4] Indeed, the Notice also violated the rights of individuals who do not know about their right to submit timely reimbursement claims or otherwise benefit from other portions of the settlement. Nor would the additional opt-outs put the settlement and class counsel fees at risk. The parties included a blow-up provision in their settlement agreement with a provision of over 750 optouts, but despite having received 2,000 opt-outs, Nissan is moving forward with the settlement.

"the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). This includes notice by "United States mail, electronic means, or other appropriate means." *Id.* "The court should exercise its discretion to select appropriate means of giving notice." *Id.*, advisory committee's note, 2018 amendments. "The ultimate goal of giving notice is to enable class members to make informed decisions about whether to opt out or, in instances where a proposed settlement is involved, to object or to make individual claims.

Here, good cause exists for the relief sought because the class notice was only presented in English, so Ms. Solano and Mr. Vargas—Spanish speakers lacking proficiency in English[5]— could not read the notice and learn that the long-form settlement agreement, which actually explained the opt-out/exclusion procedures and which was translated into Spanish, could be found on the settlement website. In other words, the long-form settlement agreement was essentially rendered hidden from Mr. Solano and Ms. Vargas and other Spanish speakers, including those in Puerto Rico, California (the California Sub-Class as alleged in the Class Action Complaint), Texas, and Florida by this notice framework. Whether this was a mistake by the claims administrator or Nissan, it resulted in a violation of the Objectors' due process rights. *See Wren v. RGIS Inventory Specialists*, No. C-06-05778JCS, 2009 WL 1705616, at *3 (N.D. Cal. June 17, 2009) ("the class includes individuals who reside in Puerto Rico whose first language is likely to be Spanish. Therefore, including [in the class notice] an 800 telephone number and Spanish-language website is appropriate in order to facilitate access for these and other Spanish-speaking

---

[5] Civil Code § 1632 was enacted when at that time, 3.8 million Californians did not know how to speak English, and of those, Spanish was the most spoken language. *See* Civ. Code § 1632(a)(3). This code section requires translation of legal documents to Spanish. *See also* Shahian Decl. Ex. 16 (showing approximately over 22 million Spanish-speaking households in California, Texas and Florida which comprise about 30% of the class.)

Indeed, Nissan knows this and communicates quite effectively with California's and the United States' Spanish-speaking population when it wants to. (Ex. 9 (press release entitled, "Nissan named 'Spanish TV Advertiser of the Year' by Nielsen[,]" which states that **"Hispanic customers comprise 21 percent of Nissan's annual sales[.]"**).)

6

class members.") (citations to record omitted).[6]

Further, even though Nissan knew that Ms. Solano and those like her who filed individual lawsuits against Nissan related to the same transmission (CVT) found in the Class Vehicles were represented by counsel in pending lawsuits, Nissan did not provide notice to counsel in those lawsuits; nor did the class notice sent to Class Members inform them that the settlement could affect pending litigation regarding their claims regarding their allegations against Nissan for transmission problems.

Making such requests for relief on an *ex parte* basis is warranted, because Ms. Solano and Mr. Vargas did not know about the *Martinez* settlement until February 25, 2023, two days before trial was to begin in Ms. Solano's case, when Nissan's counsel informed Ms. Solano's counsel (as wells as, separately, Mr. Vargas' counsel), Strategic Legal Practices, APC ("SLP"), about the *Martinez* settlement. By the time SLP investigated the matter, researched the issues, and met and conferred with Nissan's counsel, it was too late to bring a timely noticed motion, given that the opt-out deadline had already passed on February 13, 2023, and final approval papers have been

---

[6] **"**In reviewing the class notice to determine whether it satisfies the [ ] requirements [of due process], we look solely to the language of the notices and the manner of their distribution." *Adams v. S. Farm Bureau Life Ins. Co.,* 493 F.3d 1276, 1286 (11th Cir. 2007). (Emphasis added). During the parties' meet-and-confer efforts that preceded the filing of this *ex parte* motion, Nissan cited as support for its contention that a Spanish long-form notice was not necessary *In re Packaged Ice Antitrust Litig*., 2018 WL 4520931, at \*5 (6th Cir. May 24, 2018) (finding that the notice program was reasonably calculated to reach potential class members and provide them with an opportunity to object to the proposed settlement, even without a Spanish version and noting lack of "any legal authority that notice must be provided in a foreign language") (citation omitted). Nissan failed to acknowledge, however, that in that case, the court described the plaintiff as a "serial objector" who asserted 26 separate objections to the settlement, and the court held he did not have standing to raise the issue of the lack of a Spanish translation. *See In re Packaged Ice Antitrust Litig*., No. 17-2137, 2018 WL 4520931, at \*5 (6th Cir. May 24, 2018). ("Nor did the objector argue that the alleged defects caused him injury. An objector who does not have an injury-in-fact lacks standing to appeal an aspect of a class-action settlement that does not adversely affect his own interests.")

Likewise, in Wal-Mart Stores, the court held that although the representatives of the purported subclass described a significant preference for Spanish, they do not claim that they cannot read English or that they cannot conduct business in English. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). In contrast, however, here we have evidence that Mr. Solano and Mr. Vargas only read, write, and understand Spanish. (*See* Vargas Decl. ¶ 4; *see* Solano Decl. ¶ 4; *see also* Shahian Decl. Exs. 8-13.) In addition, Plaintiff counsel in these cases has cited to Cal. Civ. Code section 1632 and its legislative history, as well as Nissan's Marketing materials and recalls that communicate in Spanish with class members.

filed.

## I.    BACKGROUND

### A.    The *Solano* Action

SLP is counsel of record for Guadalupe Martinez Solano, who moved to the United States at the age of 30, who speaks exclusively Spanish, and who does not speak, read, or write in English. (*See* Solano Decl. ¶¶ 4-5; *see also id.* ¶ 6 (explaining that Ms. Solano's highest degree is a vocational degree obtained in Mexico).)

On October 13, 2020—more than one year before the *Martinez* action was filed in the Central District of California, and about one year and eight months before it was refiled in this district—Ms. Solano filed a Complaint in Los Angeles Superior Court asserting violations of the Song-Beverly Consumer Warranty Act and Magnusson-Moss Warranty Act, as well as a claim for fraudulent concealment/inducement for Nissan's failure to disclose the CVT defects at the time of sale or thereafter. (Shahian Decl. ¶ 4.)

Specifically, Ms. Solano's Complaint alleged that her 2019 Nissan Sentra contained numerous defects including, *inter alia*, "defects relating to the Vehicle's continuously variable transmission (CVT); defects related to the engine; defects causing Vehicle to not start; defects causing brake pedal to be hard; defects causing lamp switch internal failure; defects causing failure and/or replacement of stop lamp switch assembly; defects causing a rattling noise when braking; defects related to recall R1911; defects related to A/V control unit; defects causing Vehicle to not recognize key FOB; defects causing electrical issues; defects causing audio unit to turn on when Vehicle shut off; defects causing failure and/or replacement of A/V master control unit; defects causing failure and/or replacement of A/V controller assembly; defects causing crash symbol and warning lights to illuminate; defects causing diagnostic trouble code (DTC) C1A16; defects related to distance sensor; defects causing failure and/or replacement of distance sensor assembly; defects requiring ECM reprogramming . . ." and that Nissan had failed to repair the Vehicle. (Shahian Decl. ¶ 4.)

Nissan filed an Answer on January 5, 2021, and requested a jury trial on February 19,

2021. (Shahian Decl. ¶ 5.)

On March 8, 2021, the *Solano* court set the Final Status Conference for February 23, 2023, and the Jury Trial for February 27, 2023. Nissan's trial documents and statement of the case, all filed after the *Martinez* opt-out deadline, failed to disclose the *Martinez* action and its settlement. (Shahian Decl. ¶ 6.)

## B. Objector Vargas

Mr. Vargas also retained SLP as his counsel, but unlike Ms. Solano, he does not have a pending individual lawsuit against Nissan. Nevertheless, like Ms. Solano, Mr. Vargas is a *Martinez* Class Member who is only able to speak, read, and write in Spanish. (*See* Vargas Decl. ¶ 4; *see also id.* ¶ 6 (explaining that Mr. Vargas' highest level of education was primary school in Mexico).)

## C. The *Martinez* Action

On December 29, 2021, the *Martinez* plaintiffs commenced their class action lawsuit against Nissan in the Southern District of California. (S.D. Cal. Case No. 21-2146, Dkt. No. 1.)

On May 5, 2022, the *Martinez* plaintiffs refiled their lawsuit in the Middle District of Tennessee. (*See* Dkt. No. 1.)

Less than three months later, on August 1, 2022, the *Martinez* plaintiffs, in *record time*, filed their Motion for Preliminary Approval of the Class Action Settlement. (*See* Dkt. No. 20.) Preliminary Approval was granted on August 17, 2022. (ECF Nos. 31 and 32.)

## D. Nissan Did Not Immediately Disclose the Existence of the Instant Action to SLP, and Did Not Disclose the Existence of Thousands of Individual Lawsuits Alleging CVT Problems With the Class Vehicles to this Court or to the Class Members

In its evident haste to settle the *Martinez* action and seek preliminary approval of the Settlement, neither Nissan's counsel nor its class counsel immediately disclosed the existence of the *Martinez* Settlement to SLP—notwithstanding the fact that Nissan was well aware that SLP represents plaintiffs in approximately 44 individual lemon law actions Nissan with allegations of

9

fraud regarding the CVT in Class Vehicles against Nissan, including Ms. Solano.

Between August 17, 2022, the date the Court preliminarily approved the Settlement, and February 13, 2023, the opt-out deadline, Nissan's counsel, who is Nissan's agent, never informed SLP or the Los Angeles County Superior Court judges in any of the approximately 44 individual lemon law actions (with allegations of fraud regarding the CVT transmission) filed by SLP of the existence of the *Martinez* settlement that was reached in August 2022, even while Nissan actively litigated those case (similar to what occurred in *Solano*). *See Lampe v. Kash*, 735 F.3d 942, 944 (6th Cir. 2013) ("When a lawyer represents a client, his acts become the client's acts, his knowledge the client's knowledge."). In these cases, Nissan has, among other things, f met and conferred about trial and other litigation related activities, responded to discovery, and filed stipulation with Plaintiff counsel or representing to the court that the cases should be continued to at least April or later when it could resolve some of cases but never disclosed the existence of the *Martinez* Class Action settlement until the optout deadline had expired.

Indeed, on February 25, 2023, two days before trial was scheduled to commence in *Solano v. Nissan*, SLP was informed for the first time by Nissan's counsel of record in Solano and majority of the other individual cases being litigated by SLP of the *Martinez* action and Settlement. (Shahian Decl. ¶ 3.) *See Lampe v. Kash*, 735 F.3d 942, 944 (6th Cir. 2013) ("When a lawyer represents a client [] his knowledge [is] the client's knowledge.").

Yet over a week earlier, on February 17, 2023, after having met and conferred, Nissan and Ms. Solano filed a Joint Witness List, Joint Exhibit List, Joint Jury Instructions, and Joint Statement of the Case, but Nissan <u>never</u> raised the *Martinez Class Action* Settlement to counsel or the trial court in those or any other trial-related filing, meet and confers, or hearings. (Shahian Decl. ¶ 10 and Exs. 3 and 4.)

Additionally, Nissan failed to disclose the existence of Ms. Solano's lawsuit, let alone any of the other thousands of individual lemon law cases to this Court as it was required to do as part of its preliminary approval papers. For instance, on August 17, 2022, this Court issued its Preliminary Approval Order, but Nissan did not inform the Court of any related action, including

*Solano v. Nissan North America, Inc.*, prior to or even after that Order. (*See* Shahian Decl. ¶ 7, Ex. 2.) Indeed, Nissan's Motion for Preliminary Approval acknowledges that related cases should have been disclosed. (*See* Dkt. No. 21 at 23 (evaluation of superiority under Rule 23(b)(3) requires consideration of, *inter alia*, "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class").)

E.   **The Class Notice Sent to the Class Members Was Provided Only in English, and Did Not Include a Spanish-Language Version, Even Though a Substantial Number of the Class Members Speak Primarily or Exclusively Spanish**

On December 15, 2022, the *Martinez Class Action* Settlement Administrator mailed class notice to class members. As Class Counsel for Nissan has since confirmed, a Spanish translation of the class notice was not mailed to class members (*See* Shahian Decl. ¶ 18, Ex. 7), even though a substantial number of the class members speak primarily or exclusively Spanish. Indeed, Nissan itself estimates that 21% of its buyers are Spanish speakers. (*See* Shahian Decl. Ex. 9 at 1 ("Hispanic customers comprise 21 percent of Nissan's annual sales.").)

Further, although the claims website without court approval included a long form version of the class notice in Spanish, the actual class notice sent to the class members was written solely in English, and therefore Class Members who speak, read, and write only Spanish, such as Ms. Solano and Mr. Vargas, would not have been aware of the Spanish-language version of the Long Form Notice hidden away on the website. In other words, Nissan provided no notice *in Spanish* to *Spanish speakers* that the *Spanish* translation of the long-form settlement agreement was even available on the website, rendering it hidden from Class Members like Ms. Solano and Mr. Vargas and a large group of other similarly situated class members.

**F. SLP Met and Conferred With Nissan About the Defective Class Notice[7]**

On March 5, 2023, SLP sent a meet-and-confer letter to Nissan's counsel in the *Martinez Class Action* and Nissan's counsel in *Solano v. Nissan* regarding SLP's concerns over the sufficiency of notice provided to class members, including the failure to include a Spanish version of the class notice mailed to class members, and Nissan's failure to disclose independent actions like *Solano v. Nissan* to the Court. (Shahian Decl. ¶ 14, Ex. 5.)

In a March 10, 2023 letter, Nissan responded through its counsel. (Shahian Decl. ¶ 18, Ex. 7.) Specifically, Nissan claimed that *Solano* and other individual plaintiffs represented by SLP against Nissan had failed to satisfy the settlement's opt-out and/or exclusion; that the long-form settlement agreement posted on the settlement website set forth those procedures, including in a Spanish translation of the long form agreement that was posted on the website (even though the claim notice mailed to class members did not provide instructions in Spanish that would advise Spanish speakers that a translation of the long form agreement was available on the claims website[8]); that SLP had not made a showing that any Spanish speakers it represents could not also read and write the class notice that was sent only English (though SLP makes that showing here); and finally, that Nissan was not under an obligation to provide notice to the attorneys, let alone to inform Class Members who likely have hundreds, if not thousands of individual lawsuits pending against Nissan related to transmission problems in Class Vehicles, and like SLP here, representing plaintiffs in individual lawsuits against Nissan (even though Nissan knew they were represented by counsel).

SLP continued to confer with Nissan's counsel by email though March 12, 2023. Nissan confirmed it did not provide a Spanish translation of the Notice that was mailed to the to class members. (Shahian Decl. ¶ 196, Ex. 8.)

---

[7] The parties also refer to this as "Summary Notice," but it is properly understood as class notice, because it was the only notice Class Members received that directed them to the settlement website for the long-form notice, settlement agreement, and other settlement=related documents.

[8] Indeed, Nissan's position is without merit, because if a claim notice translated into Spanish was not needed, Nissan would not have included the Spanish version of the long-form settlement agreement on the settlement website.

## II. LEGAL ANALYSIS

### A. Ms. Solano and Mr. Vargas Possess Standing to Object to the Class Notice

"Though the Court is not required to entertain late objections, it will do so in an effort to give all absent class members a chance to voice their concerns." *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1013 (E.D. Cal. 2019) (citing *Moore v. PetSmart, Inc.*, 728 Fed. Appx. 671, 674 (9th Cir. 2018) (finding no error in the district court's entertaining of procedurally defective objection) and 4 Newberg on Class Actions § 13:29 (5th ed.) ("Arguably, courts need not consider untimely objections [to class action settlements], but they have the discretion to do so, and most courts typically will do so")).

Ms. Solano and Mr. Vargas could not have objected earlier to the defective class notice because they were not even aware of the *Martinez* settlement until February 25, 2023, when their counsel, SLP, was told about it—indeed, they could not even respond to the mail notice, which was prepared in English, because they are non-English speaking Spanish speakers.[9]

Good cause therefore exists to hear this Objection on an *ex parte* basis, to order corrective notice sent to the class in Spanish,[10] and to order supplemental notice to all Class Members who Nissan knows are represented by counsel.

### B. The *Martinez* Class Notice Violates Rule 23 and Due Process Because it Fails to Apprise Spanish Speakers of the Settlement

#### 1. Where Spanish is the Primary language of Many of the Class Members, Class Notice Should be Sent in both English and Spanish

---

[9] Ironically enough, and despite this, Nissan's Preliminary Approval Papers touted mail notice as the "gold standard of notice." (*See* Dkt. No. 271 [Memorandum in Support of Motion for Preliminary Approval] at 26.)

[10] As Spanish speakers who do not speak, read, or write in English, Ms. Solano and Mr. Vargas have standing to object to the fact that class notice was only provided in English. *See Gonzales v. Countrywide Home Loans, Inc.*, No. B163706, 2004 WL 1904280, at *3–4 (Cal. Ct. App. Aug. 26, 2004) ("Since the Ravens have not shown that the failure to provide notice in Spanish harmed them in any manner, they have no standing on appeal to challenge the notice on that basis."); *Young v. LG Chem Ltd.*, 783 F. App'x 727, 736 (9th Cir. 2019) ("As for Andrews's assertion that a Spanish version of the notice was required, Andrews does not have standing to make this argument.").

To satisfy due process, class notice must be given "in a manner that does not systematically leave any group without notice." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982). Where Spanish is the primary language of many of the class members, class notice should be sent in both English and Spanish.[11] *See Maciel v. Bar 20 Dairy, LLC*, No. 117CV00902DADSKO, 2020 WL 5095885, at *20 (E.D. Cal. Aug. 28, 2020) ("The court has several concerns with the Class Notice as proposed. First, it appears that it will only be distributed in English. However, plaintiff Maciel appears to speak only Spanish, [], and it is likely that many of the Class Claimants may face difficulties in understanding a Class Notice provided only in English. Accordingly, the parties must revise the Class Notice to ensure that any mailings are sent in both English and Spanish."); *Raquedan v. Volume Servs., Inc.*, No. 18-CV-01139-LHK, 2020 WL 1929343, at *3 (N.D. Cal. Apr. 21, 2020) ("The parties' proposed notice plan is constitutionally sound because individual notices will be mailed in English and Spanish to all Class Members whose identities are known to the parties."). *And see Rodriguez v. D.M. Camp & Sons*, No. 1:09-CV-00700-AWI, 2012 WL 6115651, at *13 (E.D. Cal. Dec. 7, 2012) (ordering the parties to file, within five days of the court's approval of the finalized class notice, a declaration by the certified court interpreter who translated the notice into Spanish attesting that the translation was an accurate translation).[12]

Notably, California, where many of the class members are located, mandates the translation of legal documents into Spanish. For example, California's Translation Act requires "[a]ny person engaged in a trade or business who negotiates primarily in Spanish, Chinese, Tagalog, Vietnamese, or Korean, orally or in writing" to deliver "a translation of the contract or agreement in the language in which the contract or agreement was negotiated." The California Legislature originally passed this law "to increase consumer information and protections for the

---

[11] The named Plaintiff, *Martinez*, appears to be a Spanish speaker.

[12] "'[W]hether a particular class action notice program satisfies the requirements of Fed.R.Civ.P. 23 and the Due Process Clause is a legal determination [the Court of Appeal] review *de novo*.'" *Fidel v. Farley*, 534 F.3d 508, 513 (6th Cir. 2008) (quoting *DeJulius v. New England Health Care Employees Pension Fund,* 429 F.3d 935, 942 (10th Cir. 2005)).

state's sizeable and growing Spanish-speaking population." Cal. Civ. Code § 1632. *See Valdez v. Seidner-Miller, Inc.*, 33 Cal. App. 5th 600, 613, 245 Cal. Rptr. 3d 268, 279 (2019) (The Legislature enacted section 1632 "to increase consumer information and protections for the state's sizeable and growing Spanish-speaking population."); *Reyes v. Superior Court*, 118 Cal. App. 3d 159, 161 (1981) ("section 1632 provides certain contracts, leases, loans, and other agreements, if negotiated primarily in Spanish, must ... be provided in Spanish translation"). [13]

Here, a significant number of the class members speak primarily or exclusively Spanish. In fact, Nissan concedes that 21% of Nissan owners Spanish. (Shahian Decl. Ex. 9.) Both Ms. Solano and Mr. Vargas, for instance, speak, read, and write exclusively in Spanish, and neither reads nor understands any English. (*See* Solano Decl. ¶ 4; Vargas Decl. ¶ 4.) Nissan, however, has conceded that it never sent the class notice to class members in Spanish. The class notice, therefore, departed substantially from the best notice practicable under the circumstances and did not fairly apprise Spanish-speaking/non-English-speaking class members of the terms of the settlement, thus violating their rights. The notice, in short, was defective, violated the class members' due process rights, and tantamount to no notice at all.

Nor is it only Spanish language speakers in the mainland United States whose due process rights are being violated. The Settlement expressly comprises buyers in Puerto Rico (*See* Dkt. No. 31 ¶ 2), where Spanish is one of the official languages.[14] These buyers, too, have been deprived of adequate notice. *See Wren v. RGIS Inventory Specialists*, No. C-06-05778JCS, 2009 WL 1705616, at *3 (N.D. Cal. June 17, 2009) ("the class includes individuals who reside in Puerto

---

[13] Indeed, Nissan knows this and communicates quite effectively with California's and the United States' Spanish-speaking population when it wants to. (*See, e.g.*, Shahian Decl. Ex. 12 (press release entitled, "Nissan North America announces multi-year partnership with Univision Deportes and the Mexican National Team[.]"); Ex. 13 (press release entitled, "Nissan to Unveil Spanish-Language Facebook Page and Host Latino Social Media Workshop at National Council of La Raza Annual Conference[.]"); Ex 14 (home page of the "Nissan Latino" Facebook page); Ex. 8 (press release entitled, "Nissan named 'Spanish TV Advertiser of the Year' by Nielsen[,]" which states that "Hispanic customers comprise 21 percent of Nissan's annual sales[.]").)

[14] *See* Shahian Decl. Ex. 11 (2021 census data showing that approximately 95% of Puerto Ricans are non-English speakers).)

Rico whose first language is likely to be Spanish. Joint Letter, 4. Therefore, including [in the class notice] an 800 telephone number and Spanish-language website is appropriate in order to facilitate access for these and other Spanish-speaking class members.").

  2. <u>Nissan Admits That a Spanish Version of its Notice is Necessary to Comport with Rule 23</u>

  Whether it was Nissan's mistake or the claims administrator's mistake, failure to send a class notice in Spanish is doubly problematic because Nissan knew that a Spanish-language version of the class notice was necessary to satisfy Rule 23's standards. Specifically, Nissan acknowledged the need for a Spanish-language version of the notice by agreeing to post a Spanish version of the notice on the claims administrator's website. Notably, however, the Spanish-language version was made available only on the website. The actual mailed notice to the class members was prepared solely in English. By posting a Spanish version of the notice only on the website online, Nissan made certain that no Spanish speaker would be able to find it. Because the actual notice sent to class members was written exclusively in English, it could not adequately inform a Spanish-speaker of the existence of the website. The terms of the settlement were thus obscured from the view of Spanish-speaking class members.

  Further, Nissan sends recalls to consumers in both Spanish and English. (*See* Shahian Decl. Ex. 12 [Nissan's Recall 2OV-315, which is in Spanish]).)

  In short, despite its evident facility in communicating with Spanish-language speakers, and despite acknowledging the importance of "connecting with the Latino community" and "engagement with Latinos," Nissan evidently did not think to apply this same level of "engagement" to its sending of class notice to Spanish speakers when it wants to provide them allegedly a benefit or take their claims away.

  The Court should therefore exercise its authority to send corrective notice to the class members in Spanish. *See* S*tern v. AT&T Mobility Corp.*, No. CV 05-8842 CAS (CTX), 2010 WL 11509146, at *4 (C.D. Cal. May 17, 2010) ("Each of these communications shall be translated into Spanish and disseminated **in a manner intended to reach Spanish speaking Class**

**Members.**") (emphasis added). *See also Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 192 (S.D.N.Y. 2012), *aff'd sub nom. Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013) ("Following the October 28, 2011 Hearing, the Court entered an Order directing that the original notice "be amended to" [] (c) Be sent in both English and Spanish."); *Miranda v. Mahard Egg Farm, Inc.*, 465 F. Supp. 3d 685, 688 (E.D. Tex. 2020) ("Where, as here, there are address errors or address changes for the Settlement Class, there is good cause to extend the deadline to file a claim or opt out []. []. Moreover, the original notice period was 60 days, and the addition of another 60 days does not exceed the bounds of common notice periods.").

3. <u>Nissan's Failure to Send a Spanish-Language Notice is Inconsistent With its Heavy Investment in Marketing Cars to Spanish Speakers</u>

When Nissan wants to get a message across to its Spanish-speaking customers, it communicates to them in *Spanish*. Indeed, Nissan's failure to send a class notice in Spanish is perplexing here given its substantial investment is **marketing** cars to buyers in Spanish. (*See, e.g.*, Shahian Decl. Ex. 13 (press release entitled, "Nissan North America announces multi-year partnership with Univision Deportes and the Mexican National Team[.]"); Ex. 13 (press release entitled, "Nissan to Unveil Spanish-Language Facebook Page and Host Latino Social Media Workshop at National Council of La Raza Annual Conference[.]"); Ex 14 (home page of the "Nissan Latino" Facebook page); Ex. 9 (press release entitled, "Nissan named 'Spanish TV Advertiser of the Year' by Nielsen[,]" which states that "Hispanic customers comprise 21 percent of Nissan's annual sales[.]").) Nissan has developed multiple initiatives—including entering into a multi-year partnership with Univision Deportes and the Mexican National Team, creating a Spanish-language Facebook page, and hosting a Latino Social Media Workshop at the National Council of La Raza Annual Conference—to sell cars to Spanish speakers. As Nissan's vice president for Marketing Communications and Media stated, "Hispanics have been fueling our growth this past year, and we recognize our engagement with Latinos as a driving force for our success." Likewise, Nissan's director of Interactive & Social Media Marketing stated, "At Nissan, we recognize how important social media has become within the Hispanic community and view

our Spanish-language presence on Facebook as a critical channel for connecting with the Latino community." These initiatives have led to Nissan being named "Spanish TV Advertiser of the Year" by Nielsen.[15] (*See* Shahian Decl. Ex. 9.)

**C.** **Nissan's Failure to Disclose the Existence of the *Solano* Lawsuit—and Likely Thousands of Other Related Lawsuits—to the Court Means That Nissan Considers Ms. Solano to be Excluded From the Settlement**

Even if the Court deems the class notice adequate, Nissan has, through its failure to disclose the existence of Ms. Solano's related lawsuit to the Court or the class members, effectively conceded that Ms. Solano has opted out of the settlement. Indeed, Nissan did not tell Class Members or the Court about the likely thousands of pending lemon law cases against Nissan, let alone the approximately 45 SLP cases pending.

1. Nissan Did Not Disclose the Pending Individual Lawsuits

Neither Nissan nor class counsel ever disclosed to the Court that SLP's individual clients (or the individual clients of any other lemon law firm) have filed their own individual lawsuits, despite possessing ample opportunity to do so.[16] Indeed, Nissan's own preliminary approval

---

[15] *See* https://www.businesswire.com/news/home/20160323006522/en/Nissan-named-%E2%80%9CSpanish-TV-Advertiser-of-the-Year%E2%80%9D-by-Nielsen.

[16] The filing of an individual action is sufficient to opt out of a class settlement. *See, e.g.*, *McCubbrey v. Boise Cascade Home & Land Corp.*, 71 F.R.D. 62, 68-69 (N.D. Cal. 1976) (holding that various parties had effectively opted out of a class by filing their own lawsuit against the class action defendants, even though they had not filed a formal, written exclusion request); *In re Brand Name Prescription Drugs Antitrust Litigation*, 171 F.R.D. 213, 216, 1997-1 Trade Cas. (CCH) ¶ 71772 (N.D. Ill. 1997) (determining that party's filing of a separate suit against the defendant before the deadline for exclusion and again three weeks after indicated intent to be excluded from class); *Butler v. Fairbanks Capital*, 2005 WL 5108537, *6 (D.D.C. 2005) ("The facts of this case reveal that the plaintiff reasonably indicated her intent to be excluded from the class action suit by filing independent litigation addressing the same claims as the class action. The plaintiff filed the instant suit on March 8, 2004, prior to the deadline for opting-out. Because it is undisputed that the plaintiff was acting in good faith and clearly demonstrated to Fairbanks her intent to pursue this litigation as her sole remedy, she should not be barred from continuing her suit merely because she has not formally opted-out under the procedures set forth in the notice."). Therefore, the complaints here were fully sufficient to exclude Plaintiffs from the settlement.

papers acknowledge Rule 23's requirement that the predominance and superiority elements include consideration of the "extent and nature oof any litigation concerning the controversy already begun by or against class members.":

> Plaintiffs must also show that a class action is superior to individual actions, which is evaluated by four considerations:
>
>> (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of the class action.

Fed. R. Civ. P. 23(b)(3).

(*See* Dkt. No. 21 at 23.) *See also Vassalle v. Midland Funding LLC*, 708 F.3d 747, 759 (6th Cir. 2013) ("The notice states that '[a] release means you can't sue or be part of any other lawsuit against [Midland] about the claims or issues in this lawsuit, or any other claims arising out of affidavits attached or executed in support of collection complaints filed against Class Members by [Midland].' This language is insufficient to notify a non-attorney class member that by not objecting, he or she loses the right to use Midland's false affidavits against Midland in their debt-collection actions settlement.") (citation omitted). Nevertheless, here, Nissan failed to provide any information to the Court about the pendency of other lawsuits filed by SLP or other law firms.

Indeed, class counsel in lemon law cases that involve thousands of individual lemon law cases directly reference such pending lemon law litigation cases in their class notices. *See, e.g.*, *Alfonso & Arlene Moran v. FCA US LLC*, No. 3:17-CV-02524JO-AHG, 2023 WL 2145527, at *3 (S.D. Cal. Feb. 21, 2023) ("Excluded from the Settlement Class are (a) all owners or lessees of Class Vehicles who have filed and served litigation against FCA asserting problems with stalling in Class Vehicles that was pending as of the Notice Date and who do not dismiss their actions before final judgment and affirmatively elect to opt-in to the Settlement."); *see also Vargas v. Ford Motor Co.*, No. CV12-08388 AB (FFMX), 2017 WL 4766677, at *1 (C.D. Cal.

Oct. 18, 2017), *dismissed sub nom. Vargas v. DeBose*, No. 17-56764, 2018 WL 2338528 (9th Cir. May 22, 2018), and *vacated and remanded on other grounds Vargas v. Lott*, 787 F. App'x 372 (9th Cir. 2019) ("Excluded from the Class are: (1) except as to the Named Plaintiffs in this Litigation and the Anderson plaintiffs, all owners or lessees of Class Vehicles who have filed and served litigation against Ford alleging problems with the PowerShift Transmission in Class Vehicles that was pending as of [insert Notice Date] and who do not dismiss their actions before final judgment and affirmatively elect to opt-in to the Settlement (Owners or lessees of Class Vehicles who dismiss such litigation and affirmatively opt-in to the Settlement shall be members of the Class for all purposes).").[17]

Just as it failed to disclose the pending lawsuits to the Court, Nissan also failed to inform the class members of the lawsuits. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("We note, however, that class notices do sometimes include specific reference to pending actions. [] Obviously, this information is helpful to class members. We strongly encourage the inclusion of such information in the future.") (citing *In re Auction Houses Antitrust Litigation*, 2001 WL 170792, at \*\*3-4 (S.D.N.Y. Feb. 22, 2001), and *Fradette v. Am. Serv. Corp.,* 1979 WL 1756, \*1 (S.D. Fla. Aug.29, 1979) (finding information concerning "related litigation" in class notice to be material to a reasonable person)

This conduct, too, reflects the parties intent to exclude the individual plaintiffs from the settlement, which would also be helpful to Class Counsel because it could potentially increase the claim rate. *See id.* at 68 (where defendant remained silent about pending state court actions, and instead communicated with class counsel only about "routine litigation details or future scheduling," defendant's silence implied "that the state court actions were unaffected by the class adjudication.").

---

[17] Plaintiff's counsel is not taking any position at this time about the adequacy of Notice with respect to future claims that were not allegedly released and the mandatory arbitration provision that comes with them because Plaintiff counsel wishes to opt-out his clients from the Settlement and advise those Spanish-speaking class members who stay in about the rights and benefits they can obtain from the settlement.

**D. If the Court is Not Inclined to Send Corrective Notice to the Class, it Should Exercise its Authority to Opt Out or Otherwise Exclude Ms. Solano, Mr. Vargas, So That They Are Not Forced To Bring Their Own Individual Motions For Excusable Neglect.**

Even if the Court is not inclined to send corrective notices to the class and to counsel for the individual plaintiffs, it should nonetheless exercise its authority under Rule 6(b) and 60(b) to opt out and exclude Ms. Solano and Mr. Vargas, so as to avoid the need for each of them to bring individual motions on excusable neglect grounds. *See In re Processed Egg Prod. Antitrust Litig.*, 130 F. Supp. 3d 945, 957 (E.D. Pa. 2015) (extending the opt out deadline under Rules 6(b) and 60(b)(1) because plaintiffs' failure to opt out of settlement was a result of excusable neglect); *In re Vitamins Antitrust Class Actions*, 327 F.3d 1207 (D.C. Cir. 2003) (district court had discretion to modify its judgment so that class member would be able to opt-out of settlement beyond the agreed opt-out date); Fed. R. Civ. P. 6(b) ("[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time ... on motion made after the time has expired if the party failed to act because of excusable neglect."); Fed. R. Civ. P. 60(b)(1) (""on motion and just terms, the court may relieve a party ... from a final judgment ... for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect.").

A court should consider the following factors in determining whether excusable neglect exists and whether the time to opt out should be extended: "the degree of compliance with the best practicable notice procedures; when notice was actually received and if not timely received, why not; what caused the delay, and whose responsibility was it; how quickly the belated opt-out request was made once notice was received; how many class members want to opt out; and whether allowing a belated opt out would affect either the settlement or finality of the judgment." *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, 895 F.3d 597, 618, 101 Fed. R. Serv. 3d 257 (9th Cir. 2018) (citation omitted); *see also Fidel v. Farley*, 534 F.3d 508, 515 (6th Cir. 2008) ("Finally, we **note that individual class members who do not receive timely notice are not without recourse. "If an individual shareholder later**

**claims he did not receive adequate notice and therefore should not be bound by the settlement, he can litigate that issue on an individual basis when the settlement is raised as a bar to a lawsuit he has brought.") (quoting** *Torrisi v. Tuscon Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir. 1993)); *In re Vitamins Antitrust Class Actions*, 327 F.3d 1207 (D.C. Cir. 2003) (district court had discretion to modify its judgment so that class member would be able to opt-out of settlement beyond the agreed opt-out date).

In particular, courts find good cause to extend opt out deadlines where notice is defective. *Miranda v. Mahard Egg Farm, Inc.*, 465 F. Supp. 3d 685, 688 (E.D. Tex. 2020) ("Where, as here, there are address errors or address changes for the Settlement Class, there is good cause to extend the deadline to file a claim or opt out"). In particular, good cause exists when the extension is limited to 60 days. *See id*.

Here, the factors militate strongly in favor of extending the deadline to opt out.

## III.    CONCLUSION

For the foregoing reasons, the Objectors' *ex parte* request should be granted.


Dated: March 16, 2023                    Respectfully submitted,


                                         **Shackelford Bowen McKinley & Norton, LLP**

                                         */s Jay S. Bowen*
                                         Jay S. Bowen, TN BPR No. 2649
                                         Jacob Clabo, TN BPR No. 36760
                                         Shackelford Bowen McKinley & Norton, LLP
                                         1 Music Circle South, Suite 300
                                         Nashville, TN 37203
                                         Tel: (615) 329-4440
                                         Fax: (615) 329-4485
                                         jbowen@shackelford.law
                                         jclabo@shackelford.law

**Strategic Legal Practices, APC**

Payam Shahian (*pro hac vice* pending)
STRATEGIC LEGAL PRACTICES, APC
1888 Century Park East, 19th Floor
Los Angeles CA 90067
Telephone:  (310) 277-1040
Facsimile:  (310) 943-3838

*Attorneys for Objectors Guadalupe Martines*
*Solano and Filomeno Estanislao Vargas*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of March, 2023, an exact copy of the foregoing pleading was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

**Shackelford Bowen McKinley & Norton, LLP**

_/s Jay S. Bowen_